ELIZABETH A. STRANGE
First Assistant United States Attorney
ANNA WRIGHT
Assistant U.S. Attorney
NATHANIEL J. WALTERS
Assistant U.S. Attorney
State Bar No.: 029708
405 West Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone: (520) 620-7300
E-mail: anna.wright@usdoj.gov
E-mail: nathaniel.walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 18-CR-223-TUC-RCC (BPV) |
| Plaintiff, | |
| vs. | GOVERNMENT'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO DISMISS COUNTS 2 AND 3 |
| Scott Daniel Warren, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, hereby responds to the defendant's Amended Motion to Dismiss Counts 2 and 3 of the Indictment pursuant to the Religious Freedom Restoration Act (RFRA) (Doc. 45), and respectfully requests that the Court deny the defendant the relief he seeks because (1) the motion is procedurally improper because it relies on disputed facts, (2) the defendant cannot establish a *prima facie* case, and (3) the government has chosen the least restrictive means to fulfill its compelling interests.

///

**I. Background**

   **a. Factual Summary[1]**

On January 17, 2018, in Ajo, Arizona, agents conducting surveillance on a building known as the "Barn" observed the defendant and two men standing outside the Barn and appearing to engage in conversation. Although the agents could not hear the conversation between the defendant and the two men, it appeared to the agents that the defendant was giving directions to the two men based on the defendant's hand gestures and the direction the men were facing. Shortly thereafter, the agents approached the Barn on foot where they encountered the defendant, who told the agents to leave. The agents then conducted a knock-and-talk at the Barn. There they found the two men previously seen speaking with the defendant, and identified them as Kristian Perez-Villanueva and Jose Arnaldo Sacaria-Goday. The agents also determined that Perez-Villanueva and Sacaria-Goday illegally present in the United States. The agents subsequently arrested the defendant on suspicion of violations of 8 U.S.C. § 1324, and detained Perez-Villanueva and Sacaria-Goday as material witnesses.

Agents later obtained a search warrant for the Barn, which was executed on January 22, 2018. During their search of the Barn, agents found two hand-drawn maps that identified Border Patrol checkpoints to the north and south of Ajo, as well as signs in

---

[1] The government disputes the facts as stated by the defendant, including but not limited to facts related to the "humanitarian crisis," the defendant's characterization of his "aid work," and the defendant's summary and characterization of the testimony by the material witnesses in this case. *See* Doc. 45 at 2-5.

English and Spanish posted in a common area advising the occupants of the Barn how to respond if immigration authorities came to the Barn.

During their video depositions on March 7, 2018, Perez-Villanueva and Sacaria-Goday testified that they crossed into the United States from Mexico on January 13, 2018, and walked from the international border to Ajo, Arizona, on January 14, 2018. They further testified that they stopped at two gas stations in the United States prior to reaching the Barn. They further testified that, at the second gas station, a few hours before they arrived at the Barn, they bought burritos and PowerAde with money given to them by a stranger. Sacaria-Goday testified that he did not finish his burrito because he did not like the beans; Perez-Villanueva finished what was left of Sacaria-Goday's burrito.

Perez-Villanueva and Sacaria-Goday testified that they got a ride in a van from a stranger to the Barn. Once at the Barn, they hid in the bathroom until they were found by the defendant. They also testified that the defendant allowed them to stay at the Barn from January 14, 2018, until their arrest on January 17, 2018. During that time, he gave them a place to sleep, a change of clothes, food and water. During that time, he did not ask if they needed medical attention and did not provide medical attention of any kind.

Perez-Villanueva also testified that he carried a cell phone with him from the time he crossed into the United States from Mexico on January 13, 2018, until his arrest on January 17, 2018. A consensual forensic search of that cell phone revealed, among other things, photographs by taken Perez-Villanueva and Sacaria-Goday on January 14, 2018, at the two gas stations, along with other photographs taken during their stay at the Barn. Perez-Villanueva and Sacaria-Goday identified these photographs during their video

depositions. Agents also recovered from Perez-Villanueva's cell phone text communications with a phone number associated with Ireneo Mujica related to arranging transportation within the United States on January 14, 2018.

### b. Procedural Posture

The government charged the defendant by complaint on January 18, 2018, with harboring Perez-Villanueva and Sacaria-Goday in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Doc. 1. On February 14, 2018, a grand jury charged the defendant in a three-count Indictment with conspiracy to transport or harbor illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and (a)(1)(A)(iii) (Count One), and harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) (Counts Two and Three). Doc. 26. Trial is currently set to begin the week of June 11, 2018. Doc. 38.

## II. Summary of Law

### a. Statutory Background

In 1990, the United States Supreme Court upheld the state of Oregon's refusal to give unemployment benefits to two Native Americans fired from their jobs after testing positive for using peyote, an illegal substance, in a religious ceremony. *Employment Division v. Smith*, 494 U.S. 872 (1990). In response, Congress passed the Religious Freedom Restoration Act (RFRA) of 1993, codified as 42 U.S.C. § 2000bb, to reinstate the "*Sherbert* Test," which mandated that strict scrutiny be used when determining if the Free Exercise Clause of the First Amendment has been violated. *See Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015). While RFRA as written applied to the states as well as the federal government, the Supreme Court held in *City of Boerne v. Flores*, 521 U.S. 507 (1997), that

RFRA exceeded Congress's power under the Enforcement Clause of the Fourteenth Amendment and invalidated RFRA as it applied to the states. In response, Congress passed the Religious Land Use and Institutionalized Persons Act (RLUIPA) of 2000, codified as 42 U.S.C. § 2000cc, which mandates that strict scrutiny apply to Free Exercise Clause claims made by prisoners and prison regulations, and to Free Exercise Clause related to laws regulating land use of properties in the state and federal contexts. *See Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015).

### b. *Prima Facie* Case

To establish a *prima facie* RFRA claim, a defendant must present evidence that (1) the defendant's activities were an "exercise of religion," and (2) the government action "substantially burdened" the defendant's exercise of religion. 42 U.S.C. § 2000bb-1(a); *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1068-69 (9th Cir. 2008). To do this he must first articulate the scope of his beliefs, and then show that his beliefs are religious in nature, that they are sincerely held, and that the exercise of his sincerely held beliefs is substantially burdened by a government action. *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007).

The sincerity and full scope of a claimant's asserted beliefs should be scrutinized. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014); *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996); *Zimmerman*, 514 F.3d at 854; *Guam v. Guerrero*, 290 F.3d 1210, 1222-23 (9th Cir. 2002). However, the reasonableness or validity of a claimant's beliefs may not be subject to scrutiny. *See Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2779; *see also Bauer*, 84 F.3d at 1559. "Exercise of religion" is defined

as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (incorporating by reference 42 U.S.C. § 2000cc-5(7)(A)).

To establish that a government action constitutes a substantial burden on a claimant's sincerely held religious belief, a claimant must show either (1) that he or she was forced to choose between following his or her sincerely held religious beliefs or receiving government benefit, or (2) that he or she was coerced to act contrary to his or her sincerely held religious beliefs by the threat of criminal or civil sanctions. *Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F.3d 1207, 1214 (9th Cir. 2008) (quoting *Navajo Nation*, 535 F.3d at 1070).

### c. Strict Scrutiny

Only once a defendant has established both elements does the burden shift to the government to demonstrate that the "substantial burden" posed by the government action is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of furthering that compelling governmental interest. *Navajo Nation*, 535 F.3d at 1068 (citing 42 U.S.C. § 2000bb–1(b)).

To demonstrate that the government's action is in furtherance of a compelling interest, the government must demonstrate that the "application of the challenged law [to] the particular claimant whose sincere exercise of religion is being substantially burdened" furthers a compelling interest. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432 (2006). Put another way, the government's action is in furtherance of a compelling interest if demanding "unbending compliance" advances its

stated interest to a "meaningful degree." *United States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016). In determining whether an interest is compelling as to a particular claimant, courts look to whether analogous exceptions to the challenged statute already exist and to the particularity with which the interest is alleged. *See Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2779; *O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. at 432.

If the government identifies a compelling interest with particularity, then it must still demonstrate that no less restrictive means of furthering its interest exists. 42 U.S.C. § 2000bb-1(b)(2). Stated another way, the government must demonstrate that it cannot accommodate the claimant's belief more without furthering its interest less. *Christie*, 825 F.3d at 1056. To do this, the government must demonstrate that its preferred means are reasonable and that any other proffered options are either not less restrictive or not plausible. *Id.* at 1061.

### d. Motions to Dismiss Criminal Charges

Federal Rule of Criminal Procedure 12(b)(2) provides "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2) (2006). A criminal charge may be dismissed if it is subject to a defense that may be decided solely as a matter of law. *See United States v. Tawahongva*, 456 F.Supp.2d 1120, 1125 (D. Ariz. September 11, 2006). While a court must evaluate the evidence in the light most favorable to the government when considering a motion to dismiss criminal charges, *see United States v. Ubaldo*, 859 F.3d 690, 700 (9th Cir. 2017), a court must deny any motion to dismiss that requires resolution of disputed facts, *see Tawahongva*, 456 F.Supp.2d at 1125.

### III. Summary of Argument

As an initial matter, the Court should deny the defendant's motion because it rests on disputed factual issues, including the characterization of potential testimony in this case.

As to his *prima facie* case, the defendant asserts that he believes he is "morally, ethically, and spiritually bound" to assist people "in need of basic necessities," to provide "life-saving care to" people "in distress," and to help exhausted, hungry and injured strangers. Doc. 45 at 3, 8, 9 at n. 5, 12. He argues that his prosecution in this matter substantially burdens this belief. Doc. 45 at 8, 13. However, the prosecution in this matter does not substantially burden the defendant's stated beliefs since his beliefs are not in conflict with the criminal charges in this case. He is not required by his beliefs to aid in the evasion of law enforcement. Nor were the people associated with these charges "in distress."

As to the government's compelling interest, the defendant argues that the government cannot prove a compelling interest in prosecuting him for these offenses since it cannot have a compelling interest in allowing the two illegal aliens to "remain[ ] dehydrated, hypothermic or famished"; any interest it does have in prosecuting this case is necessarily incremental and marginal; the defendant's conduct did not interfere with the aliens' apprehension; and there are existing exceptions to the statutory scheme. *Id.* at 17-20. Contrary to the defendant's argument, the government does have a compelling interest in deterring the defendant's harboring of illegal aliens, and in deterring the coordination of efforts to harbor aliens and evade law enforcement.

Finally, as to the availability of less restrictive means, the defendant argues that the government could "conduct surveillance to locate migrants who are receiving temporary emergency shelter," "obtain search warrants for a property if they have probable cause to believe there are undocumented individuals inside," or "wait for the migrants to leave" the temporary emergency shelter. *Id.* at 22. These suggested alternatives miss the point, because they do not prevent evasion of law enforcement. They also are implausible and impracticable, and no less restrictive means exist to advance the government's compelling interests.

**IV. Discussion**

    **a. The Motion to Dismiss because it rests on disputed factual issues.**

The defendant's RFRA claim relies on disputed facts, including the defendant's characterization of his actions in this case, and the defendant's summary and characterization of the testimony by the material witnesses in this case. *See* Doc. 45 at 2-5. The defendant has not submitted any declarations or other evidence to buttress his mere assertions. As such, the Court should deny the Motion to Dismiss in its entirety. *See* Fed.R.Crim.P. 12(b)(2) (2006); *Tawahongva*, 456 F.Supp.2d at 1125.

    **b. The defendant cannot show that his beliefs are substantially burdened by prosecution for violations of 8 U.S.C. § 1324.**

The defendant asserts that he believes he is required to render aid to people who are in distress, including people who are exhausted, hungry or injured. Doc. 45 at 3, 8, 9 at n. 5, 12. However, taking the evidence in the light most favorable to the government, the people at issue in this case (Perez-Villanueva and Sacaria-Goday) were not exhausted,

hungry or injured when they arrived at the Barn on January 14, 2018. In addition, the defendant is charged with harboring "to avoid [Perez-Villanueva's and Sacaria-Goday's] detention by immigration authorities[.]" Nothing about the defendant's proffered beliefs requires him to choose between his beliefs and following the law. Therefore, the defendant's exercise of his proffered beliefs is not substantially burdened by his prosecution for violations of 8 U.S.C. § 1324. *See Navajo Nation*, 535 F.3d at 1070 ("A 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit…or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions[.]"); *United States v. Aguilar*, 883 F.2d 662, 694-695 (1989) (adopting finding in *United States v. Merkt*, 794 F.2d 950 (5th Cir. 1986), that nothing about claimants' beliefs required them to participate in the sanctuary movement); *Oklevueha Native American Church of Hawaii v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016) (finding no substantial burden where claimants could substitute legal substances for marijuana consistent with beliefs). The lack of conflict between the defendant's beliefs and the laws he is accused of violating on the facts of this case is further highlighted by his failure to assert that his prosecution for conspiring to harbor Perez-Villanueva and Sacaria-Goday substantially burdens the exercise of his proffered beliefs. *See* Doc. 45.

Relying on *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), the defendant argues that the government has substantially burdened the exercise of his proffered beliefs simply by bringing criminal charges against him. Doc. 45 at 13. The defendant's argument is not

supported by either case. *Yoder* and *O Centro* are easily distinguishable from the facts in this case, because in both cases there was an unavoidable conflict between the claimants' sincerely held religious beliefs and the criminal statutes at issue. *See Yoder*, 406 U.S. at 218 (the imposition of criminal sanctions forced the claimants "to perform acts undeniably at odds with fundamental tenets of their religious beliefs"); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236, 1240 (D.N.M. 2002), aff'd 389 F.3d 973 (10th Cir. 2004) (en banc), aff'd and remanded, 546 U.S. 418 (small religious sect imported and used a hallucinogenic tea in violation of the Controlled Substances Act because consumption of the tea "played a central role in the religious ceremonies" of the sect).

That a substantial burden only exists when there is a conflict between the exercise of a religious belief and the enforcement of a criminal statute is illustrated by *Guam v. Guerrero*, 290 F.3d 1210 (9th Cir. 2002), and *United States v. Bauer*, 84 F.3d 1549 (9th Cir. 1996). In both cases, Rastafarian defendants were charged with various violations of the Controlled Substances Act related to marijuana. In both cases, the Ninth Circuit held that, while "marijuana use is sacramental in the practice of" Rastafarianism, 290 F.3d at 1213, only prosecution for simple possession of marijuana imposes a substantial burden on the exercise of defendants' Rastafarian beliefs because defendants' Rastafarianism does not require adherents to possess with intent to distribute, conspire to distribute, import, or launder money in relation to marijuana. *Guerrero* at 1222-23; *Bauer*, 84 F.3d at 1559. As such, the government can prosecute a Rastafarian defendant for any marijuana related violation of the Controlled Substances Act other than simple possession consistent with the

constraints of RFRA because the exercise of Rastafarian beliefs is not in direct conflict with these portions of the Controlled Substances Act. *See also Oklevueha Native American Church of Hawaii*, 828 F.3d at 1016 (finding no substantial burden where claimants could substitute legal substances for marijuana consistent with beliefs).

In this case, like the defendants in *Guerrero* and *Bauer* and unlike those in *Yoder* and *O Centro,* the offenses alleged the Indictment are not in conflict with the defendant's exercise of his proffered beliefs. The defendant's proffered beliefs do not require him to take actions meant "to avoid [Perez-Villanueva's and Sacaria-Goday's] detention by immigration authorities," and they do not require him to provide aid to people who are not exhausted, hungry or injured. Accordingly, the government's decision to prosecute the defendant for the offenses alleged in the Indictment does not impose a substantial burden on the defendant's exercise of his proffered beliefs.

- **c. The United States has chosen the least restrictive means to fulfill its compelling interests.**
    - **i. The government's prosecution of the defendant for the offenses alleged in the Indictment furthers its compelling interest in deterring defendant's coordination of efforts to and the harboring of illegal aliens to avoid detention by immigration authorities.**

As part of its overall efforts to maintain the security of its borders and regulate immigration, a compelling interest in and of itself, Congress chose to impose criminal sanctions on those who harbor and those who coordinate efforts to harbor illegal aliens, in addition to imposing criminal sanctions on those aliens who enter the United States without authorization. 8 U.S.C. §§ 1324-1326; *see also Aguilar*, 883 F.2d at 695 ("The proposition that the government has a compelling interest in regulating its border hardly needs

testimonial documentation."). These criminal sanctions serve to deter illegal entry and presence by aliens, and attempts to further their entry and presence by others within the United States. The government's prosecution of the defendant in this case furthers this compelling interest to a meaningful degree.

Taking the evidence in the light most favorable to the government, the defendant coordinated with others to further Perez-Villanueva's and Sacaria-Goday's illegal presence in the United States by helping them avoid detection by law enforcement authorities, and providing them with supplies and directions. The defendant's actions in this case are part of his ongoing participation with various self-described humanitarian groups operating in southern Arizona, including No More Deaths. Doc. 45 at 2. These groups help aliens illegally enter the United States, *see* http://forms.nomoredeaths.org/about-no-more-deaths/ (last accessed on April 29, 2018), and the Barn was an integral part of their mission, *see* Doc. 45 at 3. As such, there is a substantial risk that, left unaddressed, the defendant's actions would help illegal aliens reach the interior of the United States and avoid detection by law enforcement. *See Christie*, 825 F.3d at 1057 (compelling interest established where the government showed a substantial risk of diversion of marijuana from sacramental use).

The defendant advances several arguments to refute the government's clearly compelling interest. These arguments are meritless. First, the defendant argues that the government cannot demonstrate a compelling interest in prosecuting this case, because it cannot have a compelling interest in allowing the two illegal aliens to "remain[ ] dehydrated, hypothermic or famished." Doc. 45 at 17-18. This argument fails, because, as discussed above, the evidence is that Perez-Villanueva and Sacaria-Goday were not

dehydrated, hypothermic or famished at any point during their trip, let alone when they arrived at the Barn and were taken in by the defendant. In addition, even if the men were dehydrated, hypothermic or famished, the government has a compelling interest in deterring the defendant from placing a higher priority on helping illegal aliens avoid detention by immigration authorities than seeking appropriate medical care in a clinical setting.

Second, the defendant argues that any interest the government does have in apprehending Perez-Villanueva and Sacaria-Goday is necessarily incremental and marginal. Doc. 45 at 18-19. There are two problems with this argument. First, it is misplaced in that it focuses on the government's interest in apprehending Perez-Villanueva and Sacaria-Goday rather than the government's interest in deterring the defendant's actions, which include the evasion of lawful authorities. Second, the apprehension data cited by the defendant demonstrates, rather than undercuts, the government's commitment to furthering its interests in maintaining its borders and regulating immigration through enforcement actions. *See* Doc. 45 at 18. To argue otherwise would be nonsensical since it would create an inverse relationship between the government's efforts to achieve uniform enforcement of its immigration policy and its interest in apprehending those who criminally violate it. *See Aguilar*, 883 F.2d at 694 n. 31.

Third, the defendant argues that his conduct did not interfere with the aliens' apprehension to a meaningful degree because the government apprehended Perez-Villanueva and Sacaria-Goday. Doc. 45 at 19. This argument fails on the facts of this case, since the defendant took actions to avoid detention of Perez-Villanueva and Sacaria-

Goday. In addition, the compelling interest analysis focuses on the government's interest in not "immunizing the [claimant's] past conduct from official sanction" and not "nullifying, in whole or in part, his continuing duty to comply with a generally applicable command." *Christie*, 825 F.3d at 1056. The apprehension of Perez-Villanueva and Sacaria-Goday does nothing to address the government's ongoing compelling interest in deterring the defendant from engaging in similar conduct in the future.

Finally, the defendant argues that an exemption codified at 8 U.S.C. § 1324(a)(1)(C) fatally undercuts the government's interest because it concerns conduct analogous to the defendant's in this case. Doc. 45 at 20-21, 24-25. The defendant's conduct in this case is not analogous to the conduct covered by § 1324(a)(1)(C). Section 1324(a)(1)(C) only covers actions by a religious denomination relating to illegal aliens (1) already present in the United States (2) who are volunteer ministers or missionaries and (3) have been members of their respective denominations for at least a year. The illegal aliens in this case do not begin to fit within this narrow exception because they recently entered the United States, and they entered the United States for purely secular reasons. This is an important distinction, since it addresses the motivation of both the religious denomination and the illegal alien in engaging in the conduct, as well as character traits of the illegal aliens that set them apart from other illegal aliens. *See Christie*, 825 F.3d at 1059 (rejecting church's argument that preexisting exemptions to the Controlled Substances act for peyote and a hallucinogenic tea fatally undercut compelling interest, because prior claimants were "materially distinguishable" from the church).

### ii. The prosecution of the defendant in this matter is a reasonable method to advance the government's compelling interests, and no less restrictive means exist.

The prosecution in this case is a reasonable method for the government to advance its compelling interests in deterring illegal entry and presence by aliens, and attempts to further their entry and presence by others within the United States. The burden then falls to the defendant to identify less restrictive and practicable means available to the government to further its interests and to the government to address those means. *See Christie*, 825 F.3d at 1061.

The defendant argues as an initial matter that, having apprehended Perez-Villanueva and Sacaria-Goday, the government could simply dismiss the charges against him. Doc. 45 at 22. As discussed above, the apprehension of Perez-Villanueva and Sacaria-Goday without prosecution of the defendant does nothing to address the government's ongoing compelling interest in deterring the defendant from engaging in similar conduct in the future.

The defendant next argues that the government could conduct continual surveillance on locations like the Barn, and then either obtain search warrants for those locations or apprehend any illegal aliens after they leave the locations. Doc. 45 at 21-22. But this misses the point: the crux of this case is the defendant's activity in assisting with and the coordination of the evasion of law enforcement. That activity is not confined to a particular location. Indeed, it is not confined to a physical location at all, for information about law enforcement locations can be conveyed by conversation (as observed in this case) and conversation may occur by phone, text message, electronic mail, and other means.

Consequently, these alternatives are impracticable because they would require constant surveillance of a person and his communications to determine what locations and methods are being used to harbor illegal aliens. That will consume a not insignificant amount of agency resources. Cost can be "an important factor in the least-restrictive-means analysis," *Hobby Lobby Stores, Inc.*, 134 S. Ct. at 2781, and in this case, it weighs in the government's favor. In addition, there is nothing "less restrictive" about constant surveillance of a person, especially if that person is aware of the surveillance.

In addition, these alternatives are not plausible because there is no reason to believe that the defendant or his associates would accept them. Specifically, the defendant claims that his conduct in this case was on behalf of and in coordination with No More Deaths. No More Deaths has already strongly and publicly rejected much more limited surveillance of its operations. *See* http://forms.nomoredeaths.org/border-patrol-raids-humanitarian-aid-camp-in-targeted-attack/ (last accessed on April 29, 2018). There is no reason to believe that the defendant or No More Deaths would now accept near constant surveillance of its operations. *See Christie*, 825 F.3d at 1063-64 (holding that claimants' offer to submit to regulation not plausible in light of claimants' history of negligent behavior that created substantial risk of diversion of marijuana from sacramental use).

### V. Conclusion

The government respectfully requests that the Court deny the defendant's Motion to Dismiss in its entirety. As an initial matter, the defendant's motion is procedurally improper because it relies on disputed issues of fact. In addition, the defendant has failed to establish a *prima facie* case because the government's actions do not substantially

burden his proffered beliefs since there is no conflict between the defendant's proffered beliefs and the criminal charges in this case. Finally, even if the Court finds that the prosecution in this matter constitutes a substantial burden on the defendant's proffered beliefs, the government has a compelling interest in deterring the defendant's harboring of illegal aliens, and in deterring the coordination of efforts to harbor aliens and evade law enforcement, and no less restrictive means are available to the government to further its compelling interests.

Respectfully submitted this 30th day of April, 2018.

>
> ELIZABETH A. STRANGE
> First Assistant United States Attorney
> District of Arizona
>
> */s/ Anna R. Wright & Nathaniel J. Walters*
>
> ANNA WRIGHT &
> NATHANIEL J. WALTERS
> Assistant U.S. Attorneys

Copy of the foregoing served electronically or by
other means this 30th day of April, 2018, to:

All ECF participants