Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com
*Pro Bono* Attorneys for Defendant Scott Daniel Warren

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| | ) No.CR-18-00223-001-TUC-RCC(BPV) |
| Plaintiff, | ) |
| | ) **REPLY BRIEF IN SUPPORT OF** |
| vs. | ) **AMENDED MOTION TO DISMISS** |
| | ) **COUNTS 2 AND 3** |
| SCOTT DANIEL WARREN, | ) |
| | ) |
| Defendant. | ) |

Erroneously and in contravention of Supreme Court precedent and Justice Department guidelines, the government claims: (1) the Court should not resolve this issue pretrial; (2) Dr. Warren's sincerely held religious beliefs did not require the actions he allegedly took; and (3) no other method besides prosecuting Dr. Warren exists to achieve the government's interest. Each of these arguments fails.

1. <u>The Court Should Resolve this Motion before Trial.</u>

Simply disputing unequivocal evidence is not the same as producing evidence that creates an actual factual dispute. Although the government claims the

migrants were not "exhausted, hungry or injured when they arrived at the Barn," Gov't's Br., Doc. 60, at 9, in fact, they had been walking in the frigid desert since Friday, January 12 and testified that they were "extremely hungry" and "very cold."[1] Moreover, the paltry amount of food they at before arriving at the Barn was gone and they were extremely likely to go hungry and become hypothermic if Dr. Warren threw them out after discovering them. The government fails to identify any RFRA defense element actually turning on disputed facts.[2]

The government also complains that Dr. Warren "has not submitted any declarations or other evidence to buttress his mere assertions," *Id.*, citing *United States v. Tawahongva,* 456 F.Supp.2d 1120, 1126-27 (D. Ariz. 2006) for its proposition that "the Court should deny the Motion to Dismiss in its entirety." Gov't Br., Doc. 60, at 9. However, *Tawahongva* clearly favors an evidentiary hearing and undermines the government's position, as that court dismissed *on the merits and only after an evidentiary hearing*.

---

[1] The defense will submit transcript of the material witnesses' sworn deposition testimony at the evidentiary hearing, thereby eliminating any prospect of a disputed fact.

[2] The government counterfactually bases its arguments on its allegation – as opposed to its evidence – that Dr. Warren concealed the migrants. But even if evidence existed that he had concealed the migrants, RFRA would still prohibit his prosecution.

2. <u>The Government Impermissibly Second-Guesses Dr. Warren's Account of his Own Religious Beliefs.</u>

The government claims the harboring statute does not substantially burden Dr. Warren's beliefs because his religious beliefs did not compel him to provide assistance to the migrants. This argument fails for multiple reasons.

First, the government misapprehends the nature and scope of Dr. Warren's religious beliefs. The prosecution apparently believes resting for a few hours and eating half a gas station burrito[3] before arriving at the Barn obviates the need for religiously motivated humanitarian assistance. But as he will testify, Dr. Warren's beliefs do not allow him to turn out two strangers who arrive in need, regardless of whether they ate before arriving.[4] Most importantly, Dr. Warren's motivation is what is relevant for RFRA purposes, not the prosecution's jaded perception of the migrants' level of need. Significantly, even if the migrants had been in no actual distress at all, so long as Dr. Warren believed them to need his help and assisted

---

[3] Mr. Sacarías testified, "what we ate was very little and those beans didn't taste good."

[4] The government cites *Oklevueha Native American Church of Hawaii, Inc. v. Lynch,* 828 F.3d 1012 (9th Cir. 2015). But in that case, the claimants "have expressly told us that foregoing cannabis is not contrary to their religious beliefs." *Id.* at 1016. That critical fact is in stark contrast to the present case, where turning away strangers in apparent need is directly contrary to Dr. Warren's religious beliefs.

3

them in an exercise of his religious belief, his actions would still qualify for protection.

The government may not second-guess whether Dr. Warren did or did not *need* to undertake various actions pursuant to his beliefs. As Attorney General Sessions has made explicit, "[r]eligious adherents will often be required to draw lines in the application of their religious beliefs, and government is not competent to assess the reasonableness of such lines drawn, nor would it be appropriate for government to do so." *See* Office of the Attorney General, Federal Law Protections for Religious Liberty, Oct. 6, 2017 (hereinafter "DOJ Guidance"), at 4.[5] RFRA "does not permit a court to inquire into the reasonableness of a religious belief, including into the adherent's assessment of the religious connection between a belief asserted and what the government forbids, requires, or prevents." *Id.* at 6a (*citing Burwell v. Hobby Lobby,* 132 S.Ct. 2751, 2278 (2014)).

Furthermore, under the plain language of the statute, *activity is protected if it is an exercise of religion*, even if the religion does not *compel* the action. RFRA applies to "any exercise of religion, whether or not compelled by. . . a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, Dr. Warren need not establish that he had no choice but to take the alleged actions; he need only establish that

---

[5] Available at https://www.justice.gov/opa/press-release/file/1001891/download.

4

such actions would be an exercise of his religious beliefs. Being criminally prosecuted for acting on his beliefs clearly constitutes a substantial burden.

3. Any Purported Compelling Interest Must Be Framed Narrowly.

The government fatally fails to precisely articulate what interest prosecuting Dr. Warren advances, thereby making an alternative means analysis impossible.[6]

The government must show more than a compelling interest to enforce the law as a general matter, but "a compelling interest to deny an accommodation to the particular claimant." DOJ Guidance at 6a (citing *O Centro Espirita*, 546 U.S. at 430, 435-38).[7] The government "would have to show that it has a compelling interest in denying [the] particular accommodation." DOJ Guidance at 7a; *see also O Centro Espirita,* 546 U.S. at 437. Courts must "scrutinize the asserted harm of granting specific exemptions to particular religious claimants—in other words, to

---

[6] "[O]verall efforts to maintain the security of its borders and regulate immigration" (p. 12; p. 14); "[T]o deter illegal entry and presence by aliens, and attempts to further their entry and presence by others within the United States (p. 13); "[D]eterring the defendant from placing a higher priority on helping illegal aliens avoid detention by immigration authorities than seeking appropriate medical care in a clinical setting" (p. 14); "[D]eterring the defendant's actions, which include the evasion of lawful authorities (p. 14); "[T]o achieve uniform enforcement of its immigration policy and. . . apprehending those who criminally violate it" (p. 14); "[D]eterring the defendant from engaging in similar conduct in the future" (p. 15); "[D]eterring illegal entry and presence by aliens" (p. 16).

[7] The Government's citation to *Aguilar*, a pre-RFRA Ninth Circuit case, is in direct conflict with the particularized approach required by the Supreme Court in RFRA cases and is unavailing in the face of two much more recent Supreme Court cases actually interpreting RFRA—*O Centro Espirita* and *Hobby Lobby*—each requiring a far narrower articulation of government interest.

look to the marginal interest in enforcing the [law at issue] in these cases. *Hobby Lobby*, 134 S.Ct. at 2779 (internal quotation marks omitted). The relevant compelling interest therefore, cannot be prohibiting harboring or deterring illegal immigration, as the government suggests; it must be the much more particular interest in refusing an exemption specifically to Dr. Warren.

Since the prosecution cannot establish a compelling interest based on what actually happened in this case, it seeks to reframe its interest as "deterring the defendant from engaging in similar conduct in the future." Gov't Br., Doc. 60, at 15. As a preliminary matter, the government cannot render any marginal interest compelling simply by framing it as an interest in "deterrence." Indeed, if that were true, no RFRA defense would ever succeed, since criminal prohibitions are always intended to deter certain conduct. Yet the whole point of the exigent compelling interest test is to require the government to produce concrete evidence that its interests are seriously at risk in a specific case. *See Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011) ("[T]he government does not have a compelling interest in each marginal percentage point by which its goals are advanced.").

Thus, the government cannot have a compelling interest in deterring future conduct unless it can demonstrate that this (future) conduct has previously meaningfully compromised a compelling interest. *See O Centro Espirita*, 546 U.S.

at 426.[8] To bear its burden, the government must precisely articulate what that compelling interest is that was previously compromised. And any alleged interest in deterring future conduct may not be speculative but must be supported by the evidence. *Id.,* at 426, 436.

Instead, the Response conflates allegations with evidence, claiming Dr. Warren's actions included "helping [the migrants] avoid detection by law enforcement authorities." Gov't Br., Doc. 60, at 13. The migrants' testimony shows quite the opposite—Dr. Warren took no steps to conceal them, he gave no instruction to remain indoors or to hide. Border Patrol observed them in broad daylight. The migrants testified they were free to come and go, walked outside whenever they chose over the two days they stayed at the Barn, smoking outside and taking out trash.

Finally, the government argues that the "ministers and missionaries" exception does not undercut the existence of a compelling government interest. Yet any government assertion of an interest in "unbending compliance" and "uniform

---

[8] In *O Centro*, the government asserted a compelling interest in preventing future diversion of hoasca, while the church introduced evidence that its past actions had not led to diversion of hoasca. *Id*. Because the evidence on diversion was "virtually balanced" the district court held that the government had not met its burden. *Id*. at 427. Similarly here, the government must show that the Dr. Warren's alleged harboring of migrants meaningfully impaired its interest in detecting and apprehending two individuals unlawfully present. This it cannot do, since agents discovered and arrested the two migrants whom they believed they were searching for only 24 hours after learning of their existence in the country.

7

enforcement," Gov't Br., Doc. 60, at 6, 14, must fail where an analogous exemption already exists. In arguing that the conduct covered is "not analogous" to that allowed by the exception, Gov't Br., Doc. 60, at 15, the government entirely misses the legal significance of the existence of an exemption.[9] The Attorney General recognized the well-established principle that "[a]n asserted compelling interest in denying an accommodation to a particular claimant is undermined by evidence that exemptions or accommodations have been granted for other interests." DOJ Guidance at 7a (citing *O Centro Espirita,* 546 U.S. at 433, 436-37; *Hobby Lobby,* 134 S.Ct. at 2780). Indeed, in *O Centro Espirita*, the fact of an existing exemption for religious organizations using a similar substance "fatally undermine[d]" an argument that the government had a compelling interest in enforcing the Controlled Substances Act in the face of a claimed RFRA exemption for a *different* hallucinogenic substance. *O Centro Espirita,* 546 U.S. at 433.

Significantly, just as in *O Centro Espirita,* the harboring statute has a built-in exemption for similar religious activity: nonprofit religious organizations, as well as their agents and officers, cannot be prosecuted for harboring aliens who serve as volunteer ministers or missionaries. 8 U.S.C. § 1324(a)(1)(C). The

---

[9] The prosecution conceptually errs by analyzing the difference between the migrants ("they entered…for purely secular reasons" Gov't Br., Doc. 60, at 15) and missionaries. The only relevant comparison is between the effect of the religious nonprofit's conduct and the effect of Dr. Warren's alleged conduct. Significantly, the missionary exception covers far wider conduct than anything Dr. Warren is accused of.

prosecution has failed to explain how an exemption in Dr. Warren's case specifically would do serious harm to the government's interest in policing unlawful presence, when religious organizations that harbor ministers or missionaries do not.[10] No compelling interest exists in prosecuting Dr. Warren for the exercise of his religious beliefs.

4. Prosecuting Dr. Warren Is Not the Least Restrictive Means of Furthering any Appropriately Articulated Government Interest.

Each of the government's least restrictive means arguments addresses interests in either general enforcement—insufficient for RFRA purposes under *O Centro Espirita* and *Hobby Lobby*—or misplaced and speculative allegations about deterrence. There is only one possible interest left: the apprehension of the particular migrants Dr. Warren allegedly assisted. Yet even if this were sufficiently compelling—it is not—apprehending them could be easily accomplished without a harboring prosecution. And where an existing exemption shows a less-restrictive means is feasible, the government must employ it. *Hobby Lobby,* 134 S. Ct. at 2784.

For the Court in Hobby Lobby, the existence of an exemption proved decisive to its least-restrictive-means analysis, yet the prosecution fails to even address § 1324(a)(1)(C) at this stage of its analysis. Nor does it allege §

---

[10] Even though this motion only challenges the harboring charge, the missionary exception also applies to transporting, shielding, concealing, and encouraging or inducing to reside.

9

1324(a)(1)(C) has "undercut" its ability to further its immigration interests. *O Centro Espirita,* 546 U.S. at 435. And the government gives no rationale for why it cannot do what it does in the missionary context: use the many tools at its disposal to detect and apprehend undocumented individuals without prosecuting religiously motivated assistance. *Hobby Lobby,* 134 S. Ct. at 2786 (Kennedy, J., concurring in judgment) ("RFRA is inconsistent with the insistence . . . on distinguishing between different religious believers—burdening one while accommodating the other—when it may treat both equally by offering both of them the same accommodation.")

In addition, the government has failed to establish that specific less-restrictive means would be infeasible. It creates a straw man and grossly misrepresents one of Dr. Warren's proposed less restrictive means, arguing that "continual surveillance on locations like the Barn" would not be effective. Gov't Br., Doc. 60, at 16. But Dr. Warren never proposed "continual" surveillance. The limited, targeted surveillance the government accomplished here was and would have continued to be perfectly effective. Agents began observing the Barn at 2pm and by 4:30 had observed two men whom they concluded to be in the country illegally, arresting them shortly afterwards.

Puzzlingly, the government claims surveillance is not a viable alternative to prosecuting Dr. Warren for the exercise of his sincere religious beliefs, because he

and/or No More Deaths may not "accept surveillance," *Id*., at 17. Whether one "accepts surveillance" or not, the government can easily surveil.

And less restrictive means besides surveillance abound in this case but the government does not address them, categorically defaulting on its burden. *Christie*, 825 F.3d at 1061 ("At a *minimum*, the government must address those alternatives of which it has become aware during the course of this litigation") (emphasis added). When the migrants left the Barn, which according to their testimony they planned on doing later that day, it would have been no more difficult for Border Patrol to locate and apprehend them than before they arrived at the Barn. Critically, "[i]f a less restrictive means is available for the Government to achieve its goals, the Government *must* use it." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (emphasis added). The government also fails to explain why it cannot employ other legal means, like obtaining a warrant.

Accordingly, the Court should GRANT Dr. Warren's motion to dismiss.

RESPECTFULLY SUBMITTED this 7th day of May, 2018.

> By /s/ Gregory J. Kuykendall
> Gregory J. Kuykendall
> Amy P. Knight
> 531 S Convent Avenue
> Tucson, AZ 85701
> Attorneys for Defendant Scott Daniel Warren

## CERTIFICATE OF SERVICE

I certify that on May 7th, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701