IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | NO.   CR 18-00223-TUC-RCC(BPV) |
| vs. | ) | **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS COUNTS 2 AND 3** |
| Scott Daniel Warren, | ) | |
| Defendant. | ) | |

On January 17, 2018, Defendant Scott Daniel Warren was arrested for concealing, harboring, or shielding illegal aliens and a Complaint [Doc. 1] was filed against him on January 18, 2018. The Defendant was indicted on February 14, 2018 [Doc. 26]. On April 2, 2018, Defendant filed an Amended Motion to Dismiss Counts 2 and 3 [Doc. 45]. The Government filed its Response [Doc. 62] on May 2, 2018, and the Defendant filed a Reply [Doc. 65] on May 7, 2018.

The Court held an Evidentiary Hearing on the matter on May 11, 2018. The defense called Mark Warren and Defendant Scott Daniel Warren. The Government called no witnesses.

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after his independent review and consideration, enter an order **DENYING** Defendant's Motion to Dismiss Counts 2 and 3 [Doc. 45].

**FACTS**

Mark Warren, the father of Defendant Scott Daniel Warren, imbued his son with the

belief that all things have a life force that should be honored. Both of them believe that the Earth is their house of worship and they respect the dignity and wishes of all they encounter. A key element of the Defendant's belief system is to help others in distress to the point of being a duty or compulsion.

The Defendant, in a visit to Ajo, Arizona, was so moved by the soul and spirit of the area, that he decided to relocate and reside there. As a result of his residence in Ajo, his awareness of the area's beauty and pain has increased. This he attributes to the fact that everything in the area has a soul, power, and spirit that he feels in keeping with his religious beliefs. The Court believes his views are in the nature of animism.

The Random House Dictionary of the English Language (Second Edition Unabridged) defines "animism":

> **an-i-mism** *n.* **1.** the belief that natural objects, natural phenomena, and the universe itself posses souls. **2.** the belief that natural objects have souls that may exist apart from their material bodies. **3.** the doctrine that the soul is the principle of life and health. **4.** belief in spiritual beings or agencies. [1825-35; < L *anim*(a) (see ANIMA) + -ISM) –**ani'i-mist**, *adj.* –**an'i-mis'tic**, *adj.*

This belief of Defendant's is illustrated by his publication of "Afterlives of Found Objects in the Southwestern Desert Borderlands", Exhibit 101. The objects presented in the publication are examples of the power and spirit of the person who carried and left the objects in the desert. He considers them as sacred objects because of their bearer and all that occurred in the bearer's travels through the desert. Similarly, the Defendant's participation in the recovery of the dead is a sacred duty, a witness to the events resulting in the deceased's death more than the physical act of recovering the deceased's body.

The Court concludes that, just as an empty, discarded object expresses some despair, so does a full water bottle express some feeling of help and support. This is not before this Court, but seems to explain the extent of the Defendant's beliefs and conduct.

The Defendant's belief is a somewhat modified Golden Rule, in that he has a compulsion to help those in their immediate need, i.e. food, water, and medical aid. His beliefs do not seem to reach assistance for the ultimate goal. He believes he will help people where they are, but not help them get to their ultimate destination.

The Defendant, along with others who have similar beliefs in part, utilizes the Ajo property known as The Barn to exercise his religious beliefs of assisting people in distress. In this case, the Defendant visited The Barn three days in a row, assisting two persons illegally in the U.S. by providing them with at least food and water, which included preparing food for their consumption. When Border Patrol Agents arrived at The Barn, the Defendant accompanied them, after telling them to leave.

There is no evidence that the owner of the property has given the Defendant any specific control over the property, other than an unexpressed permission to use the facility for humanitarian purposes.[1]

## DISCUSSION

No testimony was presented that the statutes at issue compelled the Defendant to do anything in violation of his religious beliefs. The laws at issue are of a general nature that apply to all and do not single him or any identifiable group into acting in conflict with their religious beliefs. The Defendant is at best told not to violate the laws that apply equally to all.

By choosing to reside in Ajo, Arizona, as opposed to Tucson, Arizona, or some other location distant from the border, the Defendant asserts a conflict with his beliefs and the Federal Criminal Code. As a matter of law, the Court cannot conclude that he is entitled to judgment in his favor dismissing the Counts at issue because of unresolved questions of fact.

The questions of fact presented are:

1. Were the illegal aliens as defined by the statute or undocumented migrants as defined by the Defendant in distress upon the first encounter or thereafter during their three-day stay at The Barn?

2. Were The Barn conditions such as signage re: maps and legal advice

---

[1] The Court acknowledges that the Defendant, on May 17, 2018, in his Reply Brief in Support of Motion to Suppress [Doc. 73], asserts at page 3, line 7, that he "received personal permission from the owner to be in The Barn". At the hearing held on May 11, 2018, on the Motion to Dismiss, no such evidence was asserted or presented. If asserted in the Motion to Dismiss, it might have adversely answered some of the questions of fact raised by the Court.

attributable to the Defendant?

3. Did the Defendant provide the material witnesses with the directions for their future travels and is this in violation of the law?

4. Did the Defendant's remarks to the Border Patrol Agents at the scene go beyond the Defendant's expressed beliefs?

The Defendant's religious beliefs are to help others in distress. At no time during the Defendant's testimony did he claim that his religious beliefs necessitated he aid undocumented migrants, only that he was compelled to aid persons in distress. As a result of this definition expressed by the Defendant, only some of his conduct may conflict with Federal immigration laws. Assisting undocumented migrants is not an expressed objective of his beliefs. Violating the law in order to assist distressed undocumented migrants is not one of his expressed beliefs. He is generally charged with harboring aliens illegally present in the United States, whether or not they are in distress. The Defendant is not asserting that harboring or concealing people illegally in the country cannot be prohibited. Nor has he asserted or testified that his beliefs require he assist people illegally in this country to evade apprehension or reach their ultimate destination. As such, the statutes under which the Defendant is charged do not substantially burden the Defendant's exercise of religion and, therefore, the Court need not apply a strict scrutiny standard.

## CONCLUSION

It is the recommendation of this Court that the District Judge, after his independent review and consideration, enter an Order **DENYING** Defendant's Motion to Dismiss Counts 2 and 3 [Doc. 45].

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections and Responses to objections filed

1  should be filed as CR 18-00223-TUC-RCC. No Replies shall be filed unless leave is granted
2  from the District Court.
3      DATED this 30th day of May, 2018.

                                       Bernardo P. Velasco
                                   United States Magistrate Judge