Katherine Franke (*pro hac vice pending*)
Sulzbacher Professor of Law
Columbia University
435 W. 116th Street
New York, NY 10027
212.854.0061
kfranke@law.columbia.edu

James J. Belanger (Arizona Bar No. 011393)
JBELANGER LAW PLLC
PO Box 447
Tempe, Arizona 85280
(602) 253.6682
jjb@jbelanglerlaw.com

*Attorneys for Amicus Curiae Professors
Katherine Franke, Caroline Mala Corbin,
Micah Schwartzman, Elizabeth Sepper,
and Nelson Tebbe*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| | ) No.CR-18-00223-001-TUC-RCC |
| Plaintiff, | ) |
| | ) |
| vs. | ) **BRIEF OF AND BY PROFESSORS OF** |
| | ) **RELIGIOUS LIBERTY AS AMICUS** |
| SCOTT DANIEL WARREN, | ) **CURIAE IN SUPPORT OF** |
| | ) **DEFENDANT'S MOTION TO** |
| Defendant. | ) **DISMISS** |
| | ) |

Amici Law Professors, all considered to be experts in constitutional law and specifically the law of religious liberty, seek to provide the court with the proper framework

within which to consider Dr. Warren's motion to dismiss grounded in the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (hereinafter "RFRA").

This case represents one of the first instances in which a court has had to adjudicate the application of RFRA as a defense to a criminal prosecution under federal immigration law, specifically 8 U.S.C. § 1324(a)(1)(A)(iii) which prohibits harboring and is a criminal law of general application. Given that the issues involved—the enforcement of federal immigration law and the fundamental right to religious liberty—are significant, and that the case presents a question of first impression, it is imperative that the court structure its ruling on the RFRA motion to dismiss in a way that will provide clear guidance to the parties here and to other parties and courts in the future. Particularly because a wide range of religious institutions currently operate homeless shelters, soup kitchens, or other charitable services that provide basic needs such as food, water, shelter, or clean clothes to persons who may be undocumented, it is particularly important that this court provide clear guidance on this matter.

Congress enacted RFRA in 1993 in response to the Supreme Court's holding in *Employment Division v. Smith*, 494 U.S. 872 (1990), that the Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id*. at 879 (internal quotation marks omitted). With RFRA, Congress sought "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)," that had been altered by the Court in *Smith*. 42 U.S.C. § 2000bb(b)(1). By reinstating as a statutory matter the pre-*Smith* free exercise standard, Congress recognized the fact that laws of

general applicability may, in some cases, impose a substantial burden on the religious exercise of some persons, and when they do, the government must justify such burden on religious exercise as furthering a compelling interest through narrowly tailored means. RFRA aims to provide substantial protection to the free exercise of religion while recognizing that these rights are not absolute, insofar as they must yield where necessary for the government to implement a compelling public interest, or where the rights of third parties, for instance other citizens, are burdened by the overly solicitous accommodation of an individual's religious belief.  Further, the First Amendment's Establishment Clause imposes a limit on the extent to which the government may accommodate the religious beliefs of citizens, as the government must ensure that an "accommodation [is] measured so that it does not override other significant interests" and does not "differentiate among bona fide faiths." *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).

RFRA is a careful balancing test intended to provide discrete religious exemptions to those whose religious activities are inadvertently constrained by neutral laws of general applicability. To receive an exemption under RFRA, a claimant need not demonstrate that the challenged law or policy singles out any particular group for special harm—such a law would be unconstitutional under the Free Exercise and Establishment Clauses of the First Amendment, making a RFRA exemption unnecessary. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). Nor need a defendant show that he believes the challenged law cannot exist *at all*. RFRA is not a means of challenging the application of a law or policy generally, but of challenging a particular application to the extent that it conflicts with a particular person's specific religious practices.

Under RFRA, the federal government may not "substantially burden" a person's religious exercise, even where the burden results from a religiously neutral, generally applicable law that might be constitutionally valid under *Smith*, unless the imposition of such a burden is the least restrictive means to serve a compelling governmental interest. The person claiming a RFRA defense, in this case Dr. Warren, must show i) that he holds a belief that is religious in nature; ii) that that belief is sincerely held; iii) that his exercise of religious belief was substantially burdened by a federal law or policy. Once the person claiming a RFRA defense has made out this showing, the burden shifts to the government to show that i) it has a compelling governmental interest; and ii) that interest is being accomplished through the least restrictive means. 42 U. S. C. §§2000bb–1(a), (b).

In this case the government has addressed only three issues in connection with the RFRA motion: it argues that the defendant's religious beliefs were not substantially burdened, that the government has shown a compelling state interest to enforce the law in this case, and that the law is narrowly tailored to accomplish that compelling interest.

**The RFRA Prima Facie Case**

With respect to the showing required by the party claiming a RFRA exemption, the claimant must first show by a preponderance of the evidence that he holds a belief that is *religious* in nature. This showing requires courts to consider the mixed question of whether, objectively, the claimant's beliefs are "religious" and whether, subjectively, the claimant himself understood the beliefs to be religious. RFRA covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Burwell v. Hobby Lobby*, 573 U.S. ___, 134 S.Ct. 2751, 2762 (2014). RFRA provides protection to a wide

diversity of religious practices, including those that differ significantly from the Abrahamic traditions.  Thus, a RFRA claimant need not show that they believe in a singular deity, that their faith includes a house of worship, or that they are a member of a recognizable congregation.[1] "This [] inquiry reflects our society's abiding acceptance and tolerance of the unorthodox belief. Indeed, the blessings of our democracy are ensconced in the first amendment's unflinching pledge to allow our citizenry to explore diverse religious beliefs in accordance with the dictates of their conscience." *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984).  "[W]e are a cosmopolitan nation made up of people of almost every conceivable religious preference." *Braunfeld v. Brown,* 366 U.S. 599, 606 (1961). "Our nation recognizes and protects the expression of a great range of religious beliefs." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1064 (9th Cir. 2008).

In considering whether a system of values or beliefs counts as religious for the purposes of RFRA and similar federal statutes, courts have looked to several key indicia of "religiosity" that implicate "'deep and imponderable matters' … includ[ing] existential matters, such as humankind's sense of being; teleological matters, such as humankind's purpose in life; and cosmological matters, such as humankind's place in the universe." *Cavanaugh v. Bartelt*, 178 F. Supp. 3d 819, 829 (D. Neb. 2016), aff'd (8th Cir. Sept. 7, 2016).

---

[1] In this respect the Government's questioning of the defendant's father during the evidentiary hearing on whether the defendant attended "church" was irrelevant. Doc. 45, Transcript of Proceedings, May 11, 2018 at 27-28.  Similarly, the government's questioning of the defendant about whether he belonged to the Jewish, Mormon, Catholic, Muslim or Bahai faiths was irrelevant. *Id.* at 53.

While the objective question of differentiating religious from other kinds of belief systems may be challenging in some cases, this is not a hard question in this case. Dr. Warren's testimony and that of his father demonstrate that the beliefs that compelled Dr. Warren to provide aid to persons in and around Ajo, Arizona clearly implicated "'deep and imponderable matters,' includ[ing] existential matters, such as humankind's sense of being; teleological matters, such as humankind's purpose in life; and cosmological matters, such as humankind's place in the universe." *Id*.

There remains a subjective factual component to the question of whether a particular RFRA claimant's belief system should be treated as religious: were they considered by the claimant to be religious in nature? The central factual question is "whether they are, *in his own scheme of things*, religious." *Id.* at 157 (quoting *United States v. Seeger,* 380 U.S. 163, 185 (1965) (emphasis added)), with the aim of "differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Isbell v. Ryan*, 2011 WL 6050337 (D. Ariz., December 6, 2011), citing *Patrick v. LeFevre*, 745 F.2d 153, 157.

In this case the factual question of whether the defendant's beliefs were religious in nature is not disputed by the government, nor is it a difficult question to resolve in Dr. Warren's favor given the testimony presented at the evidentiary hearing. Therefore, this element can be resolved in the defendant's favor at this juncture.[2]

---

[2] At the evidentiary hearing Dr. Warren's father testified that his son's belief system was not simply ethical, secular belief, and that that "Church of the Natural World" involves a "life force, a soul." Doc. 45, Transcript of Proceedings, May 11, 2018 at 20-21, 33. Dr. Warren testified to his belief that the desert had a soul and a life force, and that providing

Second, the RFRA claimant must show that his religious beliefs are *sincerely held*. *Hobby Lobby,* 134 S.Ct. at 2774 n. 28 ("To qualify for RFRA's protection, an asserted belief must be 'sincere'...."). This element is a question of fact, proven by the credibility of the party asserting a religion-based defense. *United States v. Zimmerman*, 514 F.3d 851, 854 (9th Cir. 2007) (stating that sincerity is "a question of fact"); *Patrick v. LeFevre*, 745 F.2d 153, 157 (2nd Cir. 1984) (the sincerity analysis "demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross- examination"); *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010) ("[S]incerity of religious beliefs 'is a factual matter.'"). *See generally* Kara Loewentheil and Elizabeth Reiner Platt, *In Defense of the Sincerity Test*, in <u>Religious Exemptions</u> 247 (Kevin Vallier & Michael Weber eds., 2018).

Rather than merely reducing this element to a matter of pleading and accepting the RFRA claimant's mere assertion of sincerity, the court must undertake a meaningful assessment of the factual basis for the claim to sincerity, including examination of the claimant's demeanor. At the evidentiary hearing Dr. Warren and his father presented ample credible testimony demonstrating that his religious beliefs were sincere in nature, and the government has not contested the truth of this assertion. Therefore this element can be resolved by the court in the defendant's favor on a motion to dismiss.

Next, the party seeking a RFRA-based exemption must show that the *exercise* of a

---

humanitarian aid is a "sacred act" *Id.* at 36-38, 55. Finally, Dr. Warren testified that he considered his belief system religious. *Id.* at 37. Nothing in the record contradicts or draws into question the conclusion that Dr. Warren's belief system is religious in nature.

sincerely held religious belief was *substantially burdened* by government action. This element contains two components: that the government *substantially burdened* the *exercise* of religious belief. Both aspects of this element are questions of law for the court to decide. *See Mahoney v. Doe,* 642 F.3d 1112, 1121 (D.C. Cir. 2011) (stating that judicial inquiry into the substantiality of the burden "prevent[s] RFRA claims from being reduced into questions of fact, proven by the credibility of the claimant"); *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) ("[a]ccepting as true the factual allegations that Kaemmerling's beliefs are sincere and of a religious nature—but not the legal conclusion, cast as a factual allegation, that his religious exercise is substantially burdened"); *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1144–45 (11th Cir. 2016); *Priests For Life v. U.S. Dept. of Health and Human Services*, 772 F.3d 229, 247 (D.C. Cir. 2014), <u>vacated on other grounds and remanded sub nom.</u> *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (noting that eight circuits have held that "the question of substantial burden also presents "a question of law for courts to decide."). As Professor Frederick Mark Gedicks has argued persuasively, "[t]he rule of law demands that the determination whether religious costs are substantial should be made by impartial courts." Frederick Mark Gedicks, *"Substantial" Burdens: How Courts May (and Why They Must) Judge Burdens on Religion Under RFRA*, 85 Geo. Wash. L. Rev. 94, 150–51 (2017).

A substantial burden exists when government action puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.,* 450 U.S. 707, 718 (1981). The Ninth Circuit has recognized two ways to understand the notion

of substantial burden in the RFRA context: (1) *forcing* a person to choose between the tenets of their religion and a government benefit, and (2) being *coerced* to act contrary to religious belief by threat of civil or criminal sanctions. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70 (9th Cir. 2008). The second formulation applies most appropriately in this case, where the threat of imprisonment and significant financial penalties will coerce the defendant to act in a way that is contrary to his religious beliefs. This standard was elaborated upon further by the Ninth Circuit in *Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F.3d 1207, 1214 (9th Cir. 2008) where the court described the problem of burden as "a Catch–22 situation: exercise of their religion under fear of civil or criminal sanction."

**The Government's Burden in Opposing the RFRA Motion**

If the claimant demonstrates a substantial burden on his ability to exercise his sincerely-held religious beliefs, he is entitled to a RFRA exemption unless the government can show that the burden is the least restrictive means of advancing a compelling government interest. A compelling interest must be clearly articulated and specific; "broadly formulated interests justifying the general applicability of government mandates" are not considered compelling. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006). Courts should take into account not only the interests of the government itself, but of third parties who stand to be impacted by an exemption. *Cutter v. Wilkinson,* 544 U.S. 709, 720, (2005) ("courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries").

To demonstrate that the application of the challenged law or policy is narrowly

tailored, the government must show that it could not achieve its compelling interest to the same degree while exempting the [party asserting the RFRA claim] from complying in full with the [law]" *U.S. v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016). *See also O Centro*, 546 U.S. at 431. This "focused inquiry" requires the government to justify why providing an exemption would be unworkable. *Id.* at 431-32.

Both the compelling interest and least restrictive means analyses are questions of law that can properly be addressed on a motion to dismiss. *See United States v. Friday*, 525 F.3d 938, 949 (10th Cir. 2008) ("We now conclude, as other circuits have, that both prongs of RFRA's strict scrutiny test are legal questions."); *United States v. Christie*, 825 F.3d 1048, 1056 (9th Cir. 2016) ("We review the district court's compelling-interest and least-restrictive-means conclusions de novo"). In our view, the government has not carried its burden on either of these elements.

**Objections to the Magisrate's Treatment of Dr. Warren's RFRA Motion:**

Our concerns lie largely with the Magistrate's misapplication of RFRA's "substantial burden" test. First, the Magistrate Judge noted "No testimony was presented that the statutes at issue compelled the Defendant to do anything in violation of his religious beliefs. The laws at issue are of a general nature that apply to all and do not single him or any identifiable group into acting in conflict with their religious beliefs. The Defendant is at best told not to violate the laws that apply equally to all." Magistrate's Report and Recommendation (hereinafter R&R) (Doc. 81) at 3.

This characterization of the substantial burden test misstates its meaning in the RFRA context. In noting that the laws "apply to all," the Magistrate Judge overlooked that

this is precisely the context in which RFRA was meant to apply: to laws of general application that impose a substantial burden on the sincerely held religious beliefs of some people. The Magistrate Judge's reading of the legal standard of burden may reflect the constitutional standard of protection for religious liberty recognized by the Supreme Court in *Employment Division v. Smith* (the Free Exercise Clause of the First Amendment "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability," 494 U.S. 872, 879 (internal quotation marks omitted)). However, RFRA was enacted specifically to provide greater statutory protection for religious liberty than is now recognized under the First Amendment. *See generally Ruiz-Diaz v. U.S.*, 703 F.3d 483 (9th Circ. 2012) ("RFRA requires the federal government to show that it is advancing a compelling interest through the least restrictive means possible where the government 'substantially burden [s] a person's exercise of religion,' *even where, as here, the burden results from a rule of general applicability*. 42 U.S.C. § 2000bb–1.") (emphasis supplied). Any suggestion that Dr. Warren's RFRA claim is weakened because the law he is charged with violating does not target religion and applies equally to all fundamentally misconstrues RFRA, which expressly applies to and was intended to restrict burdens on religion "even if the burden results from a rule of general applicability . . . ." 42 U.S.C. § 2000bb–1(a).

Second, the Magistrate Judge reasoned that "[a]t no time during the Defendant's testimony did he claim that his religious beliefs necessitated he aid undocumented migrants, only that he was compelled to aid persons in distress … Nor has he asserted or testified that his beliefs require he assist people illegally in this country to evade

apprehension or reach their ultimate destination." R&R at 4. Based on this reasoning, the Magistrate Judge concludes that the defendant's religious beliefs have not been substantially burdened. This too misstates RFRA doctrine.

The question is not whether defendant's religious beliefs commit him to violate the law, but whether his beliefs commit him to undertake acts that are otherwise treated as illegal by a federal law or by federal agents. For instance, in *Hobby Lobby* the issue was not whether the company's owners' religious beliefs required them to violate the Affordable Care Act, but rather whether their beliefs committed them to offering health insurance to employees but prohibited them from including contraception in that coverage. 134 S. Ct. 2751, 2775-77. Similarly, in *O Centro*, the issue was not whether the beliefs of a religious group with origins in the Amazon rainforest included the violation of the Controlled Substances Act, but rather whether the exercise of their sincere religious beliefs included ingestion of substances otherwise regulated by federal law. 546 U.S. at 425-26, 436.

The mistake that lies at the heart of the Magistrate Judge's reasoning on this issue is insisting that the acts entailed in the exercise of religion be defined in secular legal terms. It is to confuse the *actus reus* for the alleged crime itself. It is as if the government were reading a specific *scienter* requirement into RFRA, that is, that the person seeking an exemption be required to show that they intended to violate the law as an article of their faith, rather than that they intended to engage in faith-based acts that so happened to risk prosecution under the law. RFRA requires that the person requesting an exemption show that their actions were motivated by a religious purpose, not that they were motivated by a

desire to violate the law.  To require the latter would undermine the very purpose of RFRA: to provide individualized exemptions from the application of generally applicable laws to persons whose good faith religious exercise presents a conflict with the requirements of the law.

Relatedly, the government's reliance on *Guam v. Guerrero*, 290 F.3d 1210 (9th Cir. 2002), and *United States v. Bauer*, 84 F.3d 1549 (9th Cir. 1996), is misplaced.  In both of these cases the Ninth Circuit found as a matter of fact that only certain acts otherwise prohibited by federal drug laws were included in the defendants' Rastafarian belief system (i.e. smoking marijuana), while other acts for which the defendants were also prosecuted (i.e. selling or importing marijuana) were not shown to be part of the defendants' system of beliefs at all.  The Ninth Circuit's analyses did not turn on whether the defendants were motivated by an intent to violate the relevant statutory provisions. Instead, the focus of the inquiry in those cases was properly on whether the underlying *acts*—smoking, selling, or importing of marijuana—were elements of the defendants' religious exercise [on the defendants' own terms].

Dr. Warren's religiously motivated activities form the foundation of the government's prosecution under the harboring law.  The basis for the charge against Warren as described in the criminal complaint include providing food, water, shelter, and clean clothes to, as well as talking to, two undocumented migrants. (Doc. 1). These activities were clearly motivated by Dr. Warren's religious faith, which requires him to care for people that he believes are in distress.  During the evidentiary hearing, Dr. Warren explained "Based on my spiritual beliefs, I am compelled to act. I'm drawn to act. I have

to act when someone is in need." Doc. 45, Transcript of Proceedings, May 11, 2018 at 44. The Magistrate acknowledged this duty, describing his beliefs as "a somewhat modified Golden Rule, in that he has a compulsion to help those in their immediate need, i.e. food, water, and medical aid." R&R at 2.

Despite this, the Magistrate Judge found no substantial burden because Dr. Warren had not "asserted or testified that his beliefs require he assist people illegally in this country to evade apprehension or reach their ultimate destination." R&R at 3. The fact that Dr. Warren did not articulate a religious belief in concealing undocumented people, however, is irrelevant; nothing in the criminal charge includes any mention of Dr. Warren attempting to conceal the migrants from law enforcement. The bases for Dr. Warren's charge are entirely RFRA-protected activities, and his prosecution therefore puts him in the position of violating his religious beliefs or risking criminal prosecution—undoubtedly a substantial burden.

Properly understood, a key element of Dr. Warren's sincerely held religious beliefs included a commitment to help others in distress to the point of being a duty or compulsion to provide them aid even though there was a risk of violating federal law. This is precisely the kind of "Catch-22 situation" that RFRA's notion of substantial burden was intended to capture.

**Conclusion**.

For the foregoing reasons we believe that Dr. Warren's RFRA motion for dismissal should be granted because all of the elements of the claim case be resolved in his favor either as a matter of law or as a matter of fact based on the facts adduced at the evidentiary

hearing.

RESPECTFULLY SUBMITTED June 21, 2018.

        Katherine Franke (*pro hac vice pending*)
        and
        JBELANGER LAW PLLC

        By */s/ James J. Belanger*
            James J. Belanger

*Attorneys for Amicus Curiae Professors Katherine Franke, Caroline Mala Corbin, Micah Schwartzman, Elizabeth Sepper, and Nelson Tebbe*

## CERTIFICATE OF SERVICE

I certify that on June 21st, 2018, I, James J. Belanger, electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

    Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
    Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
    United States Attorney's Office
    405 W. Congress, Suite 4800
    Tucson, AZ 85701

    Gregory J. Kuykendall (email: mailto:greg@kuykendall-law.com)
    Amy P. Knight (email: mailto:amyknight@kuykendall-law.com)
    531 S Convent Avenue
    Tucson, AZ 85701
    Attorneys for Defendant Scott Daniel Warren

*/s/ James J. Belanger*