ELIZABETH A. STRANGE
First Assistant United States Attorney
ANNA WRIGHT
Assistant U.S. Attorney
NATHANIEL J. WALTERS
Assistant U.S. Attorney
State Bar No.: 029708
405 West Congress, Suite 4800
Tucson, Arizona 85701-5040
Telephone: (520) 620-7300
E-mail: anna.wright@usdoj.gov
E-mail: nathaniel.walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 18-CR-223-TUC-RCC (BPV) |
| Plaintiff, | |
| vs. | GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION RE MOTION TO DISMISS COUNTS 2 AND 3 |
| Scott Daniel Warren, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, hereby responds to the defendant's Objection to Report and Recommendation. Doc. 82. On May 31, 2018, the Honorable Bernardo P. Velasco, United States Magistrate Judge, issued a Report and Recommendation recommending denial of the defendant's Amended Motion to Dismiss Counts 2 and 3. Doc. 81. For the reasons discussed below, the government respectfully requests that the Court adopt the Report and Recommendation's conclusion that the defendant's motion should be denied.[1]

---

[1] The government incorporates by reference the arguments made in its response to the motion and at oral argument on May 11, 2018. *See* Doc. 62; *see also* LRCiv 7.1(d)(2) (incorporated by reference by LRCrim 47.1) (permitting incorporation by reference of "a previous pleading, motion or minute entry").

## I. Background

### a. Procedural Posture

The government charged the defendant by complaint on January 18, 2018, with harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). Doc. 1. On February 14, 2018, a grand jury charged the defendant in a three-count Indictment with conspiracy to transport or harbor illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) and (a)(1)(A)(iii) (Count One), and harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) (Counts Two and Three). Doc. 26.

On April 2, 2018, the defendant filed an Amended Motion to Dismiss Counts 2 and 3. Doc. 45. The government filed a response on May 2, 2018; the defendant replied on May 7, 2018. Docs. 62, 65. Thereafter, the Honorable Bernardo P. Velasco, United States Magistrate Judge, held an evidentiary hearing on May 11, 2018. Doc. 70. The defendant and his father testified on the defendant's behalf. *Id.* The government did not offer any witnesses. *Id.*

The defendant's motion to suppress is also currently pending, and the evidentiary hearing as to that motion is scheduled to recommence on July 13, 2018. *See* Docs. 53, 62, 73, 79, 83, 89. Trial is currently set to begin the week of September 11, 2018. Doc. 78.

### b. Summary of Offense

On January 17, 2018, in Ajo, Arizona, agents conducting surveillance on a building known as the "Barn" observed the defendant and two men, later identified as Kristian Perez-Villanueva and Jose Arnaldo Sacaria-Goday, standing outside the Barn and appearing to engage in conversation. Doc. 1. Shortly thereafter, the agents approached the

Barn on foot and conducted a knock-and-talk at the Barn. *Id.* They found Perez-Villanueva and Sacaria-Goday at the Barn, and determined that they were illegally present in the United States. *Id.* The agents subsequently arrested the defendant on suspicion of violations of 8 U.S.C. § 1324, and detained Perez-Villanueva and Sacaria-Goday as material witnesses. *Id.*

During their video depositions on March 7, 2018, Perez-Villanueva and Sacaria-Goday testified that they crossed into the United States from Mexico on January 12, 2018, and walked from the international border to Ajo, Arizona, on January 14, 2018. Defense Exhibit 103 at 7:7-8; Defense Exhibit 104 at 6:13-17. Perez-Villanueva and Sacaria-Goday estimated they walked between 8 and 11 hours before they reached a gas station. Defense Exhibit 103 at 12:8-13:1; Defense Exhibit 104 at 11:3-6. Once at that gas station, they were given a ride in a vehicle to another gas station. Defense Exhibit 103 at 14:8-17; Defense Exhibit 104 at 13:20-14:12.

At the second gas station, someone gave Perez-Villanueva and Sacaria-Goday $40. Defense Exhibit 104 at 51:10-12. With that money, they bought a burrito and a drink. *Id.* Sacaria-Goday did not eat much of the burrito because "those beans didn't taste very good." *Id.* at 52:7-9. After they reached the second gas station, a man in a vehicle approached them and offered them a ride to a place where they could get help. Defense Exhibit 103 at 14:20-15:2; 17:3-8; Defense Exhibit 104 at 15:13-23. This man eventually took them to the Barn. Defense Exhibit 103 at 18:22-19:6; Defense Exhibit 104 at 16:6-8.

Once at the Barn, Perez-Villanueva and Sacaria-Goday met the defendant and "asked [the defendant] if he could help [them] with water and with food, because [they]

wanted to continue [their] trip." Defense Exhibit 103 at 19:9-11; *see also* Defense Exhibit 104 at 21:3-6. Perez-Villanueva and Sacaria-Goday told the defendant that they crossed into the United States illegally. Defense Exhibit 103 at 22:5-8; Defense Exhibit 104 at 21:11-24. The defendant agreed to let Perez-Villanueva and Sacaria-Goday stay at the Barn, and to provide them with food and water. Defense Exhibit 103 at 19:14-23; Defense Exhibit 104 at 25:14-17, 26:7-9. Perez-Villanueva and Sacaria-Goday stayed at the Barn for three days and two nights. Defense Exhibit 103 at 20:3-4, 48:19-50:8; Defense Exhibit 104 at 23:10-15.

During the time that Perez-Villanueva and Sacaria-Goday stayed at the Barn, the defendant visited the Barn at night, and gave Perez-Villanueva and Sacaria-Goday food, clothing and a place to sleep. Defense Exhibit 103 at 22:12-23; Defense Exhibit 104 at 22:6-16, 23:1-6. Perez-Villanueva and Sacaria-Goday cooked for themselves but they always asked the defendant for permission to get water. Defense Exhibit 103 at 44:24-45:17. The defendant did not ask if Perez-Villanueva or Sacaria-Goday needed medical attention, offer them medical assistance, or offer to drive them to the hospital. Defense Exhibit 104 at 23:23-24:5. No one offered them took care of any cuts, bruises or injuries that either Perez-Villanueva or Sacaria-Goday had. Defense Exhibit 103 at 23:6-8.

Perez-Villanueva carried a cell phone with him from the time he crossed into the United States from Mexico on January 12, 2018. Defense Exhibit 103 at 26:9-14. During the video depositions, the government provisionally admitted several photographs found during a consensual search of Perez-Villanueva's cell phone. Those included a photograph of Perez-Villanueva when he was in Mexico (Exhibit 34); photographs of Perez-Villanueva

- 4 -

and Sacaria-Goday taken at the second gas station, before they arrived at the Barn (Exhibits 35-41); and photographs of Perez-Villanueva, Sacaria-Goday and others taken at the Barn during Perez-Villanueva's and Sacaria-Goday's stay at the Barn (Exhibits 42-47). Defense Exhibit 103 at 27:1-13, 27:17-29:2, 29:9-30:4. During the video depositions, the government also provisionally admitted several still shots dated January 14, 2018, from surveillance cameras at the gas stations Perez-Villanueva and Sacaria-Goday stopped at on their way to the Barn showing the men inside the gas stations (Exhibits 50-54). Defense Exhibit 103 at 32:4-19.

### c. Summary of Testimony

At the evidentiary hearing held on the defendant's Amended Motion to Dismiss Counts 2 and 3 held on May 11, 2018, the defendant and his father testified on the defendant's behalf as to the defendant's religious beliefs. Both witnesses offered general descriptions of the defendant's religious beliefs and his religious obligation to help people in distress. Doc. 74 at 16:3-11, 17:7-3, 19:19-23, 33:11-13, 44:21-25, 45:5-14, 86:19-21. However, aside from a generic reference of offering assistance to "people in need" or "people in distress," neither witness offered any detailed explanation of what the defendant believed qualified as a person in need or distress such that he was obliged to offer assistance, or any detailed explanation of what assistance he was required to offer. Most importantly, neither witness offered any explanation of the relationship between the defendant's religious beliefs and his actions in this case. *See id.* at 82:18-84:10, 88:8-89:14.

///

## II. Legal Summary

The Religious Freedom Restoration Act (RFRA) offers an affirmative defense to defendants accused of violating generally applicable federal criminal statutes. *See Ruiz-Diaz v. United States*, 703 F.3d 483, 485-86 (9th Cir. 2012). To establish a *prima facie* RFRA claim, the defendant must present evidence that (1) he has a sincerely held religious belief, (2) his activities were an "exercise of religion," and (3) the government action "substantially burdened" his exercise of religion. 42 U.S.C. § 2000bb-1(a); *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1068-69 (9th Cir. 2008). To do this he must articulate the scope of his beliefs and then show that the exercise of his sincerely held beliefs is substantially burdened by a government action. *United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007). In this case, to establish that a government action constitutes a substantial burden on the defendant's sincerely held religious belief, he must show that he was coerced to act contrary to his sincerely held religious beliefs by the threat of criminal sanctions. *Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F.3d 1207, 1214 (9th Cir. 2008) (quoting *Navajo Nation*, 535 F.3d at 1070).

The defendant in this case chose to present his RFRA claim through a motion to dismiss. As such, the proceedings are governed by Federal Rule of Criminal Procedure 12(b)(2). Rule 12(b)(2) provides "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2) (2006). Thus, "[a] pretrial motion is generally 'capable of determination' before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted).

"'[A] district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.'" *Id.* at 1452 (quoting *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976)). Factual issues that go to the validity of a defense should not be decided by a court pretrial. *United States v. Schafer*, 625 F.3d 629, 636 (9th Cir. 2010). If a court chooses to make preliminary findings of fact, the court must evaluate the evidence in the light most favorable to the government and take all allegations in the charging document as true. *See United States v. Ubaldo*, 859 F.3d 690, 700 (9th Cir. 2017); *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).

**III. Discussion**

    ***a. Pursuant to Rule 12(b)(2) and Ninth Circuit precedent, a jury should resolve any disputed issues of fact related to the validity of the defendant's RFRA claim.***

The defendant's RFRA claim relies on disputed facts regarding the defendant's conduct in this case, including whether the illegal aliens in this case were ever in distress and whether the defendant intended to further the illegals aliens' entry into the United States. *See* Doc. 81 at 3-4. As discussed below, taking the evidence in the light most favorable to the government and the charging documents as true, the defendant has not met his burden to show that the prosecution in this case imposes a substantial burden on his exercise of his religious beliefs. As such, the Court should deny the defendant the relief he seeks, and this case should proceed to jury trial. *See* Fed.R.Crim.P. 12(b)(2) (2006); *Ubaldo*, 859 F.3d at 700; *Milovanovic*, 678 F.3d at 717.

The defendant argues that this Court should determine the disputed facts regarding the defendant's actions in this case in his favor. Doc. 82 at 2-4. Specifically, the defendant first argues that it is improper to allow this case to proceed to trial, because criminal trials are "demanding," "inconsistent with RFRA's spirit," and "would create unnecessary confusion" for the jury. *Id.* Contrary to the defendant's argument, a jury trial is the most appropriate method for determining what the defendant actually did in this case. *See Schafer*, 625 F.3d at 636; *Shortt*, 785 F.2d at 1452. The Attorney General's memorandum, cited by the defendant, does not suggest a different result since it simply summarizes the existing state of the law on religious freedom.

The defendant next argues that "courts routinely resolve disputed facts on motions to dismiss," by analogizing without to motions to dismiss for lack of jurisdiction or motions to suppress. Doc. 82 at 3. The defendant cites no authority to support his analogies, and the Ninth Circuit has held that motions to suppress are distinguishable from motions to dismissed based on the validity of affirmative defenses. *See Schafer*, 625 F.3d at 636.

The defendant next argues that the Court can and should disregard Rule 12(b)(2) because RFRA takes precedent over the procedural rule. Doc. 82 at 3. Nothing in RFRA or the subsequent case law demonstrates that Congress intended to supplant a jury's determination of the facts after a full trial with a district court's determination pretrial. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1120-22 (9th Cir. 2000).

Finally, the defendant cites to three district court decisions to show that district courts "routinely make factual determinations about defendants' alleged conduct when

resolving a RFRA motion." Doc. 82 at 4. The cases cited by the defendant demonstrate that, while courts are sometimes required to make factual determinations to resolve motions to dismiss based on RFRA claims, they construe the evidence and allegations in the light most favorable to the government and are careful to not invade the province of the jury. In *United States v. Jeffs*, 2016 WL 6745951 (D. Utah, Nov. 15, 2016), the district court construed the evidence and allegations in the light most favorable to the government. Similarly, in *United States v. Jim*, 888 F.Supp. 1058, *1061-62 (D. Or., March 13, 1995), the district court's decision does not cite to conflicting testimony on these issues. *Id.* Finally, in *United States v. Lundquist*, 932 F.Supp.1237, *1238 (D. Or., July 30, 1996), the district court noted that no evidence had been presented of uncharged crimes, and this did not affect its resolution of the motion to dismiss.

Despite the defendant's arguments to the contrary, the law is clear that at this stage in the proceedings, the Court must not decide factual issues that go to the validity the defense, and the Court must evaluate the relevant evidence and allegations in the light most favorable to the government. *See Ubaldo*, 859 F.3d at 700; *Milovanovic*, 678 F.3d at 717; *Schafer*, 625 F.3d at 636; *Shortt*, 785 F.2d at 1452. As discussed below, when the evidence and allegations are given their proper weight, it is clear that the defendant has not met his burden to establish a *prima facie* case.

///

### b. The defendant has not met his burden to establish a substantial burden on his exercise of his religious beliefs because the defendant's religious beliefs require him to help people in distress but do not require him to help illegal aliens avoid detection by immigration authorities.

The indictment alleges that the defendant knowingly concealed, harbored and shielded Perez-Villanueva and Sacaria-Goday from detection in order to avoid their detention by immigration authorities beginning on or about January 14, 2018, and continuing to on or about January 17, 2018. Doc. 26. For the purposes of this motion, the Court must take these allegations as true. *See United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). At the evidentiary hearing held on May 11, 2018, the defendant and his father offered general descriptions of the defendant's religious beliefs and his religious obligation to help people in distress. Doc. 74 at 16:3-11, 17:7-3, 19:19-23, 33:11-13, 44:21-25, 45:5-14, 86:19-21. However, neither witness testified that the defendant believes that helping illegal aliens avoid detection by immigration authorities is an exercise of his religion. *See id.*; *see also* Doc. 82 at 5-6. As such, the prosecution in this matter does not substantially burden the defendant's exercise of his beliefs since his beliefs are not in conflict with the criminal charges in this case. He could have, consistent with the statute, offered aid without intending to help the illegal aliens avoid detection by the immigration authorities. *See Oklevueha Native American Church of Hawaii v. Lynch*, 828 F.3d 1012, 1016 (9th Cir. 2016); *Guam v. Guerrero*, 290 F.3d 1210, 1222-23 (9th Cir. 2002); *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996).

The defendant argues that he has met his burden because "intentional evasion of law enforcement or assistance in reaching an 'ultimate destination'" is not an element of the

charged offense. Doc. 82 at 5-6; *see also* Doc. 88 at 11-14. The defendant is mistaken. The government must prove that "the defendant harbored, concealed, or shielded from detection [the illegal alien] for the purpose of avoiding his detection by immigration authorities." 9th Cir. Pattern Jury Instr. 9.3 (2010); *see also United States v. You*, 382 F.3d 958, 965-66 (9th Cir. 2004) (discussing *United States v. Barajas-Montiel*, 185 F.3d 947, 953 n. 7 (9th Cir. 1999); United States v. Nguyen, 73 F.3d 887, 894 (9th Cir. 1995)). Accordingly, the offense charged in this case alleges "non-protected actions" and does not impose a substantial burden. *See* Doc. 82 at 6.

In addition, even if an intent to avoid immigration authorities is not an element of the offense, at this stage in the proceedings, the government may still proceed on the theory that the defendant shielded the illegal aliens from detection. Contrary to the defendant's contentions, there is sufficient evidence in the record to support this theory, which would not impose a substantial burden on the defendant's exercise of his religious beliefs. The illegal aliens both testified that (1) they slept outdoors on the first night after they crossed into the United States, (2) they were subsequently chased by Border Patrol agents, (3) once at the Barn, they met the defendant and "asked [the defendant] if he could help [them] with water and with food, because [they] wanted to continue [their] trip," and (4) during their time at the Barn, they stayed indoors the majority of the time with little interaction with others. *See* Defense Exhibit 103 at 19:9-11, 42:4-43:17; *see also* Defense Exhibit 104 at 21:3-6. Based on this evidence, there is probable cause to believe that the defendant shielded the illegal aliens from detection by immigration authorities during their stay at the Barn. *See United States v. Ubaldo*, 859 F.3d 690, 700 (9th Cir. 2017). Since shielding

illegal aliens from detection by immigration authorities is not an element of the defendant's religious exercise, prosecution in this matter does not substantially burden his exercise of his religious beliefs.

> ### c. *The defendant has not met his burden to establish a substantial burden on his exercise of his religious beliefs because the defendant's religious beliefs require him to help people in distress but the evidence shows that the illegal aliens were not in distress.*

The evidence shows that the illegal aliens in this case were not in distress at any point during their stay at the Barn. The illegal aliens spent at most two nights in the desert with food, water, and appropriate clothing prior to arriving at the Barn. Shortly before they reached the first gas station, they lost their food and some of their clothing while fleeing from Border Patrol agents. However, within hours, they had $40 to buy food and drink, and were taking smiling "selfies." *See* Government's Exhibits 35-41; Defense Exhibit 104 at 51:10-12. As Sacaria-Goday admitted, when he and Perez-Villanueva arrived at the Barn, "it had been a lot less than 11 hours when [he] last ate something or last drank something[.]" Defense Exhibit 104 at 52:4-9. In fact, Sacaria-Goday felt well enough that he decided to let Perez-Villanueva eat more of the burrito because "those beans didn't taste very good." *Id.*

Even if the Court finds that the illegal aliens were in distress when they arrived at the Barn, there is no evidence to suggest that they remained in distress during their stay at the Barn. In fact, the photographs taken by the illegal aliens during their stay at the Barn show that they were well rested and fed during their time there. *See* Government's Exhibits

42-47.[2] In addition, Perez-Villanueva and Sacaria-Goday both testified that no one at the Barn offered them medical assistance, including treating injuries to their feet. Defense Exhibit 103 at 23:6-8; Defense Exhibit 104 at 23:23-24:5.

The defendant testified that, because of his religious beliefs, he is obligated to help people in distress. In this case, the illegal aliens were not in distress at any time prior to or after arriving at the Barn. Therefore, the prosecution in this case does not substantially burden the defendant's exercise of his religious beliefs.

## IV. Conclusion

For the reasons discussed above, the defendant has failed to meet his burden to establish that his exercise of his religious beliefs is substantially burdened by the prosecution in this case. Accordingly, the government respectfully requests that the Court adopt the Report and Recommendation in full, and deny the defendant's Amended Motion to Dismiss Counts 2 and 3. Doc. 81.

Respectfully submitted this 5th day of July, 2018.

                                        ELIZABETH A. STRANGE
                                      First Assistant United States Attorney
                                      District of Arizona

                                      */s/ Anna R. Wright & Nathaniel J. Walters*

                                      ANNA WRIGHT &
                                      NATHANIEL J. WALTERS
                                      Assistant U.S. Attorneys

---

[2] The Court should disregard the defendant's belated assertion that continuing to shelter the illegal aliens was also an exercise of his religious beliefs because the defendant did not offer any testimony on this issue. *See* Doc. 82 at n. 3.

1 Copy of the foregoing served electronically or by other means this 5th day of July, 2018, to:

All ECF participants