Gregory J. Kuykendall, Bar #12508
Amy P. Knight, Bar #031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson AZ, 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com

*Pro Bono* Attorneys for Defendant Scott Daniel Warren

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.CR-18-00223-001-TUC-RCC |
| Plaintiff, | **MOTION TO RECONSIDER ORDER DENYING MOTION TO DISMISS UNDER THE RELIGIOUS FREEDOM RESTORATION ACT** |
| vs. | |
| SCOTT DANIEL WARREN, | |
| Defendant. | |

Defendant Scott Daniel Warren, through his *pro bono* attorneys Gregory J. Kuykendall and Amy P. Knight, hereby moves this Court to reconsider its September 17, 2018 Order denying his Motion to Dismiss (Doc. 127). This motion is supported by and specifically incorporates the accompanying Memorandum of Points and Authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

This Court should reconsider its order denying Defendant's motion to dismiss for two reasons: (1) it fails to appreciate the binding nature of the Government's factual

allegations on a motion to dismiss and (2) it mistakenly relies on a single court's use of the term "affirmative defense" in reference to RFRA to erroneously conclude that the Court may not resolve disputed facts in a pretrial motion.

*First,* this Court states it would be " inappropriate" to assume the government's factual allegations are true for purposes of this motion. Doc. 127 at 5. But assuming the truth of alleged facts and thereby resolving a legal issue about the application of a federal statute is a basic and routine task when considering a motion to dismiss. For instance, in *United States v. Nosal,* 676 F.3d 854 (9th Cir. 2012) (*en banc*), the Government charged the defendant with violating the Computer Fraud and Abuse Act (CFAA). The Government alleged that the defendant "convinced some of his former colleagues" to log in to company computers and "download source lists, names and contact information from a confidential database," and then share it with him, which violated company policy. *Nosal,* 676 F.3d at 856. This, the indictment alleged, "exceeded authorized access." The statutory charging provision punishes anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4). The defendant believed that the statute did not cover his conduct, and moved to dismiss the CFAA charges. The district court, *relying on the facts as alleged in the indictment*, concluded that "such conduct does not violate section 1030(a)(4)" and dismissed those counts. *United States v. Nosal,* 2010 U.S. Dist. LEXIS 24359 at *22-23 (N.D. Cal. 2010). The Government filed an interlocutory appeal, and the Ninth Circuit, sitting *en banc,* agreed with the district court that even if the Government proved the facts in the indictment,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

it could not secure a CFAA conviction. *Nosal,* 676 F.3d at 864.[1] For the purposes of the motion, the Court assumed the Government's alleged facts were true, exactly as Defendant has asked this Court to do here.

Moreover, simply reciting the elements of a crime in an indictment does not thereby immunize the indictment from a successful motion to dismiss which argues the defendant's actual conduct was fundamentally legal. Rather, a court considering a motion to dismiss must consider whether the defendant's *conduct as alleged* actually constitutes the crime charged, even where the indictment faithfully recites all of the elements. Again, *Nosal* is illustrative. The *Nosal* indictment alleged that the defendants "did knowingly and with intent to defraud access a protected computer belonging to [the employer,] without authorization and by exceeding authorized access, and by means of such conduct did further the intended fraud and obtain something of value, to wit, source lists and other information belonging to [the employer]." N.D. Cal. Case No. 3:08-cr-00237, Doc. 42. Thus, the indictment alleged that all the elements were satisfied. But that faithful recitation did not preclude the district court from considering whether the facts the Government alleged actually constituted the crime in question. Simply regurgitating the statutory elements is insufficient to defeat a pretrial claim that the conduct itself is not prohibited.

Here, the Government's rote tracking of the harboring statute that Dr. Warren "did

---

[1] The *en banc* court also expressed concern that criminalizing the alleged conduct could turn vast numbers of ordinary, well-meaning people into "federal criminal[s]" who could be vulnerable to "an aggressive prosecutor." *Nosal,* 676 F.3d at 860 n.7. It rejected the Government's promise that a narrower construction was unnecessary because it wouldn't "prosecute minor violations," declaring "we shouldn't have to live at the mercy of our local prosecutor," and explaining that without careful statutory interpretation, "[t]he difference between puffery and prosecution may depend on whether you happen to be someone an AUSA has reason to go after." *Id.* at 862.

knowingly conceal, harbor and shield from detection said alien in any place, including any building or any means of transportation to avoid said aliens' detection by immigration authorities" no more insulates the indictment from pretrial attack than did the Government's recitation of the elements of the CFAA violation in its *Nosal* indictment.[2] As *Nosal* illustrates, a district court is compelled to compare the defendant's alleged actions against the elements of the crime, and determine whether those alleged actions are in fact criminal. The indictment the Government obtained here contains no factual allegations, simply reciting the elements of the crimes with the alleged dates, locations, and names.[3] Thus, the Defendant necessarily looked to the facts the Government previously alleged in its complaint;[4] indeed, given the tight-lipped indictment, the complaint is the only factual notice the Government has provided. The Government cannot defend the legitimacy of its indictment through the prosecuting attorneys' bald insistence that Defendant also took *other* actions, which it neither alleged in its complaint nor presented to the grand jury.

---

[2] *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint. *See Jenkins v. S & A Chaissan & Sons, Inc.*, 449 F. Supp. 216, 227 (S.D.N.Y. 1978); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363, at 464-65 (2d ed. 1990); cf. In re American Express Co. Shareholder Litig. (Lewis v. Robinson), 39 F.3d 395, 400-01 n.3 (2d Cir. 1994) ("Conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss.") (collecting cases).").

[3] To the extent the language of the indictment differs slightly from the language of the statute, this is a result of the Ninth Circuit's interpretation of what § 1324 requires. *See* Ninth Circuit Model Criminal Jury Instructions 9.1 (2010).

[4] The Court cites *Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001) for the proposition that "the usual function of a criminal complaint is, solely and simply, to recount facts, produced by an investigation, that provide probable cause to arrest." Doc. 127 at 5-6. But *Milstein* was simply explaining that a California state court criminal complaint was an act subject to absolute prosecutorial immunity—not saying anything about the role of those alleged facts in the prosecution as it proceeds. And in any event, the complaint in this case was not filed until the day *after* the Border Patrol arrested Dr. Warren, and thus clearly was not simply for that purpose. Indeed, Fed. R. Crim. P. 3 states that "[t]he complaint is a written statement of the essential facts constituting the offense charged."

4

In sum, courts must assume the truth of the government's factual allegations when deciding if the alleged conduct constitutes the charged crime—and the only facts this Court can properly assume are those the Government alleged to a presumptively neutral third party–to a grand jury, or in a sworn complaint that constitutes the "essential facts" of the case.

*Second,* this Court asserts that RFRA is an "affirmative defense," and mistakenly equates the term "affirmative defense" with "trial only." Doc. 127 at 7. But that is not the law. As an initial matter, the statute itself says nothing about "affirmative" or that a RFRA claimant is limited in its presentation to a jury; only that RFRA is "a claim or defense." 42 U.S.C. § 2000bb(b)(2). Moreover, simply categorizing something as an "affirmative defense" neither signifies nor implies that it cannot be determined by pretrial motion. *See, e.g., United States v. Smith,* 866 F.2d 1092, 1095 (9th Cir. 1989) (government noncompliance with Paperwork Reduction Act "is in the nature of an affirmative defense . . . that 'is capable of determination without the trial of the general issue,' Fed. R. Crim. P. 12(b). As such, it is a defense that 'may be raised before trial by motion. . .'"). The case the Court relies on, *United States v. Sotelo-Murillo,* 887 F.2dd 176, 182 (9th Cir. 1989), never states that a claim labeled an "affirmative defense" cannot be decided pretrial; it explains only that the question of whether outrageous government conduct violates due process is for the court, not for the jury. Thus, at best, *Sotelo-Murillo* says affirmative defenses *may* be determined by juries; not that in every instance by definition they must be. Further, Black's Law Dictionary defines "Affirmative defense" as "In pleading, matter constituting a defense; new matter which, assuming the complaint to be true, constitutes a

defense to it." (5th Ed. 1983). None of this limits an affirmative defense to something proven at trial.

Most significantly, *Christie*—on which this Court relies for the proposition that the Ninth Circuit considers RFRA to be an "affirmative defense"—never held that RFRA claims must be determined at trial. In *Christie,* the defendants moved to allow evidence on a RFRA defense at trial. *United States v. Christie*, No. 10-00384(01) LEK, 2013 U.S. Dist. LEXIS 181090, at *10 (D. Haw. Dec. 27, 2013). Before the district court, the United States argued that a RFRA claim "does not differ from other pretrial motions, such as suppression motions, and should be decided before trial." *Id.* The district court agreed with the Government, and resolved the RFRA claim with a pretrial evidentiary hearing. *Id* at *12. In so doing, the Court specifically noted that "[w]hile the Government raises strong arguments" against the defendants' claims in their prima facie case, "it provides no contradictory factual evidence." *Id.* at *15. The Court ultimately ruled that the prosecution was the least restrictive means of furthering a compelling government interest.

On appeal, the defendants argued that RFRA rendered the substantive criminal law unconstitutionally vague, giving rise to a Fifth Amendment violation. *United States v. Christie,* 825 F.3d 1048, 1064 (9th Cir. 2016). It was in this Fifth Amendment context that the court categorized RFRA as an "affirmative defense"—in contrast to a provision that would "define the elements of an offense, fix any mandatory penalty, or threaten people with punishment if they violate its terms." *Id.* at 1065. But given that the Ninth Circuit made this comment in an opinion affirming the district court's *pretrial* resolution of the RFRA claim, it was obviously *not* ruling that RFRA defenses could only be raised at trial.

Thus, while of course *Jeffs* and *Lundquist*, as district court decisions, are not binding, their persuasive value should not be discounted for failure to apply *Christie*. *Christie*'s use of the term "affirmative defense," in the context of a Fifth Amendment claim, and in an opinion that actually affirmed a district court's *pretrial* RFRA ruling, does not justify this Court's reliance for the novel proposition that RFRA claims may not be decided pretrial.

From its first-ever encounter with RFRA, the Ninth Circuit presumed the claim would be resolved pretrial. RFRA was passed during the pendency of *United States v. Bauer*, 84 F.3d 1549 (9th Cir. 1996), after the district court had already denied a free exercise motion. On appeal, the Ninth Circuit reversed and directed that "[t]he court may conduct a preliminary hearing in which the defendants will have the obligation of showing that they are in fact Rastafarians and that the use of marijuana is a part of the religious practice of Rastafarians." *Id.* at 1559.

A review of the Ninth Circuit's RFRA cases confirms that it has *never* understood RFRA to require a jury determination instead of being decided pretrial. In *United States v. Top Sky,* a pre-RFRA First Amendment case that the Ninth Circuit has since imported into the RFRA context,[5] two defendants moved to dismiss their indictments on free exercise grounds; the court held an evidentiary hearing and denied the motions on the merits, having determined that the actual conduct of which the defendants were accused—selling eagle parts—was not only not an exercise of, but "deplored by the Indian religion." *United States v. Top Sky*, 547 F.2d 486, 488 (9th Cir. 1976). Notably, the Court relied on the "activities"

---

[5] *See United States v. Hugs*, 109 F.3d 1375, 1378 (9th Cir. 1997).

7

for which the defendants were being prosecuted—*not* simply the elements of the crime of indictment—and resolved the motion to dismiss based on what "the evidence shows." *Id.*

In *Guam v. Guerrero*, 290 F.3d 1210, 1212 (9th Cir. 2002), a defendant moved to dismiss his indictment on RFRA grounds. The Ninth Circuit explained that "[w]hether a prosecution for importation of marijuana substantially burdens one's religion is a legal question for courts to decide." *Id.* at 1222 n.20. In *United States v. Antoine,* 318 F.3d 919, 920-21 (9th Cir. 2003), the court considered a motion to dismiss a prosecution for dealing in eagle parts under RFRA.[6] The Court considered, pretrial, whether the alleged conduct was RFRA-protected, and concluded that the government satisfied RFRA's strict scrutiny test; the Ninth Circuit affirmed. *Id.* In *United States v. Vasquez-Ramos,* 531 F.3d 987, 990 (9th Cir. 2008), the defendants moved to dismiss the information under RFRA; the court relied on *Antoine* and denied the motion on the merits, again finding that the government had met its burden. The Ninth Circuit explained, in affirming, that "[w]hether application of a federal law violates RFRA is a question of statutory construction for the court, not a question of fact." *Id.*

Other judges in this district have followed all this precedent and considered RFRA-based motions to dismiss on the merits even where factual disputes exist. In *United States v. Tawahongva*, 456 F. Supp. 2d 1120 (D. Ariz. 2006), the defendant moved to dismiss charges under RFRA, claiming his possession of eagle fathers was only for religious

---

[6] The Court specifically noted that the Government had accused the defendant "of dealing in eagle parts, not just using them in traditional Native ceremonies." *Id.* at 921 n.2. But the Court held that "[t]his fact does not defeat his RFRA claim." *Id.*

reasons, and denying, as a factual matter, that he "ever traded or bartered for eagle feathers." *Id.* at 1126-27. The Court held an evidentiary hearing and specifically noted that the government apparently disputed that the use was only for religious reasons, but "the government did not present witness testimony or other evidence at the evidentiary hearing that would establish Defendant possessed the eagles in question for other than his personal religious use." *Id.* at 1127. The Court considered extensive evidence and ultimately concluded that the burden on the defendant's exercise of religion imposed by a federal permit requirement existed, but was not substantial. *Id.* at 1132.

Finally, the Supreme Court has made it clear that actual proof of specific conduct is not necessary to establish entitlement to RFRA protection. In *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), the Court upheld a lower court's grant of a preliminary injunction preventing the federal government from even instituting criminal proceedings against parties engaged in a particular religious practice. Obviously, those religious individuals were not required to submit to federal prosecution based on the Government's unilateral decisions about statutes it could accuse them of violating without specific factual allegations. Moreover, the district court—whose ruling the Supreme Court affirmed—explained that "violations of the religious exercise rights protected under RFRA represent irreparable injuries." *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236, 1269-70 (D.N.M. 2002).

In enjoining the Government from bringing charges, the Court recognized that RFRA does more than provide a defense at trial; *RFRA entitles religious adherents to be free from prosecution for their practice altogether.* Giving full consideration to a motion

to dismiss pretrial is the only mechanism that gives full effect to that requirement. Requiring a defendant to go through a federal criminal trial before a court will determine whether he is entitled to protection simply because the Government has brought charges— especially where it has done so without any supporting factual allegations—is not consistent with the Supreme Court's explicit interpretation of RFRA's broad protection from harm to religious interests. Indeed, the Ninth Circuit recognized this in *Christie,* explaining:

> RFRA is explicit that such right may be invoked against the government as either a 'claim or defense,' *id.* § 2000bb-1(c), a sword or a shield. If a person has a sufficiently realistic fear that the government is going to punish him for exercising his religious beliefs in defiance of the law, he may unsheathe RFRA and file a preemptive strike in an effort to subdue the government before it treads further. . . .Alternatively, if the government strikes first—for example, by indicting a person for engaging in activities that form a part of his religious exercise but are prohibited by law—the person may raise RFRA as a shield in the hopes of beating back the government's charge. . .In either scenario, a religious objection may have the effect of immunizing the objector's past conduct from official sanction.

*Christie*, 825 F.3d at 1055 (citations omitted).

No procedural mechanism interferes with this Court's ability to provide the "immunity" to which Dr. Warren is entitled under RFRA. Tellingly, the Ninth Circuit's chose the word "immunizing," indicating it understood this to be a pretrial issue. *See* Advisory Committee Note, Fed. R. Crim. P. 12, note to subdivision b(1) and (2) ("In the other group of objections and defenses, which the defendant at his option may raise by motion before trial, are included . . . such matters as . . . immunity. . . .").

Critically, the facts the Court correctly notes it would have to determine before

ruling—that Dr. Warren "provided emergency aid" and that the recipients were "in need" (Doc. 127 at 6)—bear only on the question of whether, assuming he took the actions the Government has alleged, his conduct is shielded from criminality by RFRA. And that is precisely the question the Supreme Court and the Ninth Circuit have both recognized bears determination before a religious adherent is put through the full ordeal of a trial.

For these reasons, this Court should reconsider its Order that it cannot dismiss the charges under RFRA due to unresolved issues of fact. This Court must assume the truth of the Government's factual allegations as presented in its charging documents, consider the evidence that Dr. Warren is immune from prosecution for the actions the Government alleged in those documents because he was exercising his sincerely held religious beliefs, and dismiss the harboring charges.

RESPECTFULLY SUBMITTED this 26th day of September, 2018.

KUYKENDALL & ASSOCIATES
By /s/ Amy P. Knight
    Gregory J. Kuykendall
    Amy P. Knight
    531 S Convent Avenue
    Tucson, AZ 85701
    Attorneys for Defendant Scott
    Daniel Warren

CERTIFICATE OF SERVICE

I certify that on September 26th, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800

Tucson, AZ 85701