IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>      vs.<br><br>Scott Daniel Warren,<br><br>           Defendant.<br>_____ | NO.   CR 18-00223-TUC-RCC(BPV)<br><br>**ORDER RE DEFENDANT'S MOTION FOR DISCOVERY INTO SELECTIVE ENFORCEMENT** |

   Defendant Scott Daniel Warren filed a Motion for Discovery into Selective Enforcement [Doc. 113] requesting production in seven enumerated categories. The Government opposes said Motion.

   The current administration, under the direction of the President, the Secretary of Homeland Security, and the Department of Justice, has instituted a zero tolerance policy on illegal immigration. Upon information and belief, this Court believes the local prosecuting agency (the U.S. Attorney) has to report on a daily basis the prosecutions initiated within the District of Arizona.

   The Government accomplishes its goals for the prosecution of immigration offenses by the following Court processes:

   1) OSL at 1:30 p.m. for petty offenses and petty/felony prosecutions;

   2) Further proceedings at 9:30 a.m. for petty/misdemeanor/felony prosecutions for jail sweeps, Port of Entry, and marijuana backpackers;

   3) Felony prosecutions at 2:00 p.m. for re-entry, transporting, and harboring of

1   illegal aliens (undocumented migrants/aliens: UDA's).

2   As a general rule, in transporting or harboring cases, the U.S. Attorney prosecutes a
3   person whether the conduct is for profit or not and without regard to color (ethnicity).  The
4   punishment for illegal re-entry is 2, 10, or 20 years, depending on the accused's criminal
5   history.  The Government has recently taken up the prosecution of persons who have made
6   false statements in the acquisition of citizenship or lawful permanent resident status.  The
7   prosecution climate for individuals engaged in any of these activities has become very
8   aggressive by the Government and unpleasant for the targets of all prosecutions.

9   No More Deaths and similar organizations have been operating in Southern Arizona
10  for many years in an uneasy status. Recently, the Department of Homeland Security, through
11  the U.S. Border Patrol, and the Department of the Interior, through the U.S. Forest Service,
12  have initiated prosecutions of No More Deaths members for civil ecological infractions on
13  federal lands and of Defendants for transporting/harboring illegal aliens.  The conduct being
14  targeted is not induced by Government agents, but rather the voluntary actions of the persons
15  subsequently subjected to prosecution.  None of these persons are being prosecuted for any
16  First Amendment rights of speech, association, or assembly.

17  The previously existing period of tolerance seems to have ended.  The Government
18  is now prosecuting No More Deaths members for all infractions of the law wherein the
19  Government believes it has probable cause.

20  In this case, Border Patrol was notified about the suspected illegal presence of
21  undocumented aliens in the Ajo area.  Border Patrol had, prior to this date, suspected The
22  Barn as a staging area for volunteers and UDA's.  A decision to surveil The Barn was made
23  the day after Border Patrol received notice of a suspected illegal presence in the area.

24  On January 17, 2018, at 8:30 a.m., No More Deaths released into the internet, the
25  press, and Border Patrol a video news release criticizing Border Patrol agents for vandalizing
26  water distribution sites.  By 10:34 a.m. of the same day, Border Patrol transmitted an email
27  update as a For Your Information (FYI) on the No More Deaths video.  No instructions,
28  orders, or suggestions went out to any recipients of the email.

1        At 2:00 p.m. on January 17, 2018, two agents set up surveillance of The Barn in
2 search of the two reported undocumented aliens. During the surveillance, a decision was
3 made that if there was an arrest made based upon probable cause, the prosecution would be
4 done by the U.S. Attorney, through either Border Patrol or Homeland Security Investigations
5 (HSI). The case would therefore be categorized as either reactive or investigative.

6        After the arrest of Defendant Warren and two undocumented aliens, the U.S. Attorney
7 took over prosecution of the case, as what appeared to be a reactive case, presumably on the
8 theory that Border Patrol did the work so they should get the prosecution responsibility.

9        The Defendant asserts, however, that the decision to prosecute him was based upon
10 No More Death's release of the video critical of the Border Patrol. Consequently, the
11 Defendant asserts the surveillance agents must have been directed to arrest the suspected
12 Barn migrants and Defendant Warren.

13        This suspicion should be explored to determine whether the Defendant's assumption
14 is a deliberate or coincidental Government action.

15        **IT IS THEREFORE ORDERED** that the Government disclose any emails or texts
16 sent to the two agents surveilling The Barn from 8:00 a.m. until these two agents went off
17 duty on January 17, 2018.

18        DATED this 7th day of November, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge