Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com
*Pro Bono* Attorneys for Defendant Scott Daniel Warren

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.CR-18-00223-001-TUC-RCC (BPV) |
| Plaintiff, | |
| vs. | **REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DISCLOSURE AND FOR SANCTIONS** |
| SCOTT DANIEL WARREN, | |
| Defendant. | |

The Government has indicated, in its response to Defendant's motion, that on December 4, it "provided all of the responsive materials to the Court *in camera* with a plan for disclosure," and that the Court then "issued a letter approving of the government's disclosure plan," and the government provided disclosure in accordance with that interaction it had with the Court ex parte. Doc. 139, para. 8. The Government states that it has now "timely and fully complied with the Court's Order." *Id.* para. 9. But providing documents for *in camera* review with a "plan for disclosure," whatever that means, is not what the Court ordered on November 7,

2018 (Doc. 135). Nor is providing a subset of the responsive materials selected by some undisclosed criterion. Rather, the Court ordered that "the Government disclose *any* emails or texts sent to the two agents surveilling The Barn from 8:00 a.m. until these two agents went off duty on January 17, 2018." *Id.* at 3 (emphasis added). By its own admission, that is not what the Government has done. Accordingly, this Court should order the Government to provide complete disclosure to the defense per its order of November 7.

1. <u>The Disclosure Provided to Date Strongly Suggests that Additional Responsive Materials Exist.</u>

As the Government notes, it disclosed a set of materials to the defense on the afternoon of December 4. That disclosure consisted of 63 pages, comprising:

- One redacted email sent to Agent Marquez by Thomas C. Smith at 7:24 pm, with attachments, source not identified

- A second copy[1] of that same email, similarly redacted, also with the same attachments, apparently produced from the email program of Agent Marquez

- One text message conversation among three people not identified but believed to be Agents Albert Ballesteros, Brendan Burns, and John Marquez,

---

[1] It appears that the multiple copies may be a result of the fact that the Government requested materials both from the Border Patrol's E-Discovery Unit and from the two agents directly. Doc. 139 at para. 2. Thus, some of the documents do not appear to have been produced from any particular individual's email program, and likely came from the E-discovery unit; others appear to have come from the agents directly.

beginning at 12:06 pm, believed to have been produced from the phone of Agent Marquez

- One text message conversation between two people not identified but believed to be Fish and Wildlife Service Officer Donald Ebban and Agent John Marquez, beginning at 12:29 pm, believed to have been produced from the phone of Agent Marquez

- One email forwarded from Agent John Marquez to Agent Brendan Burns at 10:05 pm, which contains no text but has six attachments, apparently produced from the email program of Agent Burns; the attachments are not included

- A second copy of the same email forward, this time with the attachments reproduced, source not identified

- A third copy of the same email forwarded by Agent John Marquez to an individual named Nelson R. Bentley, at 12:32 pm, also with identical attachments reproduced, source not identified

- 12 pages of data concerning border crossings by the defendant that are not clearly associated with any particular communication

Thus, if the Government has, as it claims, actually complied with this Court's order, Agent Marquez had only two text conversations and received one email on that day between 8:00 am and the end of his shift, and Agent Burns only

participated in one text conversation, and received only a single email—from Agent Marquez. Neither agent received any texts or emails about anything other than their surveillance of The Barn, the background of Scott Warren, or, apparently, the questioning of the two migrants arrested, and neither received any texts or emails from anyone other than Thomas Smith, Albert Ballesteros, and each other.

First, this is facially implausible. Nobody living in the modern world and working in a government agency receives only a single email in a given workday. Yet the Government's document production, which it states constitutes full compliance with the Court's order, amounts to an avowal that neither agent received any other texts or emails, from anybody, about anything, between 8:00 am and sometime late in the evening on January 17, 2018.

Moreover, existing disclosure clearly establishes that, in fact, additional communications occurred that the Government has not disclosed here. For instance, the Court is already aware of the group text among the agents planning the raid on The Barn that occurred on the afternoon of January 17, which were sent to both Agent Burns and Agent Marquez (exhibit 3 to defendant's motion to suppress, filed April 19, 2018). The previously disclosed exchange ends in the midst of an ongoing conversation; the Court's order of November 7 encompasses the entire exchange. The Government should have included the entire exchange in its disclosure, and the fact that it omitted this known communication raises serious

4

questions about what else it has omitted. If whatever selection criteria the Government used resulted in the exclusion of those messages, the criteria cannot possibly have captured all of the messages either agent received during the identified period.

Additionally, the Government describes receiving materials from the two agents, reviewing those materials, and then requesting and receiving additional materials. Doc. 139, para. 6. But as far as defense counsel can tell, the disclosed materials that came from Agent Marquez consist of two text-message conversations and one email; the materials from Agent Burns consist of a single email. How is it that this disclosure includes both the materials the agents initially provided and the follow-up materials that it took them three weeks to produce? Indeed, the materials from Agent Burns consist of a single email; it is not possible for this to be both the material initially provided on November 9 and the "additional materials" that continued to arrive up through November 30. Moreover, none of the disclosed communications refer to one another, or to any other communications. The Government's explanation that it initially received a smaller subset, and then requested more materials, all of which are part of this disclosure, simply does not fit with what has been disclosed.

Finally, the inconsistent duplication of items in the disclosure suggests incompleteness. If the Government is disclosing both the documents provided by the E-Discovery Unit and those provided by the agents—a likely explanation for

the fact that the materials contain both a generic copy and Agent Marquez's copy of the 7:24 p.m. email from Thomas Smith, then why has the Government not provided Agent Marquez's copy of the email forwarded to Agent Burns? Why has it only provided Agent Marquez's copy of the group text with Agents Marquez, Burns, and Ballesteros, and not Agent Burns' copy?

This Court's order was simple: the Government was to produce *all* of the texts and emails sent to each agent for the defined period and disclose it to the defense. This, it clearly has not done.

2. <u>Submitting Documents to the Court and Subsequently Disclosing Some Undisclosed Subset Does Not Comply with the Court's Order.</u>

This Court specifically ordered the Government to "disclose" the communications sent to these two agents in a specific timeframe. It did not order submission to the Court for *in camera* review, nor did it order the parties to generate a "plan for disclosure" whereby the Government would disclose something other than the complete set of responsive documents. Thus, by submitting the complete documents only to the Court, it has not done what this Court publicly ordered it to do and what the parties had an opportunity to brief and argue.

There is of course nothing inherently wrong with a court ordering and then conducting an *in camera* review of documents to determine which are genuinely responsive to a discovery obligation. Indeed, in this very case this Court ordered in

open court, and subsequently conducted, an *in camera* review of texts and emails sent by agents John Marquez, Brendan Burns, and David Sandoval to determine if any of them had to be disclosed following their testimony pursuant to the Jencks Act (Doc. 100). This makes sense; the question of whether a communication "relates to the subject matter as to which the witness has testified," 18 U.S.C. § 3500(b), is subjective, and may require the Court's independent assessment. Thus, rather than issuing an order that the Government turn over all of those agents' communications, it ordered the Government to submit them *in camera* for a determination of whether they must be disclosed. The Court then issued a written order, served on all parties and publicly filed, with the results of its review.

But here, the Court did *not* order such a submission; it ordered disclosure. Nor is there any discernable reason to order an *in camera* inspection, rather than outright disclosure, of the materials here. The Order requires disclosure of *all* of the texts and emails these two agents received during a set time period. There is nothing open to interpretation and nothing for the Court to determine *in camera.*

This Court's most recent order on Defendant's motion for discovery is the November 7 order, and it is still in effect. Any actions taken by the Government outside of the public judicial process that are not part of the official record in this case cannot alter the orders governing this case that this Court properly entered. Accordingly, the Government's admitted action in disclosing something other than

the complete materials the Court ordered does not "timely and fully compl[y]" with the Court's order.

3. <u>If the Government Objects to the Terms of the Court's Order, It Must Litigate that Objection Openly Rather Than Engaging in Ex Parte Communications.</u>

The law provides procedures for a party to seek relief where a court's order requires it to do something it does not wish to do. For instance, if the Government did not wish to disclose every text and email sent to these agents during the specified time, as the Court ordered, it could have filed a motion for reconsideration, asking the Court to alter its discovery order. Such a motion could have asked, among other things, for the court to conduct an *in camera* review of materials to identify those that need not be disclosed, according to some specifically defined criterion. The defense would then have had the opportunity to respond to the Government's proposed restrictions, and the Court would have made a ruling, on the public docket for this case, altering (or not) the terms of the November 7 order.

Alternatively, the Government could have sought a protective order under Fed. R. Crim. P. 16(d)(1) (although a blanket protective order preventing dissemination of all disclosure is already in effect in this case (Doc. 69)), shielding some particular category of information from disclosure, if it deemed that necessary. Again, if it had filed such a motion, the defense would have received notice of the proposed standards to be applied, and an opportunity to be heard, and

the Court would then make the limitations on required disclosure part of the public record.[2]

Here, according to the Government's account of events, which is the only source of information about these communications available to the defense, after being ordered to produce the complete set of emails or texts sent to the two agents during the specified time period, the Government prepared a "plan for disclosure." This document has not been provided to the defense, nor filed in the public record, and the Government's pleading (Doc. 139) provides no information about its content. Accordingly, the defense cannot object to its terms specifically. However, based on the disclosure that *was* received, it appears that this "plan" may have limited *which* of the texts and emails subject to the terms of the November 7 order the Government would disclose, and which it would withhold. That is not a proposal that the Government may make privately to the Court. *See, e.g., United*

---

[2] To be sure, Rule 16(d)(1) authorizes a showing of good cause required to justify a limitation on discovery to be made ex parte. But this does not mean that the very fact and nature of the limitations can be established in secret. Indeed, the Advisory Committee Notes to that provision make very clear that the request for a protective or modifying order is separate from the potentially ex parte good cause showing: "'[I]f a party requests a protective or modifying order and asks to make its showing ex parte, the court has two separate determinations to make. First, it must determine whether an ex parte proceeding is appropriate, bearing in mind that ex parte proceedings are disfavored and not to be encouraged. [An ex parte proceeding would seem to be appropriate if any adversary proceeding would defeat the purpose of the protective or modifying order. For example, the identity of a witness would be disclosed and the purpose of the protective order is to conceal that witness' identify.] Second, it must determine whether a protective or modifying order shall issue."

*States v. Kenney*, 911 F.2d 315, 321 (9th Cir. 1990) ("[I]n our system, adversary procedures are the general rule and ex parte examinations are disfavored."); *United States v. Napue,* 834 F.2d 1311, 1316, 1318 (7th Cir. 1987) ("noting "that *ex parte* communications between the trial court and the prosecution in a criminal case are to be greatly discouraged and should be permitted only in very limited circumstances" and "[t]hey should be avoided whenever possible and, even when they are appropriate, their scope should be kept to a minimum."); *cf. United States v. Klimavicius-Viloria,* 144 F.3d 1249, 1261 (9th Cir. 1998) (recognizing that "[i]n a case involving classified documents," a court may use ex parte proceedings "to decide the relevancy of the information," where government "explained the specific damage to national defense if information were disclosed."); *Napue,* 834 F.2d at 1318 (permitting ex parte communication where defendant "was given notice prior to its occurrence that the *ex parte* communication was to be made").

If, indeed, this "plan for disclosure" included some kind of content-based limitation on which messages the Government would disclose, Defendant is entitled to notice of what those proposed limitations are, and to be heard on whether they are appropriate. The defense is strongly opposed to any kind of relevance limitation. In particular, the Court may not be ideally situated to determine if a given conversation has any relevance to No More Deaths and the Defendant. The community of humanitarian aid workers involved in this retaliation claim is quite large; Defendant may well recognize names as pertaining to No

More Deaths that the Court has no reason to know. Similarly, their work comes with its own terminology which may be unfamiliar to the Court. Thus, the Defendant needs a complete set of messages these agents received to determine whether he and/or No More Deaths were being discussed in any way. *See Napue,* 834 F.2d at 1319 ("Even where the government acts in good faith and diligently attempts to present information fairly during an *ex parte* proceeding, the government's information is likely to be less reliable and the court's ultimate findings less accurate than if the defendant had been permitted to participate.").

      Even if the "plan for disclosure" refers only to the redactions applied to the communications disclosed—a scenario that seems highly unlikely given what was disclosed—that, too, should be discussed in a proceeding at which both parties are present. While some redactions are obvious and likely appropriate—for instance, the official email addresses of agents—others are not clear. For instance, both copies of the 7:24 Thomas Smith email contain a line of text that has been redacted. And while there is likely no problem with the redaction of certain case and file numbers, social security numbers, and birth dates, why has the Government redacted the "Incident Type" and "Incident Disposition" for a report on the Defendant? And what has been redacted in the entire page of the attachment to the Thomas Smith email covered by a black box? They have obviously not been careful only to redact information for which there is a compelling need for secrecy;

a comparison of the two copies of the attachment to the Thomas Smith email show that one of them redacts the "incident date" and the other does not.

In sum, rather than make the full disclosure ordered by this Court, the Government appears to have decided unilaterally what it thinks it should have to disclose, and provided that extremely limited set of materials in lieu of the full disclosure ordered by this Court. It further appears that the Government created a document it submitted to this Court, and the Court responded in writing, without copying the defense, and without first properly raising the issue of whether there was a compelling reason justifying the highly disfavored measure of proceeding on an ex parte basis. Accordingly, the Defendant requests that the Government comply fully with the Court's order of November 7, and additionally that the ex parte communications between the prosecutors and the Court be disclosed and made part of the official record of this case.

RESPECTFULLY SUBMITTED this 6th day of December, 2018.

By /s/ Amy P. Knight
Gregory J. Kuykendall
Amy P. Knight
531 S Convent Avenue
Tucson, AZ 85701
Attorneys for Defendant Scott Daniel Warren

## CERTIFICATE OF SERVICE

I certify that on December 6th, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701