Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com
*Pro Bono* Attorneys for Defendant Scott Daniel Warren

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| | ) No.CR-18-00223-001-TUC-RCC |
| Plaintiff, | ) |
| | ) **MOTION TO RECONSIDER** |
| vs. | ) **MAGISTRATE'S DENIAL OF** |
| | ) **MOTION TO COMPEL AND TO** |
| SCOTT DANIEL WARREN, | ) **WITHDRAW REFERRAL DUE TO** |
| | ) **IMPROPER EX PARTE** |
| Defendant. | ) **COMMUNICATIONS** |
| | ) |
| | ) |

Defendant Scott Daniel Warren, through his pro bono attorneys Gregory J. Kuykendall and Amy P. Knight, hereby moves this Court pursuant to 28 U.S.C. § 636(b)(1)(A) to reconsider the Magistrate Judge's order denying his motion compel the Government to comply with the court's order of November 7, 2018, and to withdraw the referral of pretrial matters in this case to Magistrate Judge Velasco. In support thereof, he states:

After being ordered to produce communications sent to two border patrol agents as possible evidence of retaliation against the Defendant for First

Amendment-protected activities, the prosecutors approached the Magistrate Judge ex parte and presented, in writing, an argument that they should not be required to disclose all the materials the Court had ordered. The Magistrate Judge, also acting ex parte, approved the Government's proposed disclosure that was far more limited than what was covered by the order. Only after this exchange occurred did the defense learn of this substantive ex parte exchange. Because the Government's ex parte communication to the Court was improper, and because the Magistrate Judge, acting without input from the defense, reached a mistaken conclusion, this Court should reconsider the Magistrate Judge's denial of the defendant's motion to compel because it is "clearly erroneous" and "contrary to law." 28 U.S.C. § 636(b)(1)(A).

BACKGROUND

On August 23, 2018, Dr. Warren filed a Motion for Discovery into Selective Enforcement (Doc. 113), outlining his claim that the Border Patrol surveilled and arrested him in retaliation for protected First Amendment speech and association. Specifically, Dr. Warren explained that his arrest came mere hours after No More Deaths, the humanitarian group with which he worked, released an embarrassing and highly critical report about border patrol agents destroying humanitarian aid supplies, and indeed emailed that report directly to border patrol officials, who forwarded it to the agent in charge at the local border patrol station. The motion requested seven categories of discovery. The Government filed a response on September 6, 2018 (Doc. 123), and Dr.

Warren filed a reply on September 13, 2018 (Doc. 126). The Magistrate Judge held oral argument on October 16, 2018 (Doc. 130). Dr. Warren filed a Notice of Supplemental Authority the following day, alerting the Court to the Ninth Circuit's brand new opinion clarifying that the heightened selective prosecution discovery standard does not apply to claims of selective enforcement (Doc. 131). The Magistrate Judge issued an Order on November 7, 2018, directing "that the Government disclose any emails or texts sent to the two agents surveilling The Barn from 8:00 a.m. until these two agents went off duty on January 17, 2018" (Doc. 135).

Defense counsel contacted the Government on January 19, inquiring about the Government's plans for compliance with the Court's order. AUSA Anna Wright responded that afternoon, stating "I am working to identify and gather responsive materials, and I hope to have a timeline for disclosure sometime next week." *See* Doc. 138-1. That week passed with no response, as did the following week. Finally, on November 27, 2018—nearly three weeks after the order and 18 days after their first inquiry, defense counsel again emailed counsel for the Government, asking "Could you please provide us with the promised timeline for this compliance as soon as possible?" *Id.* Having received no response by December 3, the defense filed a motion to compel (Doc. 138).

The following day, the Government nearly simultaneously filed a response to the motion (Doc. 139) and notified the defense that disclosure was available for pickup. The response stated that the Government "provided all of the responsive materials to the Court *in camera* with a plan for disclosure," and that the Court

then "issued a letter approving of the government's disclosure plan," and the government provided disclosure in accordance with that plan. Doc. 139, para. 8.

The defense filed a reply on December 6, 2018 (Doc. 138), objecting strenuously to the apparent ex parte communications between the Government and the Magistrate Judge concerning what subset of the ordered materials it would actually disclose, and explaining, based on the materials that were disclosed, that additional responsive documents had to exist. The defense explained that if the Government believed the order was too broad, it should have filed—and served on the defense—a motion for reconsideration, seeking a narrower order, and explaining why it should not have to comply with the order as written.

The Magistrate Judge issued an order denying the motion to compel on December 12, 2018 (Doc. 144). The Magistrate Judge insisted that the Government was in compliance with the disclosure order because it had disclosed "the information the Court determined was in compliance with the Court's Order," and that "[t]he defendant's suggestion that he is being denied discoverable evidence is unfounded," apparently because the Government's *in camera* submission was quite broad, and "[t]he Court reviewed it and found nothing helpful to the Defendant's case or theories of the case." The Magistrate Judge attached to the order his ex parte correspondence with the prosecutors.

The correspondence consists of a two-page letter from the prosecutors to the Magistrate Judge, dated December 3, 2018 (long after AUSA Anna Wright told

defense counsel she was gathering and reviewing materials), and a one-line response from Judge Velasco the following day. The Prosecutors' letter explicitly recognized that the Court's order was very broad, and then argued that "upon further review, many of the texts and emails sent or received during the relevant time period do not fall within the government's disclosure obligations." Doc. 144 at 3. The Government asked the Magistrate Judge for "permission to disclose only those materials that implicate the government's disclosure obligations under Federal Rules of Criminal Procedure 16 and 26.2, Federal Rules of Evidence 404(b) and 609, 18 U.S.C. § 3500 (Jencks Act), *Brady v. Maryland,* or *Giglio v. United States*" (citations omitted). *Id.* In other words, the Government was asking, outside of the presence of and with no notice to the defense, for the Court to rescind its order requiring additional disclosure for the selective enforcement claim not covered by the Government's other pre-existing disclosure obligations. The Government then outlined 18 distinct categories of documents apparently provided to the Court in camera with the letter, and delineated which ones it would be disclosing. Crucially, under the heading "Materials Not Subject to Disclosure," the Government listed materials that "relate to other unrelated criminal investigations," as well as materials that "relate to this matter but do not implicate the government's disclosure obligations." The Government then repeated its argument that it should only be required to produce materials covered by other pre-existing disclosure obligations. The Magistrate Judge's written response said only that he

would "confirm your proposed disclosure as being in compliance with [his] previous Order." Doc. 144 at 2.

1. <u>The Magistrate's Determination that the Government's Highly Limited Disclosure Complied With His Previous Order Was Clearly Erroneous.</u>

As the Government admits in its ex parte submission, "the Court's order required disclosure of <u>all</u> texts or emails" sent to the two agents during the designated time period. The Government then explicitly states that is it seeking the Court's permission to disclose something narrower—not all the materials covered by the order, but rather "only those materials that implicate the government's disclosure obligations" under other, background rules applicable in every case. Thus, the Magistrate Judge's insistence that the Government's production—which excluded communications the agents received during the identified time period that related to other criminal investigations, as well as communications relating to this case, both of which are unambiguously covered by the order—was "in compliance with [his] previous Order," (Doc. 144 at 2), is clearly erroneous. A disclosure that excludes materials indisputably covered by the facial terms of the order is simply not full compliance.

Instead, the Magistrate Judge appears to have decided, after reviewing the Government's ex parte argument, to functionally revise his previous order to cover only communications (1) related to this case (2) that he decides are relevant to the defendant's theories. That is a dramatically different order from the one he entered

on the docket after receiving full briefing and hearing argument from both parties. Yet the Magistrate Judge has insisted that this severely limited disclosure satisfies his "previous Order." Doc. 144 at 2. It does not.

2. <u>The Government's Argument, Made Ex Parte to the Judge, That It Must Disclose Only Documents Covered by Other Disclosure Obligations, Ignores the Governing Law.</u>

Along with fundamental fairness, propriety, and judicial integrity, an important reason why ex parte communications are not generally allowed is that the adversary process advances the accuracy of proceedings. *See, e.g., United States v. Napue,* 834 F.2d 1311, 1319(7th Cir. 1987) ("Even where the government acts in good faith and diligently attempts to present information fairly during an *ex parte* proceeding, the government's information is likely to be less reliable and the court's ultimate findings less accurate than if the defendant had been permitted to participate."). Here, the Government made a specious legal argument to the Court in private. Because the defense, unaware of the communication, had no opportunity to respond, no one pointed out to the Magistrate Judge the obvious flaws in the Government's reasoning.

In its ex parte submission, the Government took the position that it was only obligated to disclose materials covered by *other* disclosure obligations that existed independent of the Court's order on the selective enforcement claim. This position is wrong. For one thing, it is utterly illogical; if the Government only ever had to observe pre-existing obligations (i.e., Rule 16, Rules 404(b) and 609, Jencks,

*Brady,* and *Giglio*), there would be no such thing as a motion for discovery into selective enforcement—a claim which quite obviously exists, and is recognized in the Ninth Circuit. *See United States v. Sellers,* 906 F.3d 848 (2018). Moreover, the Government's own conduct belies any belief that this is actually how the law works; it did, in fact, disclose some additional materials pursuant to the order, albeit far fewer than the Court ordered it to. If its pre-existing obligations required this disclosure, why was it not made already? The Government's position boils down to the ridiculous assertion that the Court lacks authority to order disclosure in addition to what the background rules require in all cases. But the Court absolutely has that authority—and exercised it here when it granted, in part, the defendant's motion for discovery into selective enforcement. That order created a disclosure obligation with which the Government must comply.

The case law on selective enforcement and selective prosecution confirms that these background disclosure rules do not suffice where the Defendant has made a credible allegation, supported by evidence, that the Government is pursuing him for impermissible reasons. As the Ninth Circuit very recently recognized, claims of selective enforcement and selective prosecution are "undoubtedly related," and share a common legal heritage. *Sellers,* 906 F.3d at 852. Both begin with the 1996 case of *United States v. Armstrong,* 517 U.S. 456 (1996). In *Armstrong,* the Court extensively discussed Federal Rule of Criminal Procedure 16, and concluded that it did *not* require disclosure of materials relevant to a

selective prosecution claim. Rather, courts could order discovery into selective prosecution upon a threshold showing, based on a defendant's equal protection and due process rights. Thus, the disclosure obligation recognized in *Armstrong* is not rooted in any of the obligations the Government thinks it should have to observe, as set out in its ex parte letter to the Magistrate Judge; it is an additional obligation triggered in certain cases. The Ninth Circuit recognized in *Sellers* that the threshold required to trigger that obligation is lower when the alleged discrimination is committed by law enforcement agents, rather than prosecutors. And Judge Velasco found, in his order, that that obligation was triggered here when he ordered some limited disclosure based on Defendant's showing. The Government treats this obligation as somehow not real or binding, presumably because it does not want the defendant to know what these agents were saying to one another on the day of his arrest. But *Armstrong* and *Sellers* are just as real as *Brady* and *Giglio*.

Nor do the Magistrate Judge's assessments of the evidence satisfy concerns about what the Government has elected to withhold. In particular, the order denying the motion to compel (Doc. 144) states that Judge Velasco found "nothing helpful to the Defendant's case or theories of the case" in the materials the Government chose not to disclose. But that was not his assessment to make. The order—which the Court issued pursuant to the requirements of *Sellers*—called for broad disclosure, which would allow the *defense* to determine whether it could make use of the documents. The Magistrate is not well situated to know what the

defense may or may not be able to use. And a *Sellers* order, of course, unlike *Brady*, does not require that the material be exculpatory or favorable to the defense. The Magistrate Judge cannot possibly know all the possible methods the defense might pursue to establish discriminatory intent and effect.

Similarly, the Magistrate Judge's blanket approval of the Government's withholding of materials "that relate to other unrelated criminal investigations," Doc. 144 at 4, was inconsistent with his properly issued *Sellers* order. Discussion of other things the agents were working on on the day in question could be extremely relevant to a claim of improper retaliatory targeting. For instance, if there were some more legitimate or pressing concern going on, and the agents chose to watch No More Deaths volunteers in hopes of catching them doing something instead of pursuing some active case, that could be probative.

This is not to say that the Court could not reasonably permit the Government to withhold any materials covered by the *Sellers* order. If, for instance, the materials contained personal information such as birth dates of certain individuals, or sensitive law enforcement information about unrelated investigations that are ongoing, the Government could certainly petition the court—openly, including the defense in the process and filing its request publicly—to permit redaction, limit dissemination, or perhaps even withhold from disclosure particularly sensitive information if it has a compelling reason to do so. It could openly request in camera review, with openly articulated standards to which the defense is provided

an opportunity to object, and of which the public is informed. What it may not do is seek substantive revision of a court order in secret. And here, it provided absolutely no reason why it could not produce the ordered materials. It simply asserted that it should not have to, and that even among the things it did disclose, it would "redact certain information." Doc. 144 at 4. It did not say what type of information, or why it was necessary to redact it. Yet the Magistrate Judge signed off, without explanation.

3. This Court Should Withdraw Its Referral of Pretrial Matters to the Magistrate Judge Because He Has Demonstrated a Willingness to Entertain Ex Parte Submissions on Substantive Questions of Law From the Government.

Except in specific instances where it is necessary for compelling reasons, it is improper for litigants to communicate privately with the judge. *See, e.g., United States v. Kenney*, 911 F.2d 315, 321 (9th Cir. 1990) ("[I]n our system, adversary procedures are the general rule and ex parte examinations are disfavored."); *United States v. Napue,* 834 F.2d 1311, 1316, 1318 (7th Cir. 1987) ("noting "that *ex parte* communications between the trial court and the prosecution in a criminal case are to be greatly discouraged and should be permitted only in very limited circumstances" and "[t]hey should be avoided whenever possible and, even when they are appropriate, their scope should be kept to a minimum."); *cf. United States v. Klimavicius-Viloria,* 144 F.3d 1249, 1261 (9th Cir. 1998) (recognizing that "[i]n a case involving classified documents," a court may use ex parte proceedings "to

decide the relevancy of the information," where government "explained the specific damage to national defense if information were disclosed."); *Napue,* 834 F.2d at 1318 (permitting ex parte communication where defendant "was given notice prior to its occurrence that the *ex parte* communication was to be made"). Indeed, applicable ethical rules governing both attorneys and judges forbid private communications in all but the rarest of circumstances. *See* Arizona Rules of Professional Conduct, ER 3.5 ("A lawyer shall not. . . communicate ex parte with [a judge] during the proceeding unless authorized to do so by law or court order."); Code of Conduct for United States Judges, Canon 3(4) ("[A] judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers.").

In this case, the prosecutors submitted a substantive argument concerning revision of a court order ex parte to the Magistrate Judge, and the Magistrate Judge considered and accepted that argument, and communicated back to the prosecutors, also ex parte. He only disclosed those communications to the defense upon their strenuous objection—at which point he had already made a decision based on a secret presentation made without the knowledge of, let alone any input from, the defense. Given this course of events, it is not appropriate for this Magistrate Judge to continue to decide pretrial matters in this case. Having permitted improper

influence by the Government, he can no longer issue rulings in this case with the appearance of the strict impartiality demanded of our judicial system.

Moreover, the defense intends to file, in the near future, a motion concerning the above described events and their consequences. The Magistrate Judge, as a participant in the improper ex parte exchange, is actually a witness to these events, and thus cannot consider and rule on a motion concerning those events. Accordingly, this Court should withdraw the referral of pretrial matters in this case to the Magistrate Judge, and rule on the present motion, the forthcoming motion, and any additional pretrial matters, itself.

RESPECTFULLY SUBMITTED this 19th day of December, 2018.

By /s/ Amy P. Knight
Gregory J. Kuykendall
Amy P. Knight
531 S Convent Avenue
Tucson, AZ 85701
Attorneys for Defendant Scott
Daniel Warren

CERTIFICATE OF SERVICE

I certify that on December 19th, 2018, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701