Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com
*Pro Bono* Attorneys for Defendant Scott Daniel Warren

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) No.CR-18-00223-001-TUC-RCC(BPV) |
| vs. | ) **MOTION TO ESTOP GOVERNMENT** |
| | ) **FROM ARGUING DIRECTLY** |
| SCOTT DANIEL WARREN, | ) **CONTRARY POSITIONS FOR** |
| | ) **STRATEGIC GAIN** |
| Defendant. | ) |

Defendant Scott Daniel Warren, through his pro bono attorneys Gregory J. Kuykendall and Amy P. Knight, hereby moves this Court to preclude the Government from taking the position that as a factual matter, Dr. Warren had exclusive or significant authority or control over the building in Ajo, Arizona known as The Barn, having strategically relied on the opposite position in successfully opposing a crucial substantive motion already litigated in this case. In support thereof, he states as follows:

I.  <u>Introduction</u>

Judicial estoppel prevents a party from taking contradictory positions at different junctures in a case to gain unfair advantages. Weighty considerations underlie this rule;

as the Supreme Court has recognized, it serves "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment," and it "prevents parties from playing fast and loose with the courts." *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (internal citations and quotation marks omitted).

On April 19, 2018, Dr. Warren filed a motion to suppress evidence (Doc. 53), asserting that Border Patrol agents had entered The Barn in contravention of his direct and specific request that they leave the property. The agents themselves, at the time of their entry, asserted a right to disregard Dr. Warren's request because he was not the owner of the property. *See* Report and Recommendation, Doc. 110, at 4 ("When Agent Burns asked if the owner was present, Defendant Warren responded he was not going to answer and that Burns (and company) had no right to be there. Agent Burns asserted he wanted to talk to the owner and had a right to walk up and ask."). The Government then repeatedly argued to this Court that Dr. Warren lacked standing to challenge the search because, as it succinctly put it, "the defendant has shown he has minimal, frankly surface-level ties to the barn in this case," Tr. 7/13/18 (Doc. 107) at 117, and because he "shared the space with visiting groups of volunteers and illegal aliens." Doc. 121 at 8.

After an evidentiary hearing, the Magistrate Judge recommended denial of the Motion to Suppress on August 7, 2018, agreeing with the Government that Dr. Warren lacked standing to challenge the search due to his limited relationship to the property and the shared nature of the space (Doc. 110), and the District Court adopted the Report and Recommendation on December 21, 2018 (Doc. 151). This Court must preclude the

Government from now asserting a directly contrary position—that Dr. Warren maintained any exclusive or significant authority or control over The Barn.

II. The Government Repeatedly Asserted that Dr. Warren Lacked Authority and Control Over The Barn.

The Government argued in its response to the Motion to Suppress that Dr. Warren lacked a reasonable expectation of privacy in The Barn and thus had no standing to challenge the search. Doc. 63 at 4-6. In support of this claim, it specifically argued, "the defendant is nothing more than a caretaker of the barn. There was evidence that his responsibilities there were to keep it clean, that he is to supervise people who are there, to take the trash out when it's needed, and to perform maintenance on minor jobs around the barn." Tr. 7/13/18 (Doc. 107) at 111. The Government continued to emphasize, "It is somewhere where he doesn't even live." *Id.* at 116. The Government further relied on the fact that it "specifically asked the defendant if he kept his personal property locked in a safe, and he said that, no, anybody was free to take it, use it, possess it, whatever it may be, and for all we know that actually happened." *Id.* at 117. It concluded by summarizing its position: "the defendant has shown he has minimal, frankly surface-level ties to the barn in this case." *Id.*

Subsequently, in its response to Defendant's objection to the magistrate's Report and Recommendation (Doc. 121), the Government explained that it had successfully convinced the Court that "the defendant is merely a caretaker at the Barn who must share his 'most private space' at the property 'with any humanitarian that wants clothing for undocumented migrants.'" Doc. 121 at 8-9. It asserted that "[t]he defendant is not the owner, tenant or occupant of the Barn. Rather, he was a guest and agent *with limited*

*authority* from the owner who shared the space with visiting groups of volunteers and illegal aliens." *Id.* at 9 (emphasis added).

### III. The Court Accepted the Government's Position.

The Government successfully relied on its position regarding Dr. Warren's limited authority over The Barn to defeat the Motion to Suppress. In the Report and Recommendation (Doc. 110), the Magistrate Judge agreed with the Government that "Defendant Warren has no expectation of privacy and no standing to challenge the warrantless entry into the Johnson property on Snyder Road in Ajo, Arizona." Doc. 110 at 7. Accepting the Government's characterizations of the Defendant, the Court stated Dr. Warren was "A liaison; A caretaker; A handyman; An agent with restricted authority from the owner; Someone who keeps his personal property locked away in the Barnlet until he needs access to it; and A guest with limited access to the property," and concluded that none of that would "give him anything more than access." *Id.* Thus, the Court clearly accepted the Government's characterization of Dr. Warren's relationship to The Barn as being tightly limited, and this formed the basis for the Government's victory on this crucial motion.

### IV. The Law of Judicial Estoppel

"[T]he doctrine of judicial estoppel precludes parties from taking inconsistent positions in the same litigation." *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 716 (9th Cir. 1990). The Supreme Court has identified three flexible factors for identifying when the doctrine should apply:

> "First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded

4

in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. . . . In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts."

*New Hampshire* 532 U.S. at 750 (internal citations omitted).

The Ninth Circuit has referred to judicial estoppel as embodying "a federal court's ability to protect itself from manipulation by litigants." *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 602 (9th Cir. 1996). The doctrine "precludes a party from gaining an unfair advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Hocker v. Wells Fargo Home Mortg., Inc.,* 2019 U.S. Dist. LEXIS 33961 at *8 (D. Ariz. March 4, 2019) (citing *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (dismissing case based on judicial estoppel)).

"Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion," because "[t]he integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal." *Wagner v. Prof'l Eng'rs in Cal. Gov't,* 354 F.3d 1036, 1044 (9th Cir. 2004). Thus, it applies not just to a stated position on how the law should apply in a given situation, but also to any particular asserted version of facts.

Finally, although parties are of course bound by the assertions in their pleadings, the doctrine also applies to positions taken during a hearing; what matters is that the party made a representation to the Court, and the Court relied on it. *Helfand v. Gerson,* 105 F.3d 530, 534 (9th Cir. 1997). That a party may later learn additional facts not known when it took the first position does not preclude the application of the doctrine. *Helfand,* 105 F.3d at 536.

V. Judicial Estoppel Applies Here.

All three factors supporting judicial estoppel are clearly satisfied here. Regarding the first factor, Defendant is seeking to preclude the Government from now claiming that he had exclusive or significant control or authority over The Barn. This position would be directly contrary to the one the Government explicitly and repeatedly asserted from the agents' entry onto the property throughout the litigation of the motion to suppress: that Dr. Warren lacked authority over the property and he widely shared access with other humanitarian workers. Having relied on that position to win a major motion, the Government is now committed to its argument that Dr. Warren had "minimal, frankly surface-level ties to the barn in this case," Tr. 7/13/18 at 117, and that access to and control of the space was widely shared among humanitarian volunteers.[1]

Moreover, the Government indisputably "succeeded in persuading a court to accept [its] earlier position." *New Hampshire,* 532 U.S. at 750. The Magistrate explicitly

---

[1] The position at issue in this motion is *not* the legal conclusion that Dr. Warren had no reasonable expectation of privacy in The Barn. Rather, it is the Government's argument about the *facts* that it made in convincing the Court to accept that legal conclusion: that Dr. Warren's relationship to The Barn was, as a factual matter, tightly limited and widely shared.

found a lack of standing based on precisely the things the Government emphasized: his "restricted" and "limited" authority and access, and the shared nature of the space. Thus, if the Government were later to take the position in motions or at trial that in fact Dr. Warren had significant access and control and/or that it was in some way exclusive, the conclusion that the "court was misled" would be inescapable.

Finally, allowing the assertion of inconsistent positions on this front would be grossly unfair. The evidence gained from the search is essential to the Government's case, and thus only in prevailing on the motion to suppress—which entailed an argument that Dr. Warren had very little authority or control over The Barn—could the Government realistically maintain this prosecution. Yet the Ninth Circuit has recognized that evidence a defendant "was in control of the residence support[s] a finding of harboring aliens." *United States v. Chavez-Amaro*, 228 F. App'x 648, 649 (mem.) (9th Cir. 2007) (unpublished). Thus, the position opposite to the one the Government took in the motion to suppress would support its case now, on the merits of the charge. Allowing any party to litigation to talk out of both sides of its mouth is a threat to the judicial process, but when it is the Government using its sovereign power to potentially deprive citizens of their liberty, the concern is especially great and takes on tones of due process. Prosecutors are duty-bound to seek truth and justice; refusing to commit to one version of the facts is incompatible with this duty.

The Government has committed to a version of the facts, which it needed to do to win a crucial pretrial motion. It is now stuck with that version, and this Court should not

allow it to switch to a contradictory version that might now better suit its case, having accepted its first version as the basis for an important ruling in the Government's favor.

RESPECTFULLY SUBMITTED this 14th day of March, 2019.

> By /s/ Amy P. Knight
> Gregory J. Kuykendall
> Amy P. Knight
> 531 S Convent Avenue
> Tucson, AZ 85701
> Attorneys for Defendant Scott
> Daniel Warren

CERTIFICATE OF SERVICE

I certify that on March 14th, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701