Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com
Attorneys for Defendant Scott Daniel Warren

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No. CR-18-00223-001-TUC-RCC(DTF) |
| Plaintiff, | |
| vs. | **RESPONSE TO GOVERNMENT'S MOTION FOR RULING ON OBJECTIONS & EXHIBITS TO VIDEOTAPED WITNESS TESTIMONY** |
| SCOTT DANIEL WARREN, | |
| Defendant. | |

Defendant Dr. Scott Daniel Warren hereby responds to the government's Motion for Ruling on Objections & Exhibits to Videotaped Witness Testimony.

I.  NO STATEMENTS MAY BE ADMITTED UNDER THE CO-CONSPIRATOR EXCEPTION TO THE HEARSAY RULE.

A. <u>The Law Governing Admission of Alleged Co-Conspirator Statements</u>

The Supreme Court addressed head-on the question of what a trial court must find before admitting evidence under Fed. E. Evid. 801(d)(2)(E) in *Bourjaily v. United States*, 483 U.S. 171 (1987). The Court recognized that whether "there was a conspiracy involving the declarant and the nonoffering party," and whether "the statement was made

'during the course and in furtherance of the conspiracy,'" are "preliminary questions of fact that, under Rule 104, must be resolved by the court." *Id.* at 175.[1] It then explicitly held that "when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, **the offering party must prove them by a preponderance of the evidence**." *Id.* at 176 (emphasis added).

In light of this directly-on-point Supreme Court case from 1987, the out-of-date cases the government cites supporting a lower standard are no longer good law. Thus, the government's reliance on *United States v. Dixon,* 562 F.2d 1138 (9th Cir. 1977) and *United States v. Fried,* 576 F.2d 787 (9th Cir. 1978) (cited in Doc. 205 at 3 for the application of an "at least slight evidence" standard) is unavailing in the face of *Bourjaily*, which unequivocally requires that the offering party prove the preliminary facts by a preponderance.

After misadvising the court of the applicable standard, the government states it "does not have to show that the coconspirator is unavailable, identify the coconspirator by name, show that the statement was in furtherance of the defendant's interests, or that the person the statement was made to was a conspirator." Doc. 205 at 3. For all this it cites *United States v. Lloyd,* 807 F.3d 1128, 1161 (9th Cir. 2015), the Ninth Circuit's most recent case on this issue. While *Lloyd* does say that the person hearing the statement need not be a member of the conspiracy, it does *not* say that the government may withhold the identity of the alleged co-conspirator making the statement it seeks to admit. Indeed, in *Lloyd* every single participant was identified by name. If the government is seeking to

---

[1] Following *Bourjaily*, Rule 801 was amended to reflect this requirement.

prove that a specific individual was involved both with the material witnesses and with the defendant, as a matter of simple common sense, it must identify that individual, and nothing in the law says otherwise. The government also cites *Lloyd* for the application of a "liberal standard," Doc. 205 at 3, but notably, that language does not appear *anywhere* in *Lloyd.* Rather, the *Lloyd* Court applied *Bourjaily,* and determined that "the evidence is sufficient to find by a preponderance" that the declarant's statements were made in furtherance of the conspiracy. 807 F.3d at 1161; *see also United States v. Liera,* 585 F.3d 1237, 1245-46 (9th Cir. 2009); *United States v. Castaneda,* 16 F.3d 1504, 1507 (9th Cir. 1994).

Ninth Circuit cases provide additional guidance on what the required proof entails. For instance, in *United States v. Layton,* 855 F.2d 1388 (9th Cir. 1988), the Ninth Circuit reiterated, shortly after *Bourjaily* was decided, that the existence of a conspiracy required "proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture." *Id.* at 1398.

The Ninth Circuit has also "ruled that a co-conspirator's out-of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy." *United States v. Silverman,* 861 F.2d 571, 577 (9th Cir. 1988). This requirement of independent evidence applies to all three aspects: the existence of the conspiracy, the defendant and declarant's involvement, and that the statements were made in furtherance of the conspiracy. *United States v. Bridgeforth,* 441 F.3d 864, 869 (9th Cir. 2006) (explaining, after identifying the three preliminary facts, that "The statement alone is insufficient to prove these preliminary facts.").

Addressing the nature and quantum of independent evidence required, the *Silverman* Court explained that due to the "doubly suspect" reliability of an "out-of-court statement [] made by a co-conspirator purporting to implicate others in an unlawful conspiracy," the out-of-court statements "must be corroborated by fairly incriminating evidence. Evidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy. . . . A co-conspirator's statement, which is presumptively unreliable hence inadmissible standing alone, is no more reliable when coupled with evidence of conduct that is completely consistent with defendant's unawareness of the conspiracy." 861 F.2d at 578. This ruling obviously recognizes that when the hearsay statements under consideration for admission do *not* implicate the defendant, evidence of conduct that is completely consistent with the defendant's unawareness of the conspiracy would also, of course, be insufficient to constitute proof of his participation in the conspiracy for Rule 801 purposes.

In *Silverman,* the only evidence of conspiracy outside of the hearsay statements themselves was that the defendant "drove his sister to the airport on one occasion," and that the sister "attempted to visit [the defendant] during one of her cocaine-buying expeditions." *Id.* at 579. The Court explained that it was reversible error to have admitted hearsay statements on this basis, as it "makes only slightly more probable his connection to the conspiracy," and "shows little more than that he was in the presence of a relative who was involved in a conspiracy." The Ninth Circuit explained it has "consistently recognized that evidence that a defendant merely associated with a member of a

4

conspiracy has little probative value in demonstrating the defendant's connection to that conspiracy." *Id.* (quoting with approval *United States v. Ragland,* 375 F.2d 471, 476-77 (2d Cir. 1967) ("An association with an alleged conspirator, without more, is insufficient to establish the necessary foundation for the admissibility of the incriminating [co-conspirator's] statements.") (alteration original). The Ninth Circuit reversed the District Court based on its erroneous admission of alleged co-conspirator statements.

B. The Evidence the Government Claims it Has Would Be Insufficient Under *Bourjaily.*

The government's version of the evidence it has to support the existence of a conspiracy and both the declarant's and Dr. Warren's participation in it consists of three allegations: (1) "the vehicle that took the material witnesses to the Barn on January 12, 2018 belonged to the same individual one of the material witnesses coordinated with after illegally entering the United States and prior to reaching the gas station"; (2) "Border Patrol encountered this same individual on other occasions transporting illegal aliens in this same vehicle;" and (3) "the defendant and this individual communicated by text message as recently as January 11, 2018." Doc. 205 at 4. Even assuming that these representations of the evidence are accurate (which they are not, as addressed below), such paltry evidence would be grossly insufficient to establish by a preponderance of the evidence that a conspiracy existed and that the anonymous driver and Dr. Warren were part of it.

1. Existence of a conspiracy

Nothing in this evidence supports the existence of a conspiracy. At most, it posits an

inference that the anonymous driver was also the vehicle owner who was a serial offender on transporting. But outside of the statements themselves, no evidence establishes any agreement between the driver and anyone else to commit a criminal act. Without independent evidence that a conspiracy existed, the hearsay statement must be excluded.

2. Declarant's involvement in a conspiracy

To prove the hearsay statements were made by a co-conspirator, the government must prove who made the statements. The government's factual claims refer to an anonymous individual who (1) owns a vehicle, specifically a vehicle that transported the material witnesses to the Barn on January 12, 2018; (2) has encountered Border Patrol while transporting illegal aliens in the same vehicle; and (3) communicated with Dr. Warren by text message on January 11, 2018.

For one thing, the government never claims to have any evidence that the vehicle owner who coordinated with a material witness and is known to Border Patrol was *also* the driver who made the hearsay statements. It alleges that the *vehicle* the declarant was driving when he spoke to the material witnesses is *owned* by this known individual, but the government has identified *no* evidence that this known but unidentified vehicle owner was driving the vehicle at the time the hearsay statements were made, nor that the owner was the one who made the statements. Indeed, the government's disclosed evidence reveals that the vehicle was a livery car; it is certainly not safe to infer that the person driving such a vehicle is its owner.

Moreover, to prove by a preponderance of the evidence that the anonymous "driver" who allegedly made the statements is in fact a specific individual known to the Border

Patrol, the government must at the very least identify him. This is doubly true if it wishes to link the driver to communications with Dr. Warren. The government insists its evidence will show that a particular individual owned the vehicle, was known to border patrol, and communicated with Dr. Warren—all without ever identifying that individual. Yet the government must reveal the alleged conspirator's identity if the conclusion that these three pieces of evidence all concerned the same person is based on the government's knowledge of that person's identity. Nothing in the evidence itself links Dr. Warren and anyone he communicated with to the actual vehicle, which is the only alleged link to the hearsay statements. It is not, for instance, alleged that the January 11 communication with Dr. Warren made any reference to the vehicle in question. Evidence of the identity of the vehicle owner or driver would be a crucial link here, and the government has utterly failed to even allege it, let alone prove it.

3.  Defendant's involvement in a conspiracy

Even if the government *had* identified a conspirator, the *only* allegation here of anything to do with Dr. Warren is that he at least once communicated by text message with the alleged co-conspirator. That is insufficient as a matter of law. *Layton* requires "proof of a sufficient concert of action." 855 F.2d at 1389. The fact that a communication of some sort occurred, content unknown, falls far short of meeting this requirement. In *Silverman,* even evidence that the person was allegedly *with* the co-conspirator *in person* and during acts that constituted part of the conspiracy is insufficient to satisfy *Bourjaily*'s requirements. 861 F.2d at 579. And mere association with an alleged conspirator "without more, is insufficient to establish the necessary foundation for the admissibility"

7

of co-conspirator statements. *Id.* (citing *Ragland,* 375 F.2d at 476-77); *see also Castaneda,* 16 F.3d at 1508 (recording of two people discussing money laundering schemes insufficient to link them in one conspiracy because although inference of connection was possible, "it is at least equally possible' that they "had merely spoken" about "past activities," which "is entirely consistent with non-conspiratorial behavior."). The law is crystal clear that the mere fact that a defendant had contact with an alleged conspirator cannot satisfy *Bourjaily*'s requirement of proof of participation by a preponderance of the evidence, and that is the *only* fact the government has alleged to link Dr. Warren to any conspiracy.

    4.  Statements in furtherance of the conspiracy

Finally, having failed to identify any conspiracy, the government has not shown that the hearsay statements were in furtherance of the (nonexistent) conspiracy. It has not even made any attempt to show how the statements were in furtherance of any conspiracy; to do so it would have to identify, at the very least, what the purpose of the conspiracy was and offer some explanation of how the statements furthered it. It made no attempt to do so.

    C.  <u>The Government's Statement About What "The Evidence Will Show" Is Insufficient to Satisfy *Bourjaily* and is an Inaccurate Representation of the Evidence.</u>

Nothing in *Bourjaily* or any of its progeny suggests that the government can meet is burden to prove the required preliminary facts by a preponderance of the evidence simply by representing to the Court in a pleading its version of what it thinks the evidence will show. *Bourjaily* and Fed. R. Evid. 801(d)(2)(E) unequivocally require that the

8

government actually *prove* these preliminary facts. *See Castaneda,* 16 F.3d at 1508 (government's effort to prove connection to conspiracy failed because government's "depiction of events is not supported by the record"). Accordingly, absent the presentation of evidence, this Court may not determine that the preliminary facts have been proven by a preponderance of the evidence. Indeed, the government's representations of what "the evidence will show" here are not merely misleading, but, unless the government is withholding evidence, flatly incorrect.

1. Single individual both coordinated with material witness in specific timeframe and communicated with defendant on specific day.

The government avers that the evidence will show a single nameless person *both* coordinated with one of the material witnesses subsequent to his entering the country but prior to his arrival at "the gas station,"[2] *and* communicated with defendant "as recently as January 11." Doc. 205 at 4. To prove that this occurred, the government would have to identify an individual who allegedly did both of these things. It has never done so.

Moreover, no evidence the government has ever provided to the defense shows the existence of anyone who both "coordinated with one of the material witnesses 'after illegally entering the United States and prior to reaching the gas station,'" and also communicated *at any time* with Dr. Warren. Indeed, the only material witness whose communications have been provided appears to have communicated with only two people during the time period the government has identified; neither appears anywhere in

---

[2] The government does not say which of the two gas stations the witnesses were at it is referring to here (the evidence shows they visited both the Why Not and the Ajo Chevron), but this absence of communication with any contact of Dr. Warren's holds true regardless of which gas station is used.

9

the data the government has provided from Dr. Warren's cell phone, which is the only evidence of his communications that has ever been produced. Thus, the government's insistence of what "the evidence will show" is false.

2. The vehicle owned by the person who communicated with Dr. Warren took the material witnesses to the Barn on specified date.

The government claims to have evidence that a particular vehicle "took the material witnesses to the Barn on January 12, 2018." Doc. 205 at 4. This is the first the defense has heard of either material witness being at the Barn on that date. If the government has evidence of that, it has never produced it.

3. Border Patrol's encounters with the vehicle's owner

The government has never disclosed any evidence of *anyone* "transporting illegal aliens" on any occasion other than the specific incident at issue in this case involving these two particular material witnesses. If the government has and intends to use such evidence against Dr. Warren, again, it has been withheld.

Moreover, the only evidence the government has disclosed regarding any other Border Patrol contact with the vehicle in question describes an encounter on January 24, 2018—a week *after* Dr. Warren was arrested. To the extent that the government is intending to identify this encounter (although it does not meet the description of an encounter involving transporting illegal aliens, and consists only of a single incident), an event that occurred *after* Dr. Warren's arrest is not probative of anything involving Dr. Warren.

4. Text message communication

The government claims that the anonymous individual (who owns the vehicle, coordinated with a material witness, and has a history of transporting) and Dr. Warren "communicated by text message as recently as January 11, 2018." Again, the government cannot possibly prove that Dr. Warren communicated with a specific individual without saying who. If it seeks to prove that he communicated by text message with a particular individual, it must identify that individual and produce the text message. Unless the government has an entirely different cell phone than the one disclosed to the defense, no such text message exists. According to the phone extraction disclosed to the defense, the only text messages Dr. Warren sent or received on January 11, 2018 were with people known in his contacts as:

- Gabe Cell
- Sara Phx NMD
- Ana Sanchez
- Susannah
- Chris H
- Emily Raine
- Em
- Stiart Seigel
- John Heid

The government has never provided any evidence that one of these contacts is the alleged vehicle owner.

In sum, the government has utterly failed even to allege, let alone prove, facts sufficient to establish that the hearsay declarant and Dr. Warren were both participants in a conspiracy, and that the hearsay statements were made in furtherance of that conspiracy. The Ninth Circuit has reversed convictions for the admission of alleged co-

conspirator statements on far greater evidence that what the government has claimed to have here. When this Court compares the facts alleged here to those proven in *Silverman,* for instance, their legal insufficiency is readily apparent; if the defendant giving the alleged co-conspirator a ride to the airport, and receiving an in-person visit from her in the midst of her carrying out the object of the conspiracy, is insufficient and required reversal, then a single text message of unspecified content must necessarily fail the same test. And in *Castaneda,* it was undisputed that indeed the declarant was part of an established conspiracy, and that the defendants were involved in a similar activity (money laundering); the government presented six different pieces of evidence, including a number of recorded conversations with an informant by both the declarant and the defendants implying to various degrees that the defendants' activities were linked to the declarant's conspiracy, as well evidence that one of the defendants was at the declarant's office on a day when activities of the conspiracy were going on; the Ninth Circuit held that even with an existing conspiracy and all of this evidence of connections between declarant and defendants, it was error to admit the hearsay under Rule 801(d)(2)(E) because the evidence linking the defendants to the conspiracy was insufficient, and reversed the convictions. 16 F.3d at 1508-09. If proving a conspiracy involving the declarant existed, defendant and declarant knew each other, were involved in the same activities, and were in the same office on a day when activities of the conspiracy occurred is insufficient as a matter of law, it is beyond dispute that a single communication of unspecified content comes nowhere near satisfying the requirement that the government prove by a preponderance that the defendant was part of a conspiracy.

II.   OTHER OBJECTIONS

A.   The Government's "Asked and Answered" Objection

The government argues that the question "You barely spoke with Dr. Warren, right?" merely rephrases the question "But otherwise, you and he did not have long conversations in Spanish, correct?" Doc. 205 at 5. These questions are significantly different on their face; there is a substantial gulf between not having long conversations and barely speaking, and thus the second question was more specific than the first. Moreover, when read in context, the first question was obviously about Dr. Warren's language abilities—specifically, his ability to communicate in Spanish—and the second was about the extent of their interaction. The questions may be related, but they are obviously distinct. Accordingly, the objection must be overruled.

B.   The Government's "Speculation" Objection

The government objects to the question at the end of the following exchange as calling for speculation:

Q: So by the time you arrived at the house where Dr. Warren finally showed up, by the time you arrived at that house, you were hungry and cold; is that true?

A: Yes.

Q: And you were very tired; is that true?

A: Very tired.

Q: And that's true of Kristian, as well, right?

Sacaria-Goday Depo. At 44:6-12. It asserts that "testimony about another person's feelings and sensations is speculation, especially where, as here, there is no foundation for Sacaria-Godoy's opinion." Doc. 205 at 6. Thus, apparently, the government is not so

much objecting that this answer would require speculation as that there was no foundation for Sacaria-Goday's knowledge about Perez-Villanueva's hunger, coldness, or tiredness. Accordingly, the government's objection—which was based only on speculation—must be overruled. But even if it had objected to a lack of foundation, the Court should overrule that objection; Sacaria-Goday had already testified that he had been with Perez-Villanueva on their multi-day and night journey through the desert, Depo. at 12:2, 14, and thus had ample opportunity to observe him, speak to him. He had also testified that "we had no food." Depo. at 44:5. Hunger, coldness, and tiredness are not "feelings" in the sense of things that are purely internal and difficult to predict; the two men's shared circumstances provided ample foundation for Sacaria-Goday's knowledge of Perez-Villaneuva's state.

The government subsequently made the same speculation objection to the question, "Is this a fair statement: Dr. Warren barely speaks Spanish?" Doc. 205 at 6. No speculation is required to answer that question; a person's language abilities in the perceiver's native language can readily be evaluated by listening to and attempting to converse with him. Accordingly, this objection should be overruled.

C. Other Proposed Redactions

The defense does not object to the proposed identified redactions of preliminary and procedural material.

III. PROVISIONALLY ADMITTED EXIBITS

The defense does not object to the admission of exhibits 5-23 and 34-47. However, the defense *does* object to the admission of Exhibits 3 and 4 because the government

never laid sufficient foundation for them. The only testimony regarding Exhibit 3 was Sacaria-Goday stating that "Kristian" was in the photograph, but when asked if he knew where it was taken, he said "No. I don't recall." Sacaria-Goday Depo. at 34:7. Similarly, his only testimony regarding Exhibit 4 was that he recognized "Kristian," and when asked if he knew where it was taken, he said "No. I don't recall. I don't know." *Id.* at 34:2. That is not sufficient foundation for the admission of a photograph.

The defense also objects to the admission of Exhibit 25. The only testimony about this exhibit was:

Q: Here's 25. Do you recognize what's in that exhibit?
A: Well, I know it's medication.
Q: Let me take your attention to the yellow packet that's in that photo. Do you see that?
A: Yes.
Q: Do you know what that is?
A: No.

Perez-Villanueva Depo. at 36:24-37:7. That does not constitute sufficient foundation for the admission of the photo. The defense also objects to the admission of Exhibits 52-54. Only Perez-Villanueva was asked about these three exhibits. Regarding Exhibit 52, he testified only "I do see myself." Depo. at 32:9. There was no testimony about when or where the photo was taken. The same is true of Exhibit 53 (*id.* at 32:17). Regarding Exhibit 54, the only testimony as "All I see is Jose." *Id.* at 32:19. Again, the government asked no questions about when or where the photo was taken. Without more, insufficient foundation exists for the admission of these photographs.

The defense has no objection to the admission of Exhibits 48-51, for which Sacaria-Goday laid foundation during his deposition (pp. 30, 32, 34).

## **CONCLUSION**

The defense strenuously objects to the admission of any hearsay statements under Rule 801(d)(2)(E) based on the government's representations of what the evidence will show. Under the applicable preponderance of the evidence standard, the government has not even alleged, let alone proven, facts sufficient to establish the existence of a conspiracy, the declarant's and defendant's participation in any conspiracy, or that the statements were made in furtherance of any conspiracy. The defense also urges this Court to overrule the government's meritless objections to several perfectly permissible questions. Finally, this Court should admit only the exhibits for which the government laid foundation during these depositions, which does *not* include Exhibits 3, 4, and 25.

RESPECTFULLY SUBMITTED this 16th day of May, 2019.

By /s/ Amy P. Knight
Gregory J. Kuykendall
Amy P. Knight
531 S Convent Avenue
Tucson, AZ 85701
Attorneys for Defendant Scott Daniel Warren

## CERTIFICATE OF SERVICE

I certify that on May 16th, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| 1 | Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov) |
| 2 | Anna R. Wright, Esq. (email: anna.wright@usdoj.gov) |
| 3 | United States Attorney's Office |
| 4 | 405 W. Congress, Suite 4800 |
|   | Tucson, AZ 85701 |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |