Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com

Attorneys for Defendant Scott Daniel Warren

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) No. 18-cr-00223-RCC(DTF) |
| vs. | ) **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTIONS IN LIMINE** |
| SCOTT DANIEL WARREN, | ) |
| Defendant. | ) |

The government has filed 5 motions in limine (Docs 214, 215, 216, 217, and 220). Several of these are based on overly narrow assumptions about the nature of the defenses being asserted; others merely ask the Court to apply the rules of evidence. Accordingly, the Court should deny these motions; if the Court determines, during trial, that evidence is not admissible in the context of the case as it develops, it can exclude it then. Moreover, if the government opens the door to evidence by its own conduct, a ruling would be needed at that time. Currently, because of the government's failure to abide by its disclosure agreement, it is unclear what the government's evidence will be.

RFRA DEFENSE (Doc. 214)

The government argues that if the defendant's evidence will be insufficient to support an asserted defense as a matter of law, no evidence supporting that defense should

be allowed. Defendant does not disagree with this proposition as a general matter. He does, however, dispute the government's characterization of the testimony already presented and its relationship to the prima facie case, in light of this Court's existing findings.

Magistrate Judge Velasco held an evidentiary hearing on Dr. Warren's pretrial motion to dismiss Counts 2 and 3 pursuant to the Religious Freedom Restoration Act (RFRA). He subsequently issued a report and recommendation containing findings of fact that neither party objected to, including a finding that the defendant (and his father) believe "that the Earth is their house of worship and they respect the dignity and wishes of all they encounter. A key element of the Defendant's belief system is to help others in distress to the point of being a duty or compulsion." (Doc. 81 at 2). The Court recognized his views at "religious beliefs," which it categorized as being "in the nature of animism." *Id.* The Court found that "Defendant's belief is a somewhat modified Golden Rule, in that he has a compulsion to help those in their immediate need, i.e. food, water, and medical aid. His beliefs do not seem to reach assistance for the ultimate goal. He believes he will help people where they are, but not help them get to their ultimate destination." *Id.* Finally, the Court recognized that "[t]he Defendant, along with others who have similar beliefs in part, utilizes the property known as The Barn to exercise his religious beliefs of assisting people in distress."

This Court then ruled that it could not determine pretrial whether RFRA protected Dr. Warren's conduct because factual disputes remained about what conduct he in fact undertook, and resolving those questions implicates "a trial on the general issue." Doc. 127 at 5. For instance, the Court could not determine pretrial whether Dr. Warren's conduct extended beyond the alleged acts of providing "food, water, bed(s) and clean clothing" (*id.*), or whether the two migrants were "in need." *Id.* at 6. The Court ruled that resolving these questions, which would determine whether RFRA provided protection, was "the province of the jury." (Doc. 127 at 7). Accordingly, Dr. Warren has proposed a jury instruction directing the jury to determine whether his conduct was limited to that encompassed by the religious beliefs this Court has already found he holds.

This case is unusual among RFRA cases; typically, no dispute exists about the defendant's actions, and the questions are limited to what the defendant's beliefs are, and whether the government truly needs to enforce the law in this manner. Here, because harboring is a somewhat abstract concept (as opposed to, say, possession of marijuana), a defendant could theoretically commit the crime in a variety of ways, some of which may constitute religious exercise and some of which may not. In other words, an assertion that the defendant took certain actions and they were a religious exercise does not necessarily answer the question of whether (1) he is actually guilty of the charged crime and (2) *all* of is allegedly criminal actions were part of the religious exercise. Either way, it is for the *government* to prove what actions the defendant took that allegedly violate the law, especially because the complaint is limited to allegations that *are* encompassed in his religious beliefs, and the indictment contains no factual allegations, but merely a recitation of the elements of the crime. Because the remaining questions concerning whether Dr. Warren's conduct was limited to that which was compelled by his religious beliefs all depend on that what the *government* chooses to present, Dr. Warren cannot reasonably be required to offer any further proof on this point at this juncture. Nothing about the fact that this is an affirmative defense requires Dr. Warren to prove a negative, i.e., that he did *not* do any number of other things never mentioned in any charging document that are not part of his religious exercise, such as actively assisting migrants with getting to some ultimate destination, or affirmatively concealing them from immigration authorities. It is for the government to prove any actions it believes he took that violate the law.

The Court may only preclude a defense if the evidence shows that the defendant *cannot* establish it. Here, Dr. Warren has already established that he *can* receive this protection; the only question that remains is whether the government will seek to prove, and succeed in proving, that his conduct encompassed actions beyond the assistance mandated by his religious beliefs. Because the jury will ultimately be tasked with determining whether *all* of Dr. Warren's allegedly illegal conduct was an exercise of his religious beliefs, even though the nature of those beliefs has already been determined by

the Court, the defense must be permitted to provide some context for this determination, including the religious nature of the actions in question.

The government also claims that Dr. Warren "refused to testify regarding the second prong of his *prima facie* case," i.e., substantial burden (Doc. 214 at 2). Substantial burden, however, is a question of law for the court; it is not a question of fact, and need not be supported by specific testimony. *See Guam v. Guerrero*, 290 F.3d 1210, 1212 (9th Cir. 2002). Indeed, Dr. Warren's position at the time was, and has remained, that a criminal prosecution for actions that are taken as a religious exercise constitutes a substantial burden as a matter of law. And in any event, even if Dr. Warren had testified about the actions he undertook that day, the Court's primary concern would have remained: that the government could still seek to prove that he committed other acts beyond those he identified as part of his religious practice, and this Court has determined that that must occur at trial.

The government also objects that the testimony of various witnesses it believes might be offered to support the RFRA claim are irrelevant (Doc. 214 at 3). These claims are repeated in a separate motion the government filed at the same time; Dr. Warren will address those claims in conjunction with the separate motion.

Finally, the government argues that defendant should not be permitted to testify only about his religious beliefs while invoking his Fifth Amendment privilege. Because he was already permitted to offer testimony about his religious beliefs at a pretrial hearing in this case and the Court already made factual findings about the nature and requirements of his religious beliefs, and the government did not object to the findings made in this regard, he does not face the dilemma of having to surrender his Fifth Amendment right in order to preserve his RFRA rights. Accordingly, if he chooses to testify at trial, he will not be seeking to limit his testimony

TESTIMONY OF CERTAIN WITNESSES (Doc. 215)

The government has also moved to preclude the testimony of seven witnesses by asserting without explanation that "nothing in their testimony goes to any element of the

charged offenses or any defense." (Doc. 215 at 3). This bare assertion ignores the scope of the charges the government has brought.

Regarding Count 1 (conspiracy), the indictment (Doc. 26) alleges that a conspiracy occurred "From a date unknown to on or about January 17, 2018," and that Dr. Warren conspired "with various other persons known and unknown to the grand jury" to transport and harbor two individuals. Dr. Warren moved for a Bill of Particulars, seeking to have the government specify who Dr. Warren allegedly conspired with (Doc. 35); the government refused to identify even a single co-conspirator (Doc. 46) and the Court denied the motion without explanation (Doc. 56). Conspiracy charges can frequently sweep in large amounts of evidence not immediately connected to the particular substantive crime at issue; this is especially so where the government remains unwilling to define the scope of what it alleges, either by date or by who supposedly conspired. If the government wanted the defense to present a narrower case, it could have provided more information about what it is accusing Dr. Warren of.

Given the potential breadth of the government's evidence on the conspiracy charge, Dr. Warren necessarily intends to present evidence about the nature of, and reasons for, his communications and coordination with a wide swath of his colleagues and associates. In order to understand the explicitly non-criminal nature of the various humanitarian collaborations in which Dr. Warren engages, the jury will require some context for the his activities, including information about the dangers facing the population to whom they provide humanitarian aid and the reasons why his various activities are necessary to that work. Without this context, it would be difficult for any jury to understand what he is actually doing and why—which is crucial for the jury to see that the goals of any collaboration do not include the commission of any crimes. Evidence of the real and serious nature of the crisis he and his colleagues address will corroborate testimony that their work is indeed humanitarian in nature and urgent in character, and call into question the government's anticipated characterization of various activities as aimed at encouraging illegal immigration rather than at responding to the crisis they see unfolding around them

every day. Accordingly, the testimony of Dr. Edgar McCullough,[1] Dr. Gregory Hess, and Dr. Robin Reineke is directly relevant to Dr. Warren's defenses.

Regarding Counts 2 and 3 (harboring), the Ninth Circuit recently clarified that harboring requires "an instruction that the defendant intended to violate the law." *United States v. Tydingco,* 909 F.3d 297, 304 (9th Cir. 2018). Because the government must prove that the defendant intended to violate the law, evidence that he was in fact earnestly attempting to *avoid* violating any laws, including evidence regarding the protocols Dr. Warren was following, the legal training he has both received and provided, and the information he and his colleagues have received regarding law enforcement agencies' positions on what activities were and were not permissible, is directly relevant to an element of the offense. Accordingly, no basis exists to preclude the testimony of Margo Cowan or Andy Silverman.

Additionally, the government has provided a witness list that includes eight agents of the United States Border Patrol. As with any witness the opposing party calls, Dr. Warren is entitled to present evidence bearing on their credibility, including evidence of bias or motive to fabricate or lie. Evidence about public criticism of the agency by a group with whom Dr. Warren is associated is directly relevant to the credibility of these eight witnesses. Moreover, the government's exhibit list includes reports by several agents intimating that they suspect No More Deaths volunteers of removing items from the Barn between the time of Dr. Warren's arrest and the execution of the search warrant five days later. The report will provide the jury with context for understanding what reasons (other than the government's implication of attempts to conceal wrongdoing) No More Deaths volunteers might have for wishing to keep certain information out of the hands of the Border Patrol. Accordingly, the testimony of Maryada Vallet is relevant to rebut the government's anticipated arguments.

Finally, the government claims the proposed testimony of Rev. Bethany Russell-Lowe is irrelevant. But her testimony is relevant for at least two reasons. First, Dr. Warren

---

[1] The government incorrectly identifies this witness as "Edward" McCullough.

6

is asserting a religious freedom defense. Rev. Russell-Lowe's testimony will provide the jury with necessary context for understanding the work of No More Deaths as a religious practice rooted in principles widely shared among people of faith, including principles explicitly articulated by Dr. Warren. Because the Court heard Dr. Warren's testimony on this question pretrial, some testimony about how and why desert humanitarian aid work is connected to these spiritual beliefs, including those specifically articulated by Dr. Warren, will be immensely helpful to them in evaluating this defense. And the fact that something has been previously established and need not be proven to this jury does not prevent the parties from presenting some evidence on it to assist the jury's evaluation. For example, in death penalty cases, if a death sentence is reversed and a court must conduct a retrial of the penalty phase only, the government is routinely permitted to present evidence about the crime, even though the defendant's guilt and death eligibility are already proven.

Second, again, the government has refused to provide any information about the scope of the conspiracy it is alleging. Accordingly, as of now, Dr. Warren must proceed as though any and all aid activities he coordinates through any group or network are potentially relevant to the government's unspecified accusation. Accordingly, testimony about the relationship between the work Dr. Warren does with No More Deaths and the organization that sponsors it is potentially vital to the jury's understanding of the *non-criminal nature* of the relationships surrounding this work.

In sum, as a consequence of the government refusing to narrow the universe of evidence it may choose to present against Dr. Warren concerning his work with others, Dr. Warren is and must be prepared to present similarly wide-ranging evidence about who he *actually* works with and for what legitimate purposes. If this evidence is more wide-ranging than the government would like this trial to be, that is a problem of its own making. It clearly cannot have it both ways: limit the defense's potential evidence while at the same time refusing to explain the scope or even the persons allegedly involved in the alleged conspiracy.

Jury Nullification (Doc. 216)

The government insists, without explanation, that arguing that "humanitarian aid is never a crime" constitutes an argument for jury nullification. It never explains how or why it thinks these two things are equivalent, and they obviously are not.

As an initial matter, the government invokes the Ninth Circuit case *United States v. Millis,* 621 F.3d 914 (9th Cir. 2010), apparently in an attempt to assure this Court that because the defendant in that case and Dr. Warren are both part of No More Deaths, the fact that the defendant in *Millis* asserted that argument means Dr. Warren will too. But the government ignores the other obvious implication of the Ninth Circuit's discussion: it seemed to find nothing wrong with the defendant making that argument.

In any event, whatever other defendants may have argued in other cases, and whatever members of the public may say about this case outside of the courtroom, this Court must assess any arguments presented in this case in the context in which they are made. Here, the government has charged Dr. Warren with two crimes, both of which require intent to commit a crime. Arguing that actions undertaken by Dr. Warren were acts of humanitarian aid and therefore do not constitute crimes, in this context, is nothing like an argument for jury nullification; it is an application of logic. The required criminal mental states are incompatible with purely humanitarian motivations, and thus by asserting that humanitarian aid is not criminal, the defense would only be arguing to the jury that if it believes the defendant's explanation that his actions were motivated by humanitarian concerns, it cannot find that the government has proven all the elements of the charged crimes. That is not jury nullification; that is an argument about application of the law to the facts.

Finally, none of the cases the government relies on address what defense counsel may argue. In *United States v. Powell,* 955 F.2d 1206, 1213 (9th Cir. 1991), the Court simply held that a district court did not abuse its discretion in refusing to instruct the jury that it could "disregard the strict requirements of the law" based on "the values involved in this case." And in *United States v. Navarro-Vargas,* 408 F.3d 1184, 1202-06 (9th Cir. 2005),

8

the Court held that it did not violate the Fifth Amendment to instruct a grand jury that it "should vote to indict" if the evidence was sufficiently strong or that it "cannot judge the wisdom of the criminal laws enacted by Congress." The government cites *no* authority for the proposition that it is improper for defense counsel to argue that certain types of conduct are not criminal. There is a vast difference between a *Court* explicitly instructing a jury that they may disregard the law if they don't think it's fair, and defense counsel making a legitimate, logical argument that actions undertaken only with the intent to protect the life and health of others do not violate criminal laws.

Irrelevant Evidence (Doc. 217)

The government argues that two items the defense has disclosed—a video produced by Vice TV and an autopsy report—are irrelevant to this case. But just because the government does not understand exactly how they tie in does not mean that they will not be relevant to the defense.

Again, the government has charged Dr. Warren with conspiring during an open-ended time period with individuals it refuses to identify. Depending on what the government actually introduces at trial, these items may very well be relevant, as they will provide an alternative narrative to explain certain actions and communications that the government may suggest to the jury constituted part of a criminal conspiracy. If, in the context of the trial and testimony that the defense offers to explain how the video and autopsy report refute the government's allegations, the Court determines they do not meet the relevance threshold, it can of course exclude them at that time. But it cannot exclude them now, before the government has even fully revealed its theory of the conspiracy, and the defense is not required to provide a detailed explanation of exactly how it intends to use these items at trial at this juncture.

The same is true of the autopsy report. The government insists "[t]here is no evidence that this individual was involved in the events underlying this case or that his autopsy is relevant to any fact of consequence in this case." (Doc. 217 at 2). But the government has

not yet heard the testimony of defense witnesses about the events on the days in question, so it has absolutely no way to know whether the evidence will in fact tie this autopsy to those events.

Finally, the government asserts that both items constitute hearsay. But whether or not evidence is hearsay depends on the purpose for which it is introduced. Statements are not hearsay unless a party offers them "to prove the truth of the matter asserted in the statement." Fed. R Evid. 801(c)(2). The government has no idea for what purpose these items might be offered, and thus no basis at this juncture for asserting that they are inadmissible hearsay. For instance, out-of-court statements offered to prove their effect on the listener, or the simple fact that they were made without regard to their truth, are both admissible. If the defense attempts to introduce these items at trial and the government at that point has reason to believe they are being offered to prove the truth of matters asserted therein, it can raise a hearsay objection at that time, and the Court can make the necessary determination.

Self-Serving Hearsay Statements (Doc. 218)

The government asks this court to preclude Dr. Warren from "introducing his own self-serving, out-of-court statements through any method" (Doc. 2018 at 1). But the government has not identified any particular evidence it is seeking to preclude; rather, this motion constitutes, in essence, a motion for the Court to apply the rules of evidence if and when the defendant attempts to introduce something that the government contends might be inadmissible. There is no reasonable way for the defendant to respond to, or the court to rule on, a motion preemptively seeking to apply existing rules that will apply anyway to unspecified evidence. Accordingly, the Court should deny the government's motion, and rule on any objections the government makes to specific evidence at trial.

Selective Enforcement (Doc. 220)

The government argues that the defense must be precluded from offering any

evidence about selective enforcement because Federal Rule of Criminal Procedure 12 requires a *different* claim (selective prosecution) to be raised before trial, and because "any evidence or argument going to selective enforcement is entirely irrelevant." (Doc. 220 at 2). As an initial matter, the difference between selective prosecution, which is covered by Rule 12, and selective enforcement, which is not, is important here. Selective prosecution claims implicate decisions by prosecutors—government attorneys. The motivations of those attorneys do not have any bearing on the actual evidence presented at trial. But where the claim is selective enforcement, the challenged actions are those of testifying law enforcement officers, and their motivations *can* influence the evidence in a case. Accordingly, a rule for selective prosecution does not govern selective enforcement.

       The government's motion is vague as to what exactly it is seeking to preclude. Dr. Warren does not intend to ask the jury to consider whether the government selectively enforced the law against Dr. Warren in violation of his equal protection rights; as the government correctly asserts, this Court has already ruled on that issue (although its ruling did not specify whether it found the claim not proven on the discriminatory intent prong or the discriminatory effect prong).

       Evidence regarding Border Patrol agents' bias against Dr. Warren and No More Deaths *is*, however, deeply relevant to their credibility as witnesses against Dr. Warren, both in their bias and motivation to testify and write reports untruthfully and in their assumptions about No More Deaths volunteers' motivations. Dr. Warren is entitled to present to the jury evidence about what reasons *other than* alleged criminal behavior the Border Patrol may have had for its various actions against him and the assumptions and conclusions the agents drew about the things they observed.

    Dated this 24th day of May, 2019

                                      KUYKENDALL & ASSOCIATES

                                      By /s/ Amy P. Knight_____
                                          Gregory J. Kuykendall

Amy P. Knight
531 S Convent Avenue
Tucson, AZ 85701
Attorneys for Defendant Scott Daniel Warren

## CERTIFICATE OF SERVICE

I certify that on May 24, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701