Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com

Attorneys for Defendant Scott Daniel Warren

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) No. 18-cr-00223-RCC(DTF) |
| vs. | ) **DEFENDANT'S MOTION IN LIMINE TO PRECLUDE GOVERNMENT FROM ARGUING THAT NOT CALLING THE BORDER PATROL CONSTITUTES CONCEALMENT** |
| SCOTT DANIEL WARREN, | ) |
| Defendant. | ) |

During opening statement and its questioning of witnesses so far, the government has clearly indicated its intention to rely on the fact that Dr. Warren did not affirmatively report the presence of known or suspected undocumented people to the Border Patrol to prove that he "harbored, concealed, or shielded from detection." In fact, no legal obligation whatsoever exists for members of the general public to affirmatively alert authorities to any unlawful activity, including crimes and the presence of undocumented people. Accordingly, any argument to the jury suggesting that not affirmatively alerting authorities to the presence of undocumented people constitutes concealment would mislead them

about the law, misinform them about the citizenry's obligations, and deprive Dr. Warren of a fair trial. Consequently, the Court must preclude the government from making that argument. In addition, the Court should instruct the jury on the lack of any duty to make such reports, as requested in Defendant's Proposed Jury Instructions.

1. <u>NO GENERAL OBLIGATION EXISTS TO REPORT CRIMINAL ACTIVITY.</u>

"It has long been settled that there are no federal common law crimes; if Congress has not by statute made certain conduct criminal, it is not a federal crime." Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* West 1986, at § 2.1. The United States Code does not spell out what actions are *permissible*; it specifies which acts are *prohibited*. In some situations, the prohibition may take the form of punishing the *failure* to take an action for which the law imposes an affirmative duty. But neither an act nor an omission is criminal unless a law specifically says it is. For this reason, statutes generally do not exist that state that the public does not have any legal duty to undertake particular actions, nor that particular actions are not prohibited; absent a statute to the contrary, acts or omissions are presumptively legal.

Congress has spoken clearly both about what is prohibited in the area of interacting with undocumented people and what is prohibited regarding knowledge of illegal activity and alerting, or declining to alert, authorities. Neither area imposes or recognizes any obligation to alert law enforcement to the presence of known or suspected undocumented people.

A. <u>Immigration-Specific Provisions</u>

Although most immigration laws address rights, obligations, and procedures for non-

citizens, several sections of Title 8 address the obligations of the public in interacting with non-citizens. For instance, § 1321 provides that "It shall be the duty of every person. . . bringing an alien to, or providing a means for an alien to come to, the United States. . . to prevent the landing of such alien in the United States at a port of entry other than as designated by the Attorney General or at any time or place other than as designated by the immigration officers." Sections 1322 and 1323 prohibit bringing people into the United States without proper documentation. Section 1324, the provision under which Dr. Warren is charged, also prohibits "bringing in" at any place other than a designated port of entry; transporting; concealing, harboring, or shielding from detection; encouraging or inducing to come to, enter, or reside in the United States;[1] and certain employment actions. Subsequent provisions provide additional employment-related prohibitions and requirements, including creating an *entirely voluntary* system "for individuals and entities to file written, signed complaints respecting potential violations" (1324a(e)(1)(A)), and forbid assisting with various types of illegal entry or importation (§§ 1327, 1328). Nowhere does the United States Code create an affirmative obligation on *anyone* to alert authorities to the presence of undocumented people.

Indeed, as scholars have noted, even Judges, who obviously have particular responsibility to uphold the law, have no duty to report the presence of undocumented people. *See* David P. Weber, "(Unfair) Advantage: Damocles' Sword and the Coercive Use

---

[1] The Ninth Circuit recently ruled this provision unconstitutionally overbroad. *United States v. Sineneng-Smith,* 910 F.3d 461 (9th Cir. 2018).

of Immigration Status in a Civil Society," 94 Marq. L. Rev. 613, 664 (2010) (collecting Judicial Ethics opinions). In 2004, a House of Representatives bill that *would have* required emergency medical providers to alert immigration authorities when they provided care to undocumented people failed in the House, largely over concerns that such a requirement would deter people from seeking desperately needed medical care. *See* Summary, H.R. 3722 (108th Congress 2003-2004).[2] If the law already included a reporting requirement applicable to the general public—or to people providing medical care—no such bill would have been proposed, and its overwhelming defeat (88 to 331) highlights the fact that no such requirement exists. Neither the general public nor hospitals and clinics have any legal obligation whatsoever to call the Border Patrol upon treating undocumented people.

B.  General Provisions Regarding Reporting Criminal Activity

For nearly 200 years, the law in this country has recognized that whatever anyone may believe would constitute exemplary citizenship, citizens are not legally obligated to report crimes. *Marbury v. Brooks*, 20 U.S. (7 Wheat.) 556, 575-76 (1822). As scholars have explained, in the days before professional police forces existed, "the citizens had to perform the function of the police," but in the modern era, "it is now the duty of law officials to pursue and punish criminals, and it is the duty of citizens to refrain from interfering." *See, e.g.,* John V. Hurt, "Case Comment: Criminal Law – First Circuit Allows Guilty Plea for Misprision to Stand Under Plain Error Review," 41 *Suffolk U. L. Rev*. 387, 393 (2008).

The federal law that comes closest to requiring the reporting of unlawful activity is 18

---

[2] Summary available at https://www.congress.gov/bill/108th-congress/house-bill/3722?q=%7B%22search%22%3A%5B%22H.R.+3722%22%5D%7D&s=3&r=1.

U.S.C. § 4, Misprision of a Felony. This law, however, limits is reach to *felonies*, and improper entry by an alien (8 U.S.C. § 1325) is a *misdemeanor*. Moreover, the misprision statute does *not* penalize a simple failure to affirmatively report; it only penalizes active concealment. *See United States v. Olson*, 856 F.3d 1216 (9th Cir. 2017); *Lancey v. United States,* 356 F.2d 407, 410 (9th Cir. 1966) ("Mere silence, without some affirmative act, is insufficient evidence. . ."); *United States v. Ciambrone*, 750 F.2d 1416, 1418 (9th Cir. 1984) ("A person who witnesses a crime does not violate 18 U.S.C. § 4 if he simply remains silent."); *United States v. Phillips,* 827 F.3d 1171, 1175 (9th Cir. 2016) (misprision not a "purely passive" offense because it has "long been interpreted to contain some element of *active concealment*") (emphasis original). Similarly, while 18 U.S.C. § 1001, punishes one who "falsifies, conceals, or covers up by any trick, scheme, or device a material fact" on "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," it only applies to simple silence where an affirmative legal duty to disclose exists. *See United States v. White Eagle,* 721 F.3dd 1108, 1116 (9th Cir. 2013); *United States v. Varbel,* 780 F.2d 758, 762 ("Since appellants were under no duty to report their currency transactions to or through the bank, there can be no concealment in violation of 18 U.S.C. § 1001.").

Last year, a federal appeals court recognized that even prisoners*,* who have abridged constitutional rights (*Pell v. Procunier,* 417 U.S. 817, 822 (1974)), have an absolute First Amendment right to refuse to serve as informants for law enforcement. *Burns v. Martuscello,* 890 F.3d 77, 89 (2d. Cir. 2018) (recognizing explicit "right not to snitch" and long-recognized Fourth Amendment right "to walk away from police questioning. When

an individual, unsuspected of wrongdoing, is approached by a law enforcement officer, the individual need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.") (internal quotation marks and citation omitted).

C. "Conceal, Harbor, or Shield from Detection"

The government may not argue to the jury that § 1324(a)(1)(A)(iii) itself tacitly creates a reporting obligation through its prohibition on "concealing, harboring, or shielding from detection." The law cited above clearly establishes that simply remaining silent about the presence of undocumented people is *not* unlawful, and no one has an obligation to call the Border Patrol, even if they know for a fact that individuals are undocumented. Moreover, the law is now crystal clear in the Ninth Circuit that harboring "require[s] a finding that Defendants intended to violate the law." *United States v. Tydingco,* 909 F.3d 297, 303 (9th Cir. 2018). Knowing about the presence of undocumented people without calling the Border Patrol does *not* violate the law, and thus cannot be done with the requisite intent. Because the law does not require anyone to notify the Border Patrol, choosing not to affirmatively call them cannot render an otherwise legal act criminal. Accordingly, the government may not argue to the jury that mere passive silence converted Dr. Warren's otherwise-legal provision of humanitarian aid and hospitality into a crime.

Nor could any reasonable construction of "conceal, harbor, or shield from detection" create a reporting obligation, even leaving aside the criminal intent requirement. The use of the word "conceal" in other similar statutes confirms that it requires an affirmative act of hiding. Thus, the misprision statute, 18 U.S.C. § 4, refers to one who "conceals *and does not as soon as possible make known*" the commission of a felony (emphasis added);

if non-reporting constituted concealment, the statute would not need both. Courts have uniformly interpreted this provision to require an affirmative act of concealment. *See* cases cited *supra*; *see also United States v. Izarraga-Ponce,* 2009 U.S. Dist. LEXIS 28540 (D. Id. 2009) (dismissing indictment because the only "concealment" alleged was failure to report).

An affirmative act of concealment must be something beyond simply allowing someone inside, even to spend the night(s). One is not "concealing" houseguests simply by inviting them to sleep over; a homeless shelter is not "concealing" its clients by providing food and beds. For instance, in *Lancey,* the bank robber spent the night at the defendant's home, but that was not an affirmative act of concealment; rather, for this element, the Court relied on the fact that the defendant had hidden a number of crucial items of evidence in the house including the proceeds from the robbery, the demand note, a loaded gun, and license plates, in various drawers, bags, and boxes around his property, including in a nightstand and in the garage. 356 F.2d at 411. Lying to authorities also qualifies as an affirmative act of concealment. *United States v. Hodges,* 566 F.2d 674, 675 (9th Cir. 1977). In contrast, in *United States v. King,* 402 F.2d 694 (9th Cir. 1968), the Court reversed a conviction, finding that riding (or possibly driving) in a car with two people the defendant knew to have robbed a bank while they were driven to a place from which they might escape, as well as receiving some unspecified amount of the proceeds of the robbery, was not concealment. *Id.* at 697-98.

In *Ciambrone,* 750 F.2d at 1418, the Ninth Circuit focused its analysis on whether the defendant's acts ultimately "result[ed] in any greater concealment of the crime" (ultimately

7

determining that making a partial disclosure to police while withholding important facts did *not* constitute concealing). Here, the government cannot reasonably argue that simply allowing two migrants to remain in the No More Deaths facility for medical monitoring without calling the Border Patrol made it more difficult for agents to apprehend them—indeed, it appears to actually have made it easier. The two men were observed standing outside in the open, and agents quickly arrested them—something which would have been much more difficult and dangerous to accomplish if the migrants had instead remained in the vast and remote desert wilderness, much of it without roads.

In sum, concealing indisputably requires an affirmative action of something beyond simply allowing a person to be inside—such as physically hiding them, or providing false information about them—and requires some showing that the action actually made it more difficult for law enforcement to locate the concealed people.

Conclusion

The Government has not charged Dr. Warren with any crime relating to failure to inform the Border Patrol of the presence of known or suspected illegal aliens, much less the knowledge of a *felony*. If it had, this Court would unquestionably be obligated to instruct the jury that "Mere failure to report a federal felony is not a crime." (9th Circuit Model Instruction 8.0A). The fact that the Government has not actually charged this crime does *not* mean it is entitled to argue for to the jury that it should convict Dr. Warren of harboring based his failure to do something he had absolutely no obligation to do. Accordingly, this Court should preclude the government from arguing for a conviction based on failure to affirmatively inform the Border Patrol of the presence of known or

suspected undocumented people.

Dated this 31st day of May, 2019

                                      KUYKENDALL & ASSOCIATES

                                      By /s/ Amy P. Knight
                                            Gregory J. Kuykendall
                                            Amy P. Knight
                                            531 S Convent Avenue
                                            Tucson, AZ 85701
                                            Attorneys for Defendant Scott Daniel Warren

## CERTIFICATE OF SERVICE

I certify that on May 31st, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701