MICHAEL BAILEY
United States Attorney
ANNA WRIGHT
Assistant United States Attorney
NATHANIEL J. WALTERS
Assistant United States Attorney
State Bar No.: 029708
405 West Congress, Suite 4800
Tucson, Arizona  85701-5040
Telephone: (520) 620-7300
E-mail: anna.wright@usdoj.gov
E-mail: nathaniel.walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Scott Daniel Warren,<br><br>　　　　　　Defendants. | CR-18-00223-RCC (DTF)<br><br>GOVERNMENT'S RESPONSE: DEFENDANT'S MOTION TO PRECLUDE IRRELEVANT EVIDENCE OF CONSPIRACY<br><br>(Doc. 315) |

The United States of America, by and through its undersigned attorneys, files its Response to the Defendant's Motion to Preclude Irrelevant Evidence of Conspiracy. Doc. 315. The evidence the defendant wishes to preclude is relevant to prove the defendant's motive and intent, and is therefore probative and not unfairly prejudicial. The evidence is also intrinsic to the prosecution's case, and will not confuse the issues or waste the Court's time. As such, the Court must deny the defendant's motion in its entirety.

**I.　　Discussion**

Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402. To be "relevant," evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007). All that is required is a "tendency" to establish the fact

at issue. *Id*. Also, Rule 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Under recent Ninth Circuit precedent, among other things, the United States must show the defendant intended to violate the law. *United States v. Tydingco*, 909 F.3d 297, 304 (9th Cir. 2018). "One way to demonstrate such an intention is to prove that the defendant sought to prevent immigration authorities from detecting an illegal alien's presence." *Id*. Showing that the defendant intended to shield an illegal alien from detection is not, however, the only way to prove that a defendant intended to violate the law. *Id*. (citing *United States v. Dann*, 652 F.3d 1160, 1174 (9th Cir. 2011)) ("For example, a defendant who chooses to publicize her harboring of an illegal alien in order to call attention to what she considers an unjust immigration law intends to violate the law, even though she does not intend to prevent detection.").

    a. <u>The Illegal Aliens' Activities Before Their Arrival at the Barn is Relevant and Intrinsic Admissible Evidence.</u>
        *i. The evidence is intrinsic and necessary to allow the United States to give a coherent and comprehensible story to the jury.*

The surveillance footage and the illegal aliens' testimony is intrinsic to "permit the [United States] to offer a coherent and comprehensive story regarding the commission of the crime." *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013). Courts allow intrinsic evidence because "[t]he jury cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Id*. (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).

Here, to preclude this evidence would force the jury to decide whether the defendant harbored, concealed, or shielded illegal aliens, and more specifically, whether he had any intent to violate the law, without hearing evidence about how the illegal aliens got from the International Border to the Barn. Indeed, nothing would seem to be more intrinsic and will

allow the United States to present a "coherent and comprehensive story regarding the commission of the crime." This evidence also serves to prove the aliens' illegal journey in the United States and their motive to continue further into the United States. Here, any evidence that the illegal aliens wanted to travel north, and presumably escape detection by law enforcement, is relevant to show the defendant's intent to violate the law. If the illegal aliens in this case wanted to be harbored, concealed, or shielded from detection, the defendant obliged and did precisely that. Also, their obvious intent was to travel north, and two agents testified they observed the defendant giving the illegal aliens directions on how to travel north and circumvent the Border Patrol checkpoint.

The illegal aliens in this case wanted to be shielded from Border Patrol and wanted help getting north. The defendant provided both, and this evidence, therefore, goes directly to a material issue – his intent to violate the law. As such, the evidence is relevant, and the defendant's motion must be denied.

*ii. The evidence is relevant to prove the defendant's intent.*

Surveillance footage of the illegal aliens at two gas stations and their testimony about what occurred before they arrived at the Barn are relevant to show the defendant's intent to harbor, conceal, or shield the illegal aliens from law enforcement.

As an initial matter, the defendant's argument requires the Court to conclude that the defendant was unaware that illegal aliens were traveling to the Barn, a fact that should fall within the jury's purview. A jury could reasonably infer that the defendant knew that illegal aliens would arrive at the Barn, and this would show planning and preparation, which bears directly on his intent to violate the law. The cases cited by the defendant point to situations where the United States could not prove, with any evidence, the defendant's prior knowledge, but that is not the case here.

Circumstantially, the United States can show the defendant knew or should have known illegal aliens were going to show up at the Barn. First, the defendant and other members of No More Deaths traveled to Irineo Mujica's shelter, where at least one of the illegal aliens stayed, the *exact* day the aliens said they crossed into the United States

illegally. The purpose of the visit was to provide medical care, give water, and provide border crossers with items to assist them on their illegal journey into the United States. Evidence of what the defendant and other members of No More Deaths did in Mexico is relevant to demonstrate the defendant's role in planning and preparing to harbor illegal aliens. The illegal aliens did not find the Barn by chance – they were led there. It is not a coincidence that members of No More Deaths went to the shelters on the *exact* day the illegal aliens crossed into the United States illegally. It is also not a coincidence that No More Deaths, including the defendant, gave the illegal aliens pre-departure kits to assist them on their illegal journey north and that two illegal aliens arrive at the Barn two days later.

Second, Susannah Brown was face-to-face with Kristian Perez-Villanueva several weeks before he and Jose Sacaria-Godoy arrived at the Barn. Then, the defendant's first call was to Ms. Brown, and there is no evidence that she gave any medical guidance on this call. It is not a coincidence that the defendant's first call was to Ms. Brown, who met Mr. Perez-Villanueva at the shelter in Mexico 2-3 weeks before his arrival to the Barn. Finally, the defendant admitted in his testimony at trial that he arrived within minutes of the illegal aliens arriving at the Barn.

This evidence has a direct bearing on the defendant's intent to harbor, conceal, or shield illegal aliens from detection from law enforcement. By showing the defendant planned and prepared for *any* aliens to enter the United States illegally, the Government will have met one of the elements of the offense charged, that is, that the defendant intended to violate the law in this case.

    *iii. The evidence is relevant to rebut the defendant's claim that the illegal aliens were in distress.*

The video evidence may also be used to impeach the defendant's claim that the aliens appeared to be in distress based on his assessment after their arrival at the Barn. The United States has consistently maintained that the illegal aliens were not in distress when they arrived at the Barn.

How the illegal aliens walked, acted, or moved around before their arrival and while at the Barn, is entirely relevant to impeach the defendant's observations when the illegal aliens arrived at the Barn. Based on the aliens' appearance, actions, and movements captured on video, one could reasonably infer the defendant completely fabricated the information from the illegal aliens or his assessment that they were in distress when they arrived at the Barn. In any event, the evidence the defendant asks the Court to preclude is admissible in the United States' case-in-chief because it is intrinsic to the case, and it is also admissible to impeach the defendant's credibility. Therefore, his motion must be denied.

### b. The Evidence Should Not Be Precluded Under Rule 403.

All the evidence the defendant seeks to preclude is probative and not unfairly prejudicial. Interestingly, the defendant harbored illegal aliens, making immigration a central issue, but asks the Court to preclude evidence because "[i]llegal immigration is an extremely divisive topic," and jurors may think that "undocumented immigrants are despicable." Doc. 315 at 9-10. Any concerns regarding this topic can be addressed by the Court through *voir dire*.

Regardless, the entire trial will reference illegal aliens multiple times. The fact that aliens were present in the United States illegally is an element of the charged offenses. *See* 8 U.S.C. § 1324(a)(1)(A)(iii). The jury will also see video depositions where two men admit to being illegal aliens. To say evidence about seeing or hearing about illegal aliens is prejudicial should carry little weight, and the defendant's motion must be denied.

The evidence the defendant seeks to preclude will not confuse the jury or waste time. As noted above, the evidence bears directly on the defendant's intent. Finally, the United States should be allowed to present the evidence necessary to prove its case, no matter the length. In conclusion, the defendant's motion must be denied.

## II. Conclusion

Here, evidence the defendant attempts to preclude is intrinsic to the prosecution's case, relevant to the defendant's intent to violate the law, and constitutes impeachment

1  evidence.. Also, Rule 403 is inapplicable in this instance. As such, the United States
2  respectfully requests that the Court deny the defendant's motion in its entirety.
3       Respectfully submitted this 9th day of September 2019.

          MICHAEL BAILEY
          United States Attorney
          District of Arizona

          */s/ Anna R. Wright & Nathaniel J. Walters*

          ANNA WRIGHT &
          NATHANIEL J. WALTERS
          Assistant United States Attorneys

Copy of the foregoing served electronically or by
other means this 9th day of September 2019, to:

All ECF participants