Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com

Attorneys for Defendant Scott Daniel Warren

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 18-CR-00223-RCC(DTF) |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT ABOUT THINGS HE DID NOT SAY** |
| SCOTT DANIEL WARREN, | |
| Defendant. | |

Defendant Dr. Scott Warren moves this Court to preclude the government from introducing evidence of particular things Dr. Warren did not say to Border Patrol agents on January 17, 2018 when he was exercising his Fourth Amendment right to decline any consensual or voluntary interaction with law enforcement, and from arguing or otherwise implying that his failure to say particular things constitutes evidence of guilt. This motion is based on the Fourth and Fifth Amendments to the U.S. Constitution.

1. <u>Background</u>

When Border Patrol agents came onto the property at the Barn on January 17, 2018, they sought to establish consensual, voluntary contact. RT 5/30/19 at 40, 67; RT 7/13/18 at 57 (Agent Burns' suppression hearing testimony that he intended to "try to gain consensual entry into the building. . ."). The Fourth Amendment guarantees the right to refuse any voluntary interaction with law enforcement. *See, e.g., Florida v. Royer,* 460 U.S. 491, 497-

98 (1983) (right to "decline to listen to the questions at all and [] go on his way"); *United States v. Woods,* 720 F.2d 1022, 1026 (9th Cir. 1983) (in analyzing whether a statement violated the Fourth Amendment, "[t]he person so questioned need not answer any questions and is legally free to ignore the officer, or to walk away.").

Dr. Warren availed himself of this Fourth Amendment right to decline to voluntarily engage with the agents. He did not consent to allow the agents onto the property and explicitly stated that "he did not wish to answer any questions," RT 7/13/18 at 49, precisely as *Royer* and *Wood* say he could. Subsequently, the agents came onto the property anyway; the parties litigated the legality of this non-consensual entry pretrial, and the Court ultimately ruled that the evidence obtained from the agents' entry onto the property was admissible. *See* Doc. 110 (Report and Recommendation on Defendant's Motion to Suppress).

On May 23, 2019, Dr. Warren filed a Motion in Limine to Exclude Evidence or Argument About Assertion of Constitutional Rights as Evidence of Criminal Activity. Doc. 225. The motion addressed two categories of evidence: Dr. Warren's request that the Border Patrol agents leave the property, and a Know-Your-Rights type sign that was posted inside the Barn. The government never filed a response. The parties discussed the motion with the Court on May 28, 2019, and the Court took it under advisement. Doc. 231. At the hearing, the government indicated that it did *not* intend to elicit evidence that Dr. Warren had invoked his constitutional rights.[1]

At trial, although the government did not ask Dr. Warren what he said to the agents who came onto the property, it did seek to ask him about certain things he did *not* say. Because the government had agreed that the rights invocation was properly precluded, the jury was not, and could not be, told what Dr. Warren *did* say to the agents, i.e., that he did not consent to their entry on the property and would not answer questions. In that context,

---

[1] The defense also filed a Motion in Limine to Preclude Government from Arguing that Not Calling the Border Patrol Constitutes Concealment on May 31, 2019, Doc. 235, which addressed the decision not to affirmatively contact law enforcement, rather than what was or was not said when agents had already arrived. The government never responded to this motion, either. Ultimately, on June 6, 2019, the Court issued a minute entry stating that both motions were granted in part and denied in part. Doc. 250. The government was precluded from introducing evidence of the sign, and the jury was instructed that ordinary citizens have no obligation to report violations of law.

2

by identifying specific things he did not say, the government was allowed to convey the false impression that Dr. Warren *had* consented to voluntarily engage with law enforcement, but simply chose not to alert the agents to the presence of the migrants, which, it argued, was evidence of guilt. In other words, the government apparently interpreted its obligation as *only* refraining from eliciting Dr. Warren's explicit statements of invocation of rights, *not* from introducing the conduct of not speaking to the agents) that constituted the exercise of those rights.

The parties brought this dispute to the Court's attention, and the government for the first time raised the concept of "prearrest, pre-Miranda silence." RT 6/6/19 at 128. At sidebar, the prosecutor mentioned two cases, which he identified only as U.S. v. Beckman and U.S. v. Oplinger, without citations, which he claimed supported his position that while the explicit invocation of rights may have been off limits, the subsequent silence itself was admissible. *Id.* at 128-29 ("No, no. I'm asking him about what he didn't say. That's it. I'm not going to say that he invoked any right."). The Court permitted the government to question Dr. Warren about a series of things he did not say to the agents.

The question came up again at the end of that same day after the settling of final jury instructions, when the defense asked the Court for a ruling on the May 31 motion, in anticipation of closing arguments. RT 6/6/2019 at 229-230. The prosecutor stated: "We talked about this earlier. United States vs. Beckman, United States vs. Oplinger, clearly state that pre-Miranda, prearrest silence can be used as evidence of guilt. . ." *Id.* He later reiterated, "Ninth Circuit case law is absolutely clear. We can use that silence as evidence of guilt. It's clear as day." *Id.* at 232. The Court did not explicitly rule, but told the government, "If you think the Ninth Circuit supports that argument, go ahead." The Court then asked whether the prosecutor had the cases he was talking about with him—he did not—and, failing that, did he have citations for them, which he could not find. *Id.* at 233-34. He eventually produced the citations, and the Court stepped out of the room for just ten minutes. *Id.* at 236. Upon return, the Court stated: "I've looked at both Beckman and Oplinger. Oplinger was reversed on other grounds Beckman has not been reversed. Beckman still says you can use prearrest

silence." *Id.* at 237.

Because the government never filed responses to the defense motions, and all of this occurred during the heat of trial, neither the defense nor the Court that the opportunity to conduct legal research to determine whether any additional authorities might bear on this question, nor how to reconcile the line of cases clearly forbidding the use of the exercise of rights as evidence of guilt with the cases allowing the introduction of prearrest, pre-Miranda silence. Now, with the benefit of research, it is readily apparent that the two lines of authority are not in conflict at all. While, as the government's cases say, the *Fifth* Amendment's protection against compelled self-incrimination has no application to voluntary, noncustodial, pre-arrest statements or silence, and thus does not preclude the introduction of such evidence, the government may *not* introduce a defendant's proper exercise of his *Fourth* Amendment right not to engage in a voluntary or consensual encounter with law enforcement. Accordingly, regardless of what the Fifth Amendment allows, the Court should preclude the government from eliciting or commenting on things Dr. Warren did not say to Border Patrol agents when he was exercising his constitutional right not to engage with them voluntarily under the Fourth Amendment.

2. <u>Refusal of Consent to a Voluntary Encounter With Police Is Not Admissible as Evidence of Guilt.</u>

The purpose of the Fourth Amendment is "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martienz-Fuerte,* 428 U.S. 543, 554 (1976). It reflects "the concern of our society for the right of each individual to be let alone." *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 416 (1966).

This does not mean that law enforcement officers may not engage with ordinary citizens who are willing; [p]olice officers enjoy 'the liberty (again, possessed by every citizen) to address questions to other persons.'" *United States v. Mendenhall,* 446 U.S. 544, 553 (1980) (citing *Terry v. Ohio,* 392 U.S. 1, 31 (1968)). They "do not violate the Fourth Amendment

by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Florida v. Royer,* 460 U.S. 491, 497 (1983).

But crucially, the Fourth Amendment guarantees that interactions like these—initiated without any particular legal authority—are entirely voluntary. While officers are free to ask individuals if they will voluntarily answer questions, "[t]he person approached. . . need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Royer,* 460 U.S. at 497-98 (citing *Terry*, 392 U.S. at 32-33); *see also Mendenahall,* 446 U.S. at 554 (recognizing that absent a seizure, "the person to whom questions are put remains free to disregard the questions and walk away."); *Kentucky v. King,* 563 U.S. 452, 470 (2011) (Fourth Amendment rights adequately protected because "the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time."). The Fourth Amendment thus gives individuals the absolute right to ignore or decline requests from law enforcement officers for their voluntary cooperation—including requests for information and requests for permission to conduct a search.

As Dr. Warren explained in his motion in limine (Doc. 225), the Ninth Circuit forbids prosecutors from using as evidence of guilt a defendant's exercise of his Fourth Amendment right not to consent to a voluntary interaction with law enforcement:

> The Ninth Circuit has repeatedly recognized that this principle forbids the government from using the assertion of a constitutional right to refuse to consent to a search as evidence of wrongdoing. *See, e.g., Gasho v. United States,* 39 F.3d 1420, 1439 (9th Cir. 1994) ("clearly established" for purposes of § 1983 action that officer may not arrest subject based on "his challenge to the officer's authority absent a warrant"); *Graves v. City of Coeur D'Alene,* 339 F.3d 828, 841-42 (9th Cir. 2003) (refusal to consent to a search may not be considered as a factor in support of probable cause).
>
> This absolute protection inheres *even if* the defendant's intention was in fact to conceal evidence of wrongdoing (a situation of which there is no evidence here). *See United States v. Prescott,* 581 F.2d 1343, 1351 (9th Cir. 1978) (drawing parallel, in a prosecution for "harboring or concealing" a criminal,

between invocation of Fourth Amendment right to refuse consent to search and invocation of Fifth Amendment privilege, from which government is absolutely forbidden to argue any implication of guilt).

Doc. 225 at 2-3. The government has never argued that it may introduce evidence of Dr. Warren's refusal to consent to the agents' entry onto the property, and it obviously may not.

Instead, the government has argued that while it cannot introduce Dr. Warren's explicit *assertion* of rights, it can elicit and comment on the *conduct* that constituted the *exercise* of the right to "refuse to answer questions at any time," *King,* 563 U.S. at 470. *See* RT 6/6/19 at 128-29 ("I'm asking him about what he didn't say. That's it. I'm not going to say that he invoked any right."). But the invocation and the exercise of a right cannot be separated like that. The purpose of the rule espoused in *Prescott* is to "protect the exercise of a constitutional right," not simply to protect the act of explicitly invoking it. 581 F.2d at 1351. And here, that right includes the well-recognized right not only to refuse to let the officers inside, but to refuse to engage in any voluntary exchange with them at all.

Indeed, properly precluding reference to the invocation of rights while allowing evidence and comment on the conduct constituting the exercise of rights would have the perverse effect of allowing the government to badly mislead the jury. As happened in the first trial, the government could insinuate that Dr. Warren's reason for not saying particular things was that he knew his conduct was illegal, when in fact his reason was that he was exercising his constitutional rights. Dr. Warren could not correct this misinformation without sacrificing the protection he is entitled to under *Gasho* and *Prescott*. The government could thus use his assertion of constitutional rights against him, which is precisely what the law forbids.

In short, Dr. Warren's non-engagement with the Border Patrol agents was a straightforward and intentional exercise of his Fourth Amendment rights. The government may not use that exercise against him, either directly by introducing evidence of his assertion or indirectly by introducing evidence of his conduct and suggesting that it constituted something other than a proper exercise of rights.

3. *Beckman* and *Oplinger* Do Not Entitle the Government to Introduce Evidence of Dr. Warren's Exercise of his Fourth Amendment Rights.

At trial, the government relied exclusively on two Ninth Circuit cases to justify its use of things Dr. Warren did not say to agents as evidence of guilt. It treated them as creating a right or entitlement in the government to introduce pre-arrest, pre-Miranda silence as evidence of guilt. But those cases do no such thing. They hold only that such evidence is not precluded by the defendant's Fifth Amendment's protection against self-incrimination, which was the *only* basis either defendant had presented for precluding it. They have no bearing on other possible bases for excluding similar evidence.

In *United States v. Beckman,* 298 F.3d 788, border agents inspected a trailer that was crossing the U.S. Mexico borer at a port of entry and discovered over 1500 pounds of marijuana. When the truck entered the primary inspection area, Beckman, who was driving, "identified his citizenship and stated he had nothing to declare to customs." *Id.* at 791. The agent then asked for permission to search the locked trailer, and Beckman "claimed that a friend had the keys, and had already crossed over." The agent found an unlocked door and discovered the drugs; Beckman was convicted of importation of marijuana and possession of marijuana with intent to distribute. His defense was that he had been set up, and had no idea that the trailer attached to the truck he was driving contained marijuana. *Id.* at 791-92. In closing argument, the government "suggested that if Beckman's courtroom testimony about being tricked was actually true he would have offered it at primary inspection. The government also argued that Beckman could have told inspectors that he thought Gregg was behind him in the third truck." *Id.* at 895.

On appeal, Beckman argued "that opposing counsel's comments during summation violated his Fifth Amendment right to silence." *Id.* at 795. The Ninth Circuit issued a one-sentence denial of that claim: "The use of a defendant's pre-arrest, pre-Miranda silence is permissible as impeachment evidence and as evidence of substantive guilt." *Id.* (citing *United States v. Oplinger,* 150 F.3d 1061, 1067-68 (9th Cir. 1998).

*Beckman,* then, contains no analysis, but simply relies on *Oplinger*. It addresses *only*

a claim that the comment on a defendant's failure to say certain things in a pre-arrest setting would, like a comment on failure to testify, violate his Fifth Amendment right not to "be compelled in any criminal case to be a witness against himself." Beckman did *not* contend that he had asserted or exercised any Fourth Amendment rights. Nor could he; he was searched at the border, where the strictures of the Fourth Amendment have limited application. *See, e.g., United States v. Ramsey,* 431 U.S. 606, 619 (1977).

*Oplinger* was also a Fifth Amendment ruling. The court defined the question before it as "whether the privilege against self-incrimination extends to out-of-court pre-arrest statements made to private individuals." 150 F.3d at 1063.[2] Oplinger was a bank employee who was stealing from his employer by purchasing office supplies with the bank's funds and then returning them for cash refunds. His supervisor and another bank officer "met with" him about the returns and "confronted" him, at which point he "placed his hands over his eyes and said he did not know." *Id.* at 1064. At trial, the government elicited testimony from the supervisor that Oplinger did not offer any explanation for what had happened to the money, even when told his conduct would be reported to authorities, did not request an opportunity to put together a response, and did not suggest that he talk to anyone else. *Id.* at 1065 n.3. The prosecutor argued during closing that his failure to offer an explanation or assert at the time that he was wrongly accused did not "sound like the conduct of an innocent person." *Id.* at 1065 n.4.

On appeal, Oplinger argued that this was error "because 'non-custodial, pre-arrest, and investigatory assertions' of the right to remain silent are protected by the Fifth Amendment privilege against self-incrimination and the right to due process." *Id.* at 1066. The Ninth Circuit disagreed, holding that "the admission of testimony regarding the. . . meeting did not offend Oplinger's privilege against self-incrimination under the Fifth Amendment or his right to due process under the Fourteenth Amendment." *Id.* at 1067. It grounded this holding in its observation that "[t]he Supreme Court has 'never on any ground.

---

[2] *Oplinger* was overruled in 2010 on a different point, regarding interpretation of a provision in the United States Sentencing Guidelines. *See United States v. Contreras,* 593 F.3d 1135 (9th Cir. *en banc* 2010).

. . applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which. . . did not involve compelled testimonial self-incrimination of some sort.'" *Id.* (citing *Fisher v. United States,* 425 US. 391, 399 (1975)). As with *Beckman,* the defendant never claimed he was exercising his rights under the Fourth Amendment, and he could not, if for no other reason than that the government was not involved at all in the challenged encounter.

In other words, the court in these cases was absolutely *not* saying that the government could introduce evidence of defendants' exercise of their Fifth Amendment rights as evidence of guilt. It was saying that in neither case did the defendant's silence constitute an exercise of Fifth Amendment rights. A person cannot exercise his right not to be officially compelled to speak when no one is attempting to officially compel him. *Beckman* and *Oplinger*, then, leave undisturbed the foundational principle that the government may not burden a defendant's exercise of a constitutional right by using it as evidence of guilt. *See, e.g., Griffin v. California,* 380 U.S. 609, 614 (1965) (prosecutor may not comment on defendant's failure to testify at trial because would "cut[] down on the privilege by making its assertion costly.").

Here, the issue is not whether the Fifth Amendment applied to Dr. Warren's interaction with the agents. In the period prior to his arrest and detention, it clearly did not, and accordingly, as in *Beckman* and *Oplinger,* the Fifth Amendment does not preclude that evidence. But in this case, the Fourth Amendment does preclude the evidence, for the reasons explained above. Accordingly, this Court must preclude the government from eliciting testimony about, or commenting on, things Dr. Warren did not say to the agents during the January 17, 2018 encounter.

Dated this 19th day of September, 2019

                                KUYKENDALL & ASSOCIATES

                                By /s/ Amy P. Knight_____
                                     Gregory J. Kuykendall
                                     Amy P. Knight

531 S Convent Avenue
Tucson, AZ 85701
Attorneys for Defendant Scott
Daniel Warren

CERTIFICATE OF SERVICE

    I certify that on September 19, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701