MICHAEL BAILEY
United States Attorney
ANNA WRIGHT
Assistant U.S. Attorney
NATHANIEL J. WALTERS
Assistant U.S. Attorney
State Bar No.: 029708
405 West Congress, Suite 4800
Tucson, Arizona  85701-5040
Telephone: (520) 620-7300
E-mail: anna.wright@usdoj.gov
          nathaniel.walters@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 18-CR-223-TUC-RCC (DTF) |
| Plaintiff, | |
| vs. | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OR ARGUMENT ABOUT THINGS HE DID NOT SAY |
| Scott Daniel Warren, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, hereby responds to the defendant's Motion *in Limine* to Preclude Evidence or Argument About Things He Did Not Say. Doc. 324. The government respectfully requests that the Court deny the motion in its entirety because it has no basis in law or fact. The government's introduction of evidence regarding the defendant's pre-arrest, non-custodial silence has no constitutional implications, and may be used as substantive evidence of guilt and as impeachment. *See United States v. Oplinger*, 150 F.3d 1061, 1065-67 (9th Cir. 1998); *United States v. Beckman*, 298 F.3d 788, 795-96 (9th Cir. 2002).

I.      Background

At trial, Border Patrol Agent Brendan Burns testified that, on January 17, 2018, he and Border Patrol Agent John Marquez established surveillance on the Barn and approached the Barn after seeing the defendant give northbound directions to two

suspected illegal aliens. TR 5/30/19 at 48:11-17, 51:5-14, 57:21-67:7. Agent Burns spoke with the defendant in the driveway of the property, where he informed the defendant that he was there to investigate illegal alien activity on the property. *Id.* at 70:11-23, 72:3-8. Agent Burns further testified that he told the defendant he was going to go knock on the Barn's door and that the defendant responded by saying he would follow Agent Burns to the Barn. *Id.* at 66:1-3, 73:21-74:2. Agent Burns further testified that, at that point, he and the defendant walked around the Barn to the main entrance, where they saw Agent Marquez there, and one of the illegal aliens sitting in an open doorway. *Id.* at 74:14-23. Finally, Agent Burns testified that at no point during these events did the defendant ever say that there was anyone in the Barn, let alone two illegal aliens allegedly receiving medical care. *Id.* at 73:9-21, 74:3-13. The defendant did not object to this testimony.

The government also cross-examined the defendant regarding his failure to tell Agent Burns that there was anyone in the Barn, let alone two illegal aliens allegedly receiving medical care. TR 6/6/19 at 130:10-131-13. The defendant objected to this line of questioning at side-bar. *Id.* at 128:8-130:7. The Court overruled the objection. *Id.*

II.   Argument

a.   The government may introduce the defendant's pre-arrest, pre-*Miranda* silence as both evidence of guilt and impeachment.

It is well-settled that a defendant may be impeached with his pre-arrest, non-custodial silence if he chooses to testify at trial. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). It is also well-settled that the government may introduce evidence of a defendant's pre-arrest, non-custodial silence as substantive evidence of guilt at trial. *See Oplinger*, 150 F.3d at 1065-67; *Beckman*, 298 F.3d at 795-96. This is because "[n]either due process, fundamental fairness, nor any more explicit right contained in the Constitution is violated by the admission of the silence of a person, not in custody or under indictment, in the face of accusations of criminal behavior." *Oplinger*, 150 F.3d at 1067, quoting *United States v. Giese*, 597 F.2d 1170, 1197 (9th Cir. 1979).

In *Oplinger*, the government introduced as substantive evidence the defendant's silence when accused by his supervisor of defrauding his employer. 150 F.3d at 1065-66. The defendant claimed on appeal that he remained silent, in part, because he knew "that his answers would be reported to the FBI, and argued that "'non-custodial, pre-arrest, and investigatory assertions' of the right to remain silent are protected by the Fifth Amendment privilege against self-incrimination and the right to due process." *Id.* at 1066. The Ninth Circuit roundly rejected this argument, reasoning that since "the government made no effort to compel [defendant] to speak, he was free to act as he pleased." *Id.* at 1067. "Consequently, the constitutional privilege against compelled self-incrimination simply did not come into play." *Id.*

While the defendant in *Oplinger* remained silent in the face of questions by his supervisor, the defendant in *Beckman* remained silent as to certain information when questioned by law enforcement at a port of entry. *Beckman*, 298 F.3d 788, 795. In that case, the defendant testified at trial that he had been tricked into importing marijuana. *Id.* In closing argument, the government suggested that if the defendant had been tricked, then he would have said something to law enforcement at the port of entry. *Id.* Despite the introduction of questioning by law enforcement rather than a civilian, the Ninth Circuit found no difficulty in applying *Oplinger* to these facts and holding that "[n]o error resulted from the government's summation commentary on [the defendant's] silence." *Id.*

Like the defendant in *Beckman*, the defendant in this case remained silent during a non-custodial encounter with law enforcement regarding certain material facts. Like the defendant in *Beckman*, if the defendant were telling the truth regarding his defense at trial, then he would have said something about these material facts at the time of his consensual, non-custodial encounter with law enforcement. Specifically, if the defendant had no intent to help the illegal aliens avoid detection by Border Patrol, then he would have told Agent Burns they were in the Barn, especially since Agent Burns was on his way to knock on the door to the Barn.

The defendant argues that Beckman can be distinguished from this case, because the defendant in *Beckman* remained silent at a port of entry "where the strictures of the Fourth Amendment have limited application." Doc. 324 at 8. However, the location of the non-custodial encounter and the identity of the questioners played no role in the Ninth Circuit's analysis in *Beckman* or *Oplinger*.

The Ninth Circuit's holdings in *Oplinger* and *Beckman* clearly apply in this case such that the government may introduce evidence regarding the defendant's pre-arrest, non-custodial silence without implicating any constitutional protections.

> b.   The Fourth Amendment does not apply to pre-arrest, non-custodial silence.

*Oplinger* and *Beckman* make clear that the Fifth Amendment is not implicated by use at trial of a defendant's pre-arrest, non-custodial silence. The Fourth Amendment simply does not apply to this situation, because, by its terms, the Fourth Amendment protects "against unreasonable searches and seizures[.]" *U.S. Const. amend. IV.* The Fourth Amendment does not create a right to remain silent independent of the Fifth Amendment.

When an individual is seized within the meaning of the Fourth Amendment, certain constitutional protections apply. *See Florida v. Royer*, 460 U.S. 491, 497-499 (1983) (discussing consensual encounters, custodial arrest and investigative detention). However, "[i]f there is no detention – no seizure within the meaning of the Fourth Amendment – then no constitutional rights have been infringed." *Royer*, 460 U.S. at 498. Consistent with this principle, a law enforcement officer may approach an individual in a public place and ask him questions, and the individual may walk away and refuse to answer those questions. *Id.* The Fourth Amendment is not implicated in this situation unless the individual is detained without "reasonable, objective grounds" consisting of something more than the refusal to answer questions. *Id.* Nothing in these cases limits the government's ability to later use the defendant's silence as substantive evidence of guilt or impeachment.

In this case, the defendant's encounter with Agent Burns was consensual. The defendant even volunteered to accompany Agent Burns to the Barn. Agent Burns did not

arrest or further detain the defendant until after the agents determined that the suspected illegal aliens did not have documentation to be in the United States legally, and the defendant's silence played no role in establishing probable cause for his arrest. Accordingly, no Fourth Amendment violation occurred.

III.    <u>Conclusion</u>

As discussed above, under clear Ninth Circuit and Supreme Court precedent, the government's introduction of evidence regarding the defendant's pre-arrest, non-custodial silence has no constitutional implications, and may be used as substantive evidence of guilt and as impeachment. Accordingly, the defendant's motion should be denied in its entirety.

Respectfully submitted this 4th day of October, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*/s/ Anna R. Wright & Nathaniel J. Walters*

ANNA WRIGHT &
NATHANIEL J. WALTERS
Assistant U.S. Attorneys

Copy of the foregoing served electronically or by
other means this 4th day of October, 2019, to:

All ECF participants

- 5 -