Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com

Attorneys for Defendant Scott Daniel Warren

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA**

| United States of America, | ) | |
|---|---|---|
| | ) | No.CR-18-00223-001-TUC-RCC(DTF) |
| Plaintiff, | ) | |
| | ) | **RESPONSE TO STATE'S NOTICE** |
| vs. | ) | **OF EXPERT WITNESSES AND** |
| | ) | **MOTION IN LIMINE TO** |
| SCOTT DANIEL WARREN, | ) | **EXCLUDE ALIEN SMUGGLING** |
| | ) | **EXPERT** |
| Defendant. | ) | |
| | ) | |

On September 30, 2019, the government filed a "notice of expert witnesses" (Doc. 331). Although the Court had directed the parties to file motions by September 30, obviously Defendant could not file any motion regarding an expert who had not yet been disclosed. Accordingly, defendant now moves this Court to exclude the government's proposed "alien smuggling expert" pursuant to Federal Rules of Evidence 702, 401 and 403 because an expert on "alien smuggling" will not "help the trier of fact to understand the evidence or to determine a fact in issue" in this harboring case.

### MEMORANDUM OF POINTS AND AUTHORITIES

The government proposes to call an agent to "testify regarding the methods of alien smuggling in the area surrounding Ajo, Arizona," and specifically "how aliens

are guided into the United States and the routes aliens typically use in the area surrounding Ajo, Arizona," and "common obstacles aliens encounter when they illegally enter the United States to include law enforcement patrols, Border Patrol checkpoints, and sightings by civilians." Notice at 3-4. None of this information plausibly bears on any fact in issue in this harboring case, and would severely distract and mislead the jury and badly prejudice Dr. Warren.

The only charge against Dr. Warren is harboring under 8 U.S.C. § 1324(a)(1)(A)(iii). It requires only that the defendant conceal, harbor, or shield from detection a person he knew or should have known as not legally in the country, with the intent to violate the law. It does not require *anything* about how the "harboree" entered the United States or arrived at the relevant location; those activities are addressed by different laws. If the government wanted to present evidence about how these migrants crossed into the United States, it could have charged them with a crime, instead of electing to forego prosecution in exchange for testimony, or it could have identified who it believes was assisting them with the crossing, and charged that person with a crime. But it cannot bring this irrelevant topic into its prosecution of Dr. Warren solely for harboring.

None of the government's proposed topics have anything to do with whether the two migrants were in fact unlawfully in the country, whether Dr. Warren knew that, or whether he provided them with shelter. Regarding intent, whatever the government agent's view on common or typical obstacles migrants face, unless the government can show that that was information known to Dr. Warren at the time, it cannot bear on his intentions. *See, e.g., United States v. Dellinger,* 2013 U.S. Dist. LEXIS 159813, at *5 (D. Ariz. 2013) (evidence about victim offered to prove defendant's intent "will be relevant only if it was known to Defendants at the time of the events at issue in this case. . ."); *see generally* Defendant's Motion to Preclude Irrelevant Evidence of Conspiracy (Doc. 315).

Indeed, because this type of expert evidence is by definition the witness's

*opinion,* it could never bear on Dr. Warren's intent unless it could be shown that he not only knew of the opinion, but understood that opinion to be true such that he might rely on it in choosing his actions—and this is clearly an area where different parties have vastly differing perceptions. Even if the government could somehow show that Dr. Warren would have been aware of the agent's opinion at the time of the events, that would establish at most that he knew that was the Border Patrol's position. Absent evidence that he believed and would have relied on that information, it proves nothing about what Dr. Warren intended with his actions.

In addition, the introduction of such testimony—divorced as it is from Dr. Warren's knowledge and beliefs—would open up a dispute about whether the agent's description of the situation in that region was accurate, essentially tasking the jury with evaluating the overarching situation of migrants passing through the Ajo region as a general matter. That is far beyond the scope of what can reasonably be considered in this prosecution of Dr. Warren for harboring.

The government cites *United States v. Mejia-Luna,* 562 F.3d 1215 (9th Cir. 2009) to support admission of this expert testimony. But that case is plainly inapplicable. The charge in *Mejia-Luna* was transporting aliens for profit; after attempting to evade border patrol agents on the road, Mejia-Luna crashed the SUV he was driving, which contained five undocumented people, and after a chase, agents apprehended him. Two of the passengers testified at trial about "their arrangement to be smuggled into the United States and the details of payment." *Id.* at 1218. Mejia-Luna argued "there was no evidence connecting him to a smuggling operation," but the Court explained that that was not the case:

> He picked up the aliens in his white SUV at the drop point where the guides had told them to wait for a white vehicle. He arrived shortly after the drop-off in a vehicle that matched the guides' description. Without saying a word to any of them, Mejia-Luna allowed the aliens to enter his vehicle and conceal themselves, and he then drove them toward Phoenix—the aliens' destination and the location where payment was to be made at the end of the smuggling route.

*Id.* at 1219. The opinion does not specify how these facts were established, but presumably most if not all of them came in through the testimony of the passengers. The court considered this accumulation of facts to be "sufficient evidence to overcome a relevancy objection in the alien smuggling context."

In so ruling, the court drew a contrast to *United States v. Vallejo,* 237 F.3d 1008 (9th Cir. 2001) (*as amended by* 246 F.3d 1150) (9th Cir. 2001), in which it considered "whether expert testimony detailing the structure of drug trafficking organizations may be routinely introduced in drug importation cases, regardless of whether the defendant is charged with a drug trafficking conspiracy or otherwise charged with membership in such an organization," and ruled that it may not. *Id.* at 1012. The Court explained that because "Vallejo was not charged with conspiracy to import drugs; nor did the Government introduce any evidence establishing a connection between Vallejo and a drug trafficking organization," the evidence was irrelevant. *Id.* at 1015. It went on to say that *even if* the government had introduced the evidence to prove knowledge, "[t]o admit this testimony on the issue of knowledge, the only issue in the case, was unfairly prejudicial, and an abuse of discretion under Rule 403." *Id.* at 1017. This was because the "expert testimony connected seemingly innocent conduct to a vast drug empire, and through this connection, it unfairly attributed knowledge—the sole issue in the case—to Vallejo, a single individual, who was not alleged to be associated with a drug trafficking organization." *Id.* at 1017.

This case is *Vallejo,* not *Mejia-Luna*. The government dismissed the conspiracy charge, and Dr. Warren is not charged with being part of any sort of unlawful organization.[1] There is no evidence that the migrants in this case were "guided into the United States," and certainly not by Dr. Warren; indeed, the

---

[1] To the extent that the government believes that No More Deaths is somehow an unlawful organization, it has not produced any evidence to support that supposition. The suspicions and accusations of Border Patrol agents and prosecutors do not render this volunteer humanitarian organization to be anything on par with an organized for-profit smuggling ring or a "vast drug empire."

4

government's disclosure reveals that it made repeated attempts to find evidence of a connection between Dr. Warren and these migrants, and could not find any. Both of the migrants, whom the government called as witnesses, testified that they crossed into the United States on their own, in a group of five. The government has conceded that no money changed hands. *See* RT 6/7/19 at 30 (prosecutor arguing in closing, "He's not getting money out of it. That much is clear."). Moreover, Dr. Warren is not charged with, for instance, aiding and abetting an illegal entry, nor with transporting illegal aliens, which might reasonably be categorized as smuggling, but merely with harboring two people within the United States. To allow expert testimony about smuggling operations in this context would be precisely what the *Vallejo* Court condemned.

In sum, the government has not accused Dr. Warren of smuggling, or of being part of a smuggling organization; it has admitted that there is no evidence of payment, and it dismissed the charge that involved any kind of coordinating or organizing. It cannot now inundate the jury with information about a world of criminal activity to which it cannot tie Dr. Warren.

RESPECTFULLY SUBMITTED this 11th day of October, 2019.

By /s/ Amy P. Knight
Gregory J. Kuykendall
Amy P. Knight
531 S Convent Avenue
Tucson, AZ 85701
Attorneys for Defendant Scott Daniel Warren

CERTIFICATE OF SERVICE

    I certify that on October 11, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701