Gregory J. Kuykendall, Bar # 012508
Amy P. Knight, Bar # 031374
KUYKENDALL & ASSOCIATES
531 S Convent Avenue
Tucson, AZ 85701
(520) 792-8033
greg@kuykendall-law.com
amyknight@kuykendall-law.com

Attorneys for Defendant Scott Daniel Warren

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| | ) No.CR-18-00223-001-TUC-RCC(DTF) |
| Plaintiff, | ) |
| | ) **RESPONSE TO GOVERNMENT'S** |
| vs. | ) **MOTION IN LIMINE TO** |
| | ) **TO PRECLUDE TESTIMONY** |
| SCOTT DANIEL WARREN, | ) **REGARDING AN ADVICE OF** |
| | ) **COUNSEL DEFENSE** |
| Defendant. | ) |
| | ) |

Defendant, Scott Daniel Warren, Ph.D., by and through his attorneys undersigned, Gregory J. Kuykendall, and Amy P. Knight, responds to the Government's Motion in Limine to Preclude Testimony Regarding an Advice of Counsel Defense. This Court must deny the Government's motion.

While the Government asks this Court to preclude evidence regarding an advice of counsel defense, whether the Court gives that instruction does not determine what evidence may be admitted, because all of the evidence the government is seeking to preclude is *also* relevant to an element of the charged crime—intent to violate the law.

1

The government's motion is broad, "including evidence about the protocols written by No More Deaths and the organization's training program," (Motion in Limine at 1), which it argues is irrelevant. (*Id.* at 4-5). But four days after it filed this motion, the government told this Court precisely the opposite: in its Response to Defendant's Motion in Limine to Preclude Hypothetical Questions About Informed Consent, it insists that evidence regarding the protocols "is directly relevant to the defendant's intent and motive." (Doc. 339 at 2). This later-taken position, on which the government is now relying, is the correct one.

The Government's reliance on *Wofford* is misplaced. There, the defendant sought a justification defense to a felon-in-possession charge under 18 U.S.C. § 922(g)(1), based on threats he received from members of the "Hell's Angels" gang. *Wofford*, 122 F.3d at 789. The Court found that the proffered evidence could not, as a matter of law, satisfy the required elements for a justification defense. *Id*. at 792. Notably, because 18 U.S.C. § 922(g)(1) is not a specific intent crime, *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012), the defendant's testimony on his intentions and reasons was not relevant to any element of the charged crime, and thus, there was no basis to allow the evidence outside of the rejected affirmative defense.

Here, in contrast, Dr. Warren is charged with the specific intent crime of harboring under 8 U.S.C. § 1324(a)(1)(A)(iii), requiring an intent to violate the law. *United States v. Tydingco*, 909 F.3d 297, 304 (9th Cir. 2018). Evidence regarding the No More Deaths protocols and Dr. Warren's beliefs and intentions in following those protocols is directly relevant to whether he possessed the requisite intent, as the government has now acknowledged (Doc. 339 at 2). Evidence about the protocol is therefore relevant and admissible under Rule of Evidence 401, and precluding this evidence would violate Dr. Warren's constitutional rights to present a defense and to due process.

The Government further argues that evidence regarding No More Deaths' protocols and training program "will mislead the jury as to the applicable law," particularly if "testimony about criminal immigration violations conflicts with or is not addressed by the Court's instruction." (Motion in Limine at 5). The Government claims this scenario occurred in the first trial, when, through the testimony of Professor Andy Silverman, "[t]he defendant offered legally incorrect or incomplete testimony regarding the elements of harboring" and "elicited testimony that intent to conceal is a necessary element of harboring." (Motion in Limine, at 5-6). In fact, it was the Government that first questioned Dr. Silverman on cross-examination about his awareness of various criminal immigration statutes, including the harboring statute. (TR 6/4/19 at 79-80).[1] If the government does not like that testimony, it is free to ask different questions this time. It was only because the Government opened the door to this line of questioning that defense counsel asked Professor Silverman on redirect whether the prohibition against harboring "applies any time or only if it's done with a certain intention?" (TR 6/4/19 at 81:8-9). Dr. Silverman answered:

> No, the person has to intend. So no, not every time someone is -- you know, there are situations where someone -- and I don't like using the word "harbor," because we don't harbor in No More Deaths. We don't conceal people. So there are situations where it would not come within the statute, and intent is required.

(TR 6/4/19 at 81:13-18). Contrary to the Government's assertion, Dr. Silverman did not testify that "intent to conceal is a necessary element of harboring." (Motion in Limine, at 5). Rather, after testifying that the harboring statute requires intent, he simply explained that No More Deaths does not "conceal people," but did not indicate that

---

[1] *See* specifically TR 6/4/19 at 80:17-23: "Q. All right. And there's also a statute that says that you cannot harbor, conceal, or shield from detection an illegal alien; right? A. Someone who is here illegally in the country, yes. Q. Okay. And so violation of that statute is a crime; right? A. Yes."

3

concealment is a "necessary element" of the offense. And in any event, no one disputes that intent to violate the law *is* a necessary element of harboring.

The Government also disingenuously argues that Dr. Warren "elicited speculative testimony about the consequences that No More Deaths might incur if it engaged in illegal actions based on this type of poor legal analysis." (Motion in Limine, at 5-6). That was not the testimony. Rather, Professor Silverman testified that if No More Deaths continues to have issues with the criminal justice system, the organization will likely lose community support and its volunteer base. (TR 6/4/19 at 49:17-50:17). The purpose of this testimony was to help the jury understand the incentives No More Deaths has to make sure its actions are legal, to corroborate Professor Silverman's testimony that his advice was intended to be within the law. Nothing about this testimony misled the jury or invaded the province of the Court as to the applicable law, as the Government claims. (Motion in Limine, 6).

Finally, the Government repeats the argument that evidence regarding No More Deaths' protocols and training program "is not material to the defendant's theory of the case," (Motion in Limine, 6), despite taking the position in a subsequent pleading that this evidence "is directly relevant to the defendant's intent and motive." (Doc. 339, at 2). The No More Deaths training program and protocols and Dr. Warren's beliefs and intentions in following those protocols are clearly relevant to the *mens rea* requirement of harboring, and the State has failed to identify any valid basis for the preclusion of this evidence.

For all these reasons, this Court should deny the Government's Motion in Limine to Preclude Testimony Regarding an Advice of Counsel Defense.

RESPECTFULLY SUBMITTED this 11th day of October, 2019.

By /s/ Amy P. Knight
    Gregory J. Kuykendall
    Amy P. Knight
    531 S Convent Avenue

4

Tucson, AZ 85701
Attorneys for Defendant Scott
Daniel Warren

CERTIFICATE OF SERVICE

 I certify that on October 11, 2019, I electronically transmitted a PDF version of this document to the Clerk of Court using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Nathaniel J. Walters, Esq. (email: Nathaniel.walters@usdoj.gov)
Anna R. Wright, Esq. (email: anna.wright@usdoj.gov)
United States Attorney's Office
405 W. Congress, Suite 4800
Tucson, AZ 85701